**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FREE ENTERPRISE FUND, *et al.*,

                    Plaintiffs,

        -against-

THE PUBLIC COMPANY ACCOUNTING
OVERSIGHT BOARD, *et al.*,

                 Defendants.

Civil Action No. 1:06-cv-00217-JR

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and for the reasons stated more fully in the accompanying Memorandum of Points and Authorities, defendants respectfully move to dismiss this case.

First, this Court lacks jurisdiction because this suit was brought outside the statutory review mechanism of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (codified at 15 U.S.C. §§ 7201 *et seq.*) ("Sarbanes-Oxley"). Sarbanes-Oxley and other federal securities laws establish detailed and precise mechanisms for administrative and judicial review. Those laws specify the timing, scope, and forums for such review. Plaintiffs have failed to avail themselves of that exclusive statutory review process and have failed to exhaust administrative remedies as well.

Second, plaintiffs have failed to identify a cause of action that authorizes them to sue the Public Company Accounting Oversight Board (the "Board") in district court. Neither Sarbanes-Oxley nor any other statute authorizes this suit against the Board. To the contrary, Sarbanes-

Oxley provides for administrative review before the Securities and Exchange Commission (the "Commission") followed by judicial review in the court of appeals. This Court should not judicially imply a cause of action to bring suit in district court where Congress has provided an express statutory mechanism for review in the court of appeals.

Third, the complaint must be dismissed in part for want of standing. Plaintiff Free Enterprise Fund fails to allege injury sufficient to establish associational standing. Both plaintiffs lack standing to challenge restrictions on the Commission's appointment authority (Compl. ¶ 92). And plaintiffs also lack standing to challenge Sarbanes-Oxley's grant of appointment authority to the five Commissioners rather than the Chairman alone (Compl. ¶ 91): The Chairman voted in favor of each appointment to the Board, so plaintiffs suffered no injury fairly traceable to this alleged defect in the appointment process.

A proposed order is attached.

Dated: May 15, 2006                          Respectfully submitted,

                                             /s/  Joe Caldwell
Lewis H. Ferguson  (D.C. Bar No. 176312)     Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
J. Gordon Seymour  (D.C. Bar No. 450051)     James R. Doty  (D.C. Bar No. 416785)
Heidi E. Murdy  (D.C. Bar No. 474680)        Jeffrey A. Lamken  (D.C. Bar No. 440547)
PUBLIC COMPANY ACCOUNTING                    Joshua A. Klein  (D.C. Bar No. 489078)
    OVERSIGHT BOARD                           BAKER BOTTS, LLP
1666 K Street, N.W.                          1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20006                       Washington, D.C.  20004-2400
(202) 207-9162 (telephone)                   (202) 639-7700 (telephone)
(202) 862-8430 (facsimile)                   (202) 639-7890 (facsimile)

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FREE ENTERPRISE FUND, *et al.*,

                    Plaintiffs,                               Civil Action No. 1:06-cv-00217-JR

        -against-

THE PUBLIC COMPANY ACCOUNTING
OVERSIGHT BOARD, *et al.*,

                    Defendants.

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Lewis H. Ferguson  (D.C. Bar No. 176312)       Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
J. Gordon Seymour  (D.C. Bar No. 450051)       James R. Doty  (D.C. Bar No. 416785)
Heidi E. Murdy  (D.C. Bar No. 474680)          Jeffrey A. Lamken  (D.C. Bar No. 440547)
PUBLIC COMPANY ACCOUNTING                       Joshua A. Klein  (D.C. Bar No. 489078)
    OVERSIGHT BOARD                             BAKER BOTTS, LLP
1666 K Street, N.W.                             1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20006                          Washington, D.C.  20004-2400
(202) 207-9162 (telephone)                      (202) 639-7700 (telephone)
(202) 862-8430 (facsimile)                      (202) 639-7890 (facsimile)

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

STATEMENT ................................................................................................................. 1

I.      Statutory Background ........................................................................................... 1

        A.      Review of SEC and SRO Decisions ........................................................ 3

        B.      The Public Company Accounting Oversight Board ................................. 5

II.     Relevant Proceedings ........................................................................................... 9

        A.      Board Rulemakings and Commission Review ........................................ 9

        B.      The Inspection and Investigation of Plaintiff Beckstead and Watts ..................... 10

        C.      The Instant Lawsuit ................................................................................ 11

SUMMARY OF ARGUMENT ..................................................................................... 13

ARGUMENT ................................................................................................................. 15

I.      Plaintiffs Have Bypassed Congress's Exclusive Statutory Mechanism for Judicial
        Review ................................................................................................................. 15

        A.      Where Congress Provides a Comprehensive Remedial Scheme, That
                Scheme Is Presumed To Be Exclusive .................................................. 15

        B.      Congress Provided a Comprehensive Review Process for Challenges to
                Board Authority ..................................................................................... 19

        C.      The Statutory and Legislative History of Sarbanes-Oxley's Review
                Provisions Confirm Congress's Intent That They Be Exclusive .......... 22

        D.      Congress's Statutory Review Mechanism Is Adequate To Address
                Plaintiffs' Constitutional Claims .......................................................... 25

        E.      Plaintiffs' Suit Frustrates Congress's Purposes in Establishing an
                Exclusive Statutory Review Mechanism ............................................... 29

II.     Plaintiffs Have Failed To Identify a Cause of Action Authorizing This Suit ................... 37

III.    Plaintiffs' Claims Must Be Dismissed for Lack of Standing ............................. 39

        A.      Free Enterprise Fund's Allegations Are Insufficient To Support Standing ......... 39

        B.      Plaintiffs Lack Standing To Raise Certain Appointments Clause
                Challenges .............................................................................................. 40

1.    Plaintiffs Lack Standing To Challenge Restrictions on the
      Commission's Appointment Authority .................................................... 40

2.    Plaintiffs Lack Standing To Challenge Congress's Grant of
      Appointment Authority to the Commission Collectively Rather
      Than to the Chairman ............................................................................. 42

CONCLUSION ............................................................................................................ 44

## <u>TABLE OF AUTHORITIES</u>

### CASES[1]

*Action for Children's Television v. FCC*, 59 F.3d 1249 (D.C. Cir. 1995) ................................ 18, 30

*Aerosource, Inc. v. Slater*, 142 F.3d 572 (3d Cir. 1998) ................................................. 29

*Alton v. NASD*, No. C-94-0618, 1994 WL 443460 (N.D. Cal. July 26, 1994) ................................ 23

*Am. Benefits Group, Inc. v. NASD*, No. 99 Civ. 4733, 1999 WL 605246 (S.D.N.Y. Aug. 10, 1999) ...................................................................................... 23, 29

*Am. Coal. for Competitive Trade v. Clinton*, 128 F.3d 761 (D.C. Cir. 1997) ........................ 27, 32

*Am. Fed. of Gov't Employees, AFL-CIO v. Loy*, 367 F.3d 932 (D.C. Cir. 2004) ........................ 18

*Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946) ..................................................... 26

*Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984) ..................................................... 43

*Belfort v. NASD*, No. 93 Civ. 7159, 1994 WL 97021 (S.D.N.Y. Mar. 24, 1994) ......................... 23

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) .......... 38

*Blessing v. Freestone*, 520 U.S. 329 (1997) .......................................................... 16

*Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988) ................................... 26

*Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984) ................................................. 15

*Bragdon v. Abbott*, 524 U.S. 624 (1998) .............................................................. 24

*Brown v. GSA*, 425 U.S. 820 (1976) ................................................................... 38

*Bush v. Lucas*, 462 U.S. 367 (1983) .................................................................. 38

*Bus. Roundtable v. SEC*, 905 F.2d 406 (D.C. Cir. 1990) ............................................... 4

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ..................... 30

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) ........................................ 16

*City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979) .......................................... 17, 37

---

[1] Authorities on which we chiefly rely are marked by an asterisk.

*Coleman v. NASD*, No. 99 Civ. 248, 1999 WL 305100 (S.D.N.Y. May 14, 1999)......................23

*Comm. for Monetary Reform v. Bd. of Governors of Fed. Reserve Sys.*, 766 F.2d 538
    (D.C. Cir. 1985) ..................................................................................................43

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)..............................................38

*Datek Sec. Corp. v. NASD*, 875 F. Supp. 230 (S.D.N.Y. 1995) ...........................23

*Davis v. Passman*, 442 U.S. 228 (1979) ...............................................................38

*Desiderio v. NASD*, 2 F. Supp. 2d 516 (S.D.N.Y. 1998) .......................................23

*Eastern Bridge, LLC v. Chao*, 320 F.3d 84 (1st Cir. 2003)..............................17, 18

*Eng'rs Pub. Serv. Co. v. SEC*, 138 F.2d 936 (D.C. Cir. 1943), *vacated as moot*, 332 U.S.
    788 (1947)..........................................................................................................33

*Evans v. United States*, 504 U.S. 255 (1992) ........................................................24

*\*FDIC v. Meyer*, 510 U.S. 471 (1994) ..............................................................37, 38

*\*FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993) ...........................41

*Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268
    (D.C. Cir. 1994) ..................................................................................................39

*\*First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690 (3d Cir. 1979)............................23, 28

*Fund Democracy, LLC v. SEC*, 278 F.3d 21 (D.C. Cir. 2002) .........................................39

*Gen. Fin. Corp. v. FTC*, 700 F.2d 366 (7th Cir. 1983)....................................................17

*Great Plains Coop v. Commodity Futures Trading Comm'n*, 205 F.3d 353 (8th
    Cir. 2000) ...........................................................................................................17

*Hayden v. N.Y. Stock Exch.*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998)............................23, 28

*Hirschberg v. Commodity Futures Trading Comm'n*, No. 02 C 6483, 2003 WL
    22019310 (N.D. Ill. Aug. 27, 2003)...........................................................23, 28, 29

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) .................................................16

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ................................39

*INS v. Phinpathya*, 464 U.S. 183 (1984)........................................................................24

*Intercontinental Indus. v. Am. Stock Exch.*, 452 F.2d 935 (5th Cir. 1971) ...................26

*Inv. Co. Inst. v. Bd. of Governors of Fed. Reserve Sys.*, 551 F.2d 1270 (D.C. Cir. 1977) ...........17

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) .......................................37

*Lorillard v. Pons*, 434 U.S. 575 (1978) .......................................................................24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................39

*Marchiano v. NASD*, 134 F. Supp. 2d 90 (D.D.C. 2001) .......................................23, 27

*Maschler v. NASD*, 827 F. Supp. 131 (E.D.N.Y. 1993) ...............................................23

*Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996) ..............................................................32

*McLaughlin, Piven, Vogel, Inc. v. NASD*, 733 F. Supp. 694 (S.D.N.Y. 1990).............23

*Meredith Corp. v. FCC*, 809 F.2d 863 (D.C. Cir. 1987).............................................33

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*, 616 F.2d 1363 (5th Cir. 1980)...............23

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981)............16, 38

*Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246 (1951) .....................37

*NASD v. SEC*, 431 F.3d 803 (D.C. Cir. 2005) ........................................................3, 4, 5

*Nassar & Co. v. SEC*, 566 F.2d 790 (D.C. Cir. 1977) .................................................23

*Nat'l Taxpayers Union v. SSA*, 376 F.3d 239 (4th Cir. 2004) ........................... *passim*

*Northwest Envtl. Def. Ctr. v. Brennen*, 958 F.2d 930 (9th Cir. 1992) ...........................43

*Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294 (1933) ......................32

*Prevatte v. NASD*, 682 F. Supp. 913 (W.D. Mich. 1988).............................................23

*Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237 (1952).............................................37

*R.H. Johnson & Co. v. SEC*, 198 F.2d 690 (2d Cir. 1952) .........................................26

*Reuss v. Balles*, 584 F.2d 461 (D.C. Cir. 1978)..........................................................42

*Roach v. Woltmann*, 879 F. Supp. 1039 (C.D. Cal. 1994).......................................................23, 28

*SEC v. Andrews*, 88 F.2d 441 (2d Cir. 1937)..................................................................................23

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)....................................................................38

*Sheldon v. SEC*, 45 F.3d 1515 (11th Cir. 1995)..............................................................................26

*Sorrell v. SEC*, 679 F.2d 1323 (9th Cir. 1982) ..............................................................................26

*\*Sturm, Ruger & Co. v. Chao*, 300 F.3d 867 (D.C. Cir. 2002) ............................................. *passim*

*\*Swirsky v. NASD*, 124 F.3d 59 (1st Cir. 1997)...........................................................................23, 28

*Syracuse Peace Council v. FCC*, 867 F.2d 654 (D.C. Cir. 1989)....................................................33

*Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) .................................27

*\*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).......................................................... *passim*

*Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996).........................................27

*Todd & Co. v. SEC*, 557 F.2d 1008 (3d Cir. 1977)........................................................................26

*Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641 (D.C. Cir. 2003)...............................................29

*\*United States v. AVX Corp.*, 962 F.2d 108 (1st Cir. 1992) ....................................................39, 40

*United States v. Erika, Inc.*, 456 U.S. 201 (1982).........................................................................18

*\*United States v. Fausto*, 484 U.S. 439 (1988) ...............................................................18, 30, 36

*United Transp. Union v. Norfolk & W. Ry. Co.*, 822 F.2d 1114 (D.C. Cir. 1987) ......................36

*Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002)....................................................38

*\*Weinberger v. Salfi*, 422 U.S. 749 (1975)............................................................18, 27, 32, 34

*\*Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411 (1965)................ *passim*

*Wright v. McPhie*, No. Civ. A. 04-1204, 2005 WL 3273556 (D.D.C. Sept. 27, 2005)...........39, 40

*Younger v. Harris*, 401 U.S. 37 (1971)..........................................................................................34

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. art. II, § 2 ...................................................................................................12

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (codified at 15
U.S.C. §§ 7201 *et seq.*) .................................................................................... *passim*

    § 3, 15 U.S.C. § 7202 ...................................................................................................2

    § 101, 15 U.S.C. § 7211 ....................................................................................... *passim*

    § 102, 15 U.S.C. § 7212 ...........................................................................................6, 20

    § 104, 15 U.S.C. § 7214 ....................................................................................... *passim*

    § 105, 15 U.S.C. § 7215 ...........................................................................8, 20, 21, 33

    § 106, 15 U.S.C. § 7216 ...............................................................................................7

    § 107, 15 U.S.C. § 7217 ....................................................................................... *passim*

    § 109, 15 U.S.C. § 7219 .......................................................................................5, 6, 20

    §§ 201-209, 15 U.S.C. §§ 7231-7234, 15 U.S.C. § 78j-1(g)-(*l*) .........................................2

    § 201, 15 U.S.C. § 7231 ...............................................................................................7

    § 302, 15 U.S.C. § 7241 ...............................................................................................2

    § 601, 15 U.S.C. § 78kk .................................................................................................2

    §§ 901-906 (amending 18 U.S.C. §§ 1341, 1343, 1349, 1350, and 29 U.S.C.
        § 1131) .....................................................................................................................2

2 U.S.C. § 437c .....................................................................................................41

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ...............................................37

    5 U.S.C. § 702 ............................................................................................................37

    5 U.S.C. § 704 ............................................................................................................37

15 U.S.C. § 77t...........................................................................................................3, 22

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* ................................................. *passim*

    15 U.S.C. § 78d-1 ...........................................................................................................3

    15 U.S.C. § 78e ...........................................................................................................3, 6

    15 U.S.C. § 78f ...........................................................................................................3, 4

    15 U.S.C. § 78*o* ...........................................................................................................3, 6

    15 U.S.C. § 78*o*-3 ........................................................................................................3, 4

    15 U.S.C. § 78q ...........................................................................................................4, 5

    15 U.S.C. § 78s ........................................................................................................ *passim*

    15 U.S.C. § 78u .........................................................................................................3, 22

    15 U.S.C. § 78y ........................................................................................................ *passim*

    15 U.S.C. § 78aa .......................................................................................................3, 22

30 U.S.C. § 816 ..................................................................................................................22

Fed. R. Civ. P. 12 ...............................................................................................................13

## LEGISLATIVE HISTORY

H.R. Rep. No. 100-816 (1988) ............................................................................................32

H.R. Rep. No. 107-414 (2002) ..............................................................................................2

S. Rep. No. 94-75 (1975) .........................................................................................4, 25, 36

S. Rep. No. 95-969 (1978) ..........................................................................................30, 36

S. Rep. No. 107-205 (2002) .........................................................................................2, 3, 25

## ADMINISTRATIVE DECISIONS

*In re Alderman*, Exchange Act Release No. 34-35997, 59 SEC Docket 2075, 1995 WL
    442069 (July 20, 1995) ...........................................................................................33

*Commission Announces Acting Chairman of Public Company Accounting Oversight
    Board*, SEC News Release 2003-2 (Jan. 8, 2003), *available at*
    http://www.sec.gov/news/press/2003-2.htm .............................................................42

*Dissemination and Display of Transaction Reports, Last Sale Data and Quotation Information*, Exchange Act Release No. 34-16590, 19 SEC Docket 659, 1980 WL 29568 (Feb. 19, 1980) ...................................................................................................33

*Establishment of Accounting Support Fee*, PCAOB Release No. 2003-003 (Apr. 18, 2003), *available at* http://www.pcaob.org/Rules/Docket_002/2003-04-18_Release_2003-003.pdf ....................................................................................................9

*Inspection of Beckstead & Watts, LLP*, PCAOB Release No. 104-2005-082 (Sept. 28, 2005), *available at* http://www.pcaobus.org/Inspections/Public_Reports/2005/Beckstead_and_Watts.pdf ....................................................................................................11

*In re Marrie*, Exchange Act Release No. 34-48246, 80 SEC Docket 2163, 2003 WL 21741785 (July 29, 2003), *rev'd on other grounds*, 374 F.3d 1196 (D.C. Cir. 2004) ...................................................................................................................33

*In re Middle West Corp.*, Public Utility Holding Company Act Release No. 35-3646, 1942 WL 33793 (July 6, 1942) .........................................................................................26

*In re North Am. Co.*, Public Utility Holding Company Act Release No. 35-3405, 1942 WL 34307 (Apr. 14, 1942) .......................................................................................26

*Notice of Filing of Proposed Ethics and Independence Rules Concerning Independence, Tax Services, and Contingent Fees*, Exchange Act Release No. 34-53427 (Mar. 7, 2006), *available at* http://www.sec.gov/rules/pcaob/34-53427.pdf.................................13

*Notice of Filing of Proposed Rule Change Relating to Solicitation of Municipal Securities Business Under MSRB Rule G-38*, Exchange Act Release No. 34-51561, 85 SEC Docket 649, 2005 WL 1861765 (Apr. 15, 2005).....................................33

*Notice of Filing of Proposed Rule on Auditing Standard No. 4*, Exchange Act Release No. 34-52990 (Dec. 21, 2005), *available at* http://www.sec.gov/rules/pcaob/34-52990.pdf .................................................................................................................13

*Notice of Filing of Proposed Rule on Funding*, Exchange Act Release No. 34-48075, 68 Fed. Reg. 38406-01 (June 27, 2003) .........................................................................10

*Order Approving Proposed Auditing Standard No. 1*, Exchange Act Release No. 34-49707, 82 SEC Docket 3079 (May 14, 2004)....................................................10

*Order Approving Proposed Auditing Standard No. 2*, Exchange Act Release No. 34-49884, 83 SEC Docket 212 (June 17, 2004)....................................................10

*Order Approving Proposed Auditing Standard No. 3*, Exchange Act Release No. 34-50253, 83 SEC Docket 1905 (Aug. 25, 2004) ...................................................10

*Order Approving Proposed Auditing Standard No. 4*, Exchange Act Release No. 34-53227 (Feb. 6, 2006), *available at* http://www.sec.gov/rules/pcaob/34-53227.pdf .....................................................................................10, 13, 31

*Order Approving Proposed Ethics and Independence Rules Concerning Independence, Tax Services, and Contingent Fees*, Exchange Act Release No. 34-53677 (Apr. 19, 2006), *available at* http://www.sec.gov/rules/pcaob/2006/34-53677.pdf .............10, 13

*Order Approving Proposed Rule Change by the Municipal Securities Rulemaking Board Relating to Political Contributions and Prohibitions on Municipal Securities Business*, Exchange Act Release No. 34-33868, 56 SEC Docket 1045, 1994 WL 117907 (Apr. 7, 1994)...........................................................................................33

*Order Approving Proposed Rules on Funding*, Exchange Act Release No. 34-48278, 80 SEC Docket 2319 (Aug. 1, 2003) ......................................................................10

*Order Approving Proposed Rules Relating to Bylaws*, Exchange Act Release No. 34-48212, 80 SEC Docket 1978 (July 23, 2003) ...................................................10

*Order Approving Proposed Rules Relating to Compliance with Auditing and Related Professional Practice Standards and Advisory Groups*, Exchange Act Release No. 34-48730, 81 SEC Docket 1509 (Oct. 31, 2003)........................................................10

*Order Approving Proposed Rules Relating to Inspections of Registered Public Accounting Firms*, Exchange Act Release No. 34-49787, 82 SEC Docket 3341 (June 1, 2004)..................................................................................................10

*Order Approving Proposed Rules Relating to Investigations and Adjudications*, Exchange Act Release No. 34-49704, 82 SEC Docket 3076 (May 14, 2004) .................10

*Order Approving Proposed Rules Relating to Registration System*, Exchange Act Release No. 34-48180, 80 SEC Docket 1890 (July 16, 2003) ........................................10

*Order Regarding Section 101(d) of the Sarbanes-Oxley Act of 2002*, Exchange Act Release No. 34-47746, 80 SEC Docket 144 (Apr. 25, 2003) ...............................................5

*Order Regarding Section 103(a)(3)(B) of the Sarbanes-Oxley Act of 2002*, Exchange Act Release No. 34-47745, 80 SEC Docket 142 (Apr. 25, 2003) ...............................................9

*Proceedings of the Commission* (Oct. 25, 2002), *available at* http://www.sec.gov/news/openmeetings.shtml ...........................................................................42

*Proposal for Establishment of Accounting Support Fee*, PCAOB Release No. 2003-002 (Mar. 14, 2003), *available at* http://www.pcaob.org/Rules/Docket_002/2003-04-07_Release2003-002.pdf ..............................................................................9

*SEC Names Bill Gradison Acting Chairperson; Approves PCAOB Appointment Procedures*, SEC News Release 2005-171 (Dec. 2, 2005), *available at* http://www.sec.gov/news/press/2005-171.htm..................................................................42

*SEC Unanimously Approves William J. McDonough as Chairman of Public Company Accounting Oversight Board*, SEC News Release 2003-63 (May 21, 2003), *available at* http://www.sec.gov/news/press/2003-63.htm................................................42

*Statement Concerning the Issuance of Inspection Reports*, PCAOB Release No. 104-2004-001 (Aug. 26, 2004), *available at* http://www.pcaob.org/inspections/statement_concerning_inspection_reports.pdf..................................................29

*Statement Regarding the Establishment of Auditing and Other Professional Standards*, PCAOB Release No. 2003-005, at 3 (April 18, 2003), *available at* http://www.pcaobus.org/Rules/Docket_004/2003-04-18_Release_2003-005.pdf ..............7

*In re Wright*, Exchange Act Release No. 34-1598, 1938 WL 32956 (Feb. 28, 1938)..................26

## MISCELLANEOUS

John C. Coffee, Jr., *Understanding Enron: 'It's About the Gatekeepers, Stupid,'* 57 Bus. Law. 1403 (2002)......................................................................................................2

*Corporate Fraud Responsibility: A Legislative History of the Sarbanes-Oxley Act of 2002* (William H. Manz ed., 2003) ..........................................................................2

F. Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947)......................................................................................................................24

Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* (5th ed. 2005)........................23

L. Loss & J. Seligman, *Securities Regulation* (3d ed. 1998) ......................................................1, 23

*PCAOB Rulemaking Docket*, *at* http://www.pcaob.org/Rules/Rulemaking_Docket.aspx ..............7

Richard J. Pierce, Jr., *Administrative Law Treatise* (4th ed. 2002) ................................................32

U.S. Gen. Accounting Office, *The Accounting Profession: Major Issues: Progress and Concerns* (1996)....................................................................................................1

U.S. Gen. Accounting Office, *Actions Needed To Improve Public Company Accounting Oversight Board Selection Process* (2002), *available at* http://www.gao.gov/new.items/d03339.pdf......................................................................42

In the wake of defective audits that left massive frauds undetected and caused enormous shareholder losses, Congress enacted the Sarbanes-Oxley Act of 2002. Pub. L. No. 107-204, 116 Stat. 745 (codified at 15 U.S.C. §§ 7201 *et seq.*) ("Sarbanes-Oxley" or the "Act").[1] That Act, among other things, established the Public Company Accounting Oversight Board (the "Board") to oversee the audits of public companies. According to the complaint in this case, plaintiff Beckstead and Watts, a small Nevada accounting firm, was inspected by the Board in 2004 and remains the subject of an ongoing Board disciplinary investigation. Together with co-plaintiff Free Enterprise Fund, Beckstead and Watts filed this action to enjoin the Board's investigation of Beckstead and Watts and to have the Board and its rules declared unconstitutional. Because plaintiffs have bypassed Sarbanes-Oxley's exclusive review mechanism, have not exhausted administrative remedies, have failed to identify any cause of action that authorizes suit in this Court, and lack standing to bring their claims, this suit must be dismissed.

## STATEMENT

## I.    STATUTORY BACKGROUND

Congress enacted the federal securities laws in the 1930s and 1940s to restore integrity to the Nation's financial markets in the wake of the stock market crash of 1929 and the Great Depression. For many years, the Securities and Exchange Commission ("SEC" or the "Commission") relied primarily on the accounting profession to establish its own accounting and auditing standards for the financial reports required by those laws. *See* 2 L. Loss & J. Seligman, *Securities Regulation* 734-35 (3d ed. 1998); U.S. Gen. Accounting Office, *The Accounting Profession: Major Issues: Progress and Concerns* 2-4 (1996). By 2002, however, the collapse of Enron and other corporate scandals had revealed a "systematic governance failure"

---

[1] Otherwise undesignated citations to statutory sections in this memorandum are references to Sarbanes-Oxley. Relevant provisions are set out in a statutory appendix to this motion.

implicating accountants and auditors.  *See* John C. Coffee, Jr., *Understanding Enron: 'It's About the Gatekeepers, Stupid*,' 57 Bus. Law. 1403, 1404 (2002).   Multiple House and Senate committees held hearings to address the "repeated failures of audit effectiveness."  S. Rep. No. 107-205, at 2 (2002); *see also* H.R. Rep. No. 107-414, at 18 (2002).  Witnesses concurred that prior attempts at reform had failed.  *See, e.g.*, S. Rep. No. 107-205, at 6 (2002) (" '[I]n 1978 [we] also said: the public accounting profession has failed to react . . . .  And unfortunately, a quarter of a century later, I have to repeat that.  It's identical.' ").

After considering at least 26 different bills and conducting 33 hearings, Congress enacted the Sarbanes-Oxley Act of 2002 by a vote of 423 to 3 in the House and 99 to 0 in the Senate.[2] The Act imposed auditor independence standards, §§ 201-209, 15 U.S.C. §§ 7231-7234, 15 U.S.C. § 78j-1(g)-(*l*), and certification duties for corporate officers, § 302(a), 15 U.S.C. § 7241(a).  It increased criminal penalties for certain frauds.  §§ 901-906 (amending 18 U.S.C. §§ 1341, 1343, 1349, 1350, and 29 U.S.C. § 1131).  And it preserved and reinforced the SEC's authority to regulate the securities markets and public-company audits.  § 3(c), 15 U.S.C. § 7202(c); § 601, 15 U.S.C. § 78kk.  Most important here, Title I of the Act established the Public Company Accounting Oversight Board to "oversee the audit of public companies that are subject to the securities laws, and related matters, in order to protect the interests of investors and further the public interest."  § 101(a), 15 U.S.C. § 7211(a).

In establishing the Board, regulating its operations, and providing for administrative oversight and judicial review, Congress borrowed extensively from prior enactments.  In particular, Congress drew heavily on, and in many cases expressly incorporated, provisions governing review of the Commission's own decisions and those of self-regulatory organizations

---

[2] For a list of bills and hearings, see 1 *Corporate Fraud Responsibility: A Legislative History of the Sarbanes-Oxley Act of 2002*, at xv-xxi (William H. Manz ed., 2003).

("SROs") — private organizations like the New York Stock Exchange and the National Association of Securities Dealers ("NASD") that help the Commission oversee the industry by promulgating rules and disciplining their members. *See generally* 15 U.S.C. § 78f(b)(5)-(6); *id.* § 78*o*-3(b)(6)-(7); *NASD v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005).[3] As the Senate Report explained, the "rules for SEC oversight of the Board are generally the same as those that apply to SEC oversight of the National Association of Securities Dealers." S. Rep. No. 107-205, at 12 (2002).

### A.    Review of SEC and SRO Decisions

Ever since Congress granted the Commission broad regulatory powers in the Securities Exchange Act of 1934 (the "Exchange Act"), it has provided an elaborate regime that specifies procedures for review within the agency itself and in the courts. For example, the Commission may impose disciplinary sanctions only after notice and a hearing. *E.g.*, 15 U.S.C. § 78*o*(b)(4). When it delegates that function to an administrative law judge, the Commission may review the decision on its own initiative or on petition of a party. 15 U.S.C. § 78d-1(a)-(b). Final Commission disciplinary decisions are reviewable in the court of appeals under § 25(a) of the Exchange Act, 15 U.S.C. § 78y(a), but the court normally may not consider grounds not presented to the Commission, 15 U.S.C. § 78y(c)(1). The securities laws address district-court jurisdiction, but do so in connection with Commission-initiated enforcement actions rather than review of Commission decisions. *See* 15 U.S.C. § 77t(b)-(e); *id.* § 78u(d)(1)-(3), (e); *id.* § 78aa.

The Exchange Act also establishes a system of administrative and judicial review for SRO rulemaking and discipline. "[S]elf-regulatory organizations exercise authority subject to

---

[3] Together, the exchanges and the NASD oversee virtually the entire securities market — it is illegal for a broker-dealer to trade in covered securities on an unregistered exchange or without membership in a registered national securities association. 15 U.S.C. § 78e; *id.* § 78*o*(b)(8).

SEC oversight" and "have no authority to regulate independently of the SEC's control."  S. Rep. No. 94-75, at 23 (1975).  For example, SROs must promulgate rules to "prevent fraudulent and manipulative acts and practices [and] to promote just and equitable principles of trade," 15 U.S.C. § 78f(b)(5); *id.* § 78*o*-3(b)(6), but they must file notice of any proposed rule with the Commission, 15 U.S.C. § 78s(b)(1).  The Commission in turn must publish the rule for public comment and then approve or reject it.  15 U.S.C. § 78s(b)(1)-(3); *see Bus. Roundtable v. SEC*, 905 F.2d 406, 408-09 (D.C. Cir. 1990).  The Commission may also on its own initiative "abrogate, add to, and delete from" any SRO rule.  15 U.S.C. § 78s(c).  Persons aggrieved by a final Commission decision approving, rejecting, or amending an SRO rule may petition for review in the court of appeals within 60 days under § 25 of the Exchange Act, 15 U.S.C. § 78y(a), (b), asserting any ground raised before the Commission, 15 U.S.C. § 78y(c)(1).  The Commission may also impose recordkeeping requirements on SROs and may inspect those records at any time.  15 U.S.C. § 78q(a)(1), (b)(1).

Likewise, although SROs must discipline their members for violations of SRO rules, SEC rules, or the securities laws, 15 U.S.C. § 78f(b)(6); *id.* § 78*o*-3(b)(7), SRO disciplinary actions are subject to similar "plenary review."  *NASD v. SEC*, 431 F.3d at 804.  Congress has specified the procedures SROs must follow when proceeding against their members.  15 U.S.C. § 78*o*-3(h).  Once an SRO imposes a final disciplinary sanction, it must file notice with the SEC (or other appropriate federal regulator).  15 U.S.C. § 78s(d)(1).  The SRO's decision is subject to review by the Commission, on the Commission's own motion or by party application.  15 U.S.C. § 78s(d)(2).  The Commission makes an independent determination as to whether a violation occurred, and may cancel or remit any sanction that is "excessive or oppressive."  15 U.S.C. § 78s(e)(1)-(2).  Aggrieved persons may petition for review of the Commission's decision in the

court of appeals within 60 days, on any ground preserved before the Commission.  15 U.S.C.

§ 78y(a), (c)(1).  As the D.C. Circuit recently explained:

> The congressional scheme, in short, establishes a system in which
> the Commission not only closely supervises and approves the
> processes by which NASD brings disciplinary action, but in which
> the Commission fully revisits the issue of liability, and can
> completely reject or modify NASD's decision as it deems
> appropriate. . . . The authority [NASD] exercises ultimately
> belongs to the SEC, and the legal views of the self-regulatory
> organization must yield to the Commission's view of the law.

*NASD v. SEC*, 431 F.3d at 806.

### B.    The Public Company Accounting Oversight Board

Title I of Sarbanes-Oxley established the Public Company Accounting Oversight Board.

The Board's five members are appointed by the SEC after consultation with the Chairman of the

Federal Reserve and the Secretary of the Treasury.  § 101(e)(4)(A), 15 U.S.C. § 7211(e)(4)(A).

Exactly two Board members must be or have been certified public accountants.  § 101(e)(2), 15

U.S.C. § 7211(e)(2).  By statute, the Board is not an "agency or establishment of the United

States Government," but rather a private nonprofit corporation.  § 101(b), 15 U.S.C. § 7211(b).

The Board is funded primarily by an "accounting support fee" assessed on public companies.

§ 109(c)(1), 15 U.S.C. § 7219(c)(1).  It has responsibility in four principal areas — registration,

rulemaking, inspections, and disciplinary proceedings.  § 101(c), 15 U.S.C. § 7211(c).  Congress

granted the SEC extensive authority over the Board with respect to each.

*General Oversight*.  Even after its members were appointed by the Commission, the

Board assumed its responsibilities only upon the Commission's determination that the Board had

"the capacity to carry out the requirements" of the Act.  § 101(d), 15 U.S.C. § 7211(d); *see*

*Order Regarding Section 101(d) of the Sarbanes-Oxley Act of 2002*, Exchange Act Release No.

34-47746, 80 SEC Docket 144 (Apr. 25, 2003).  The Commission may impose recordkeeping

requirements on the Board and may inspect those records, just as if the Board were an SRO. § 107(a), 15 U.S.C. § 7217(a) (incorporating 15 U.S.C. § 78q(a)(1), (b)(1)). The Board must submit annual reports, including audited financial statements, to the Commission. § 101(h), 15 U.S.C. § 7211(h). The Commission can censure or remove Board members for cause. § 107(d)(3), 15 U.S.C. § 7217(d)(3). And the Commission, by rule, may relieve the Board at any time of any of its responsibilities, "consistent with the public interest, the protection of investors, and the other purposes of this Act and the securities laws." § 107(d)(1), 15 U.S.C. § 7217(d)(1).

*Funding*. The Board's rules for allocation, assessment, and collection of accounting support fees must be approved by the Commission after notice and comment. § 109(d), 15 U.S.C. § 7219(d); § 107(b), 15 U.S.C. § 7217(b). The Commission's decision is subject to judicial review under § 25(a) of the Exchange Act. 15 U.S.C. § 78y(a). The fees cannot exceed the Board's budgeted expenses, § 109(f), 15 U.S.C. § 7219(f), and the Board's budget must be approved by the Commission annually, § 109(b), 15 U.S.C. § 7219(b).

*Registration*. Under Sarbanes-Oxley, no accounting firm may participate in the preparation or issuance of an audit report for any issuer of publicly traded stock unless the firm is registered with the Board. § 102(a), 15 U.S.C. § 7212(a); *cf.* 15 U.S.C. §§ 78e, 78*o*(b)(8) (prohibiting trading on an unregistered exchange or without membership in a registered national securities association). Applicants for registration must submit a prescribed application and pay prescribed fees. § 102(b), (f), 15 U.S.C. § 7212(b), (f). Denial of registration is treated as a disciplinary sanction and is subject to review by the Commission and then by the courts. § 102(c)(2), 15 U.S.C. § 7212(c)(2); pp. 8-9, *infra*.

*Rulemaking*. Just as SROs prescribe rules for their members, the Board prescribes "auditing, quality control, ethics, independence, and other standards relating to the preparation of

6

audit reports" by public accounting firms.  § 101(c)(2), 15 U.S.C. § 7211(c)(2).  When the Board proposes rules, it conducts notice-and-comment proceedings that allow for public participation. *See Statement Regarding the Establishment of Auditing and Other Professional Standards*, PCAOB Release No. 2003-005, at 3 (April 18, 2003), *available at* http://www.pcaobus.org/ Rules/Docket_004/2003-04-18_Release_2003-005.pdf ("The Board also intends to solicit public comment, and, where appropriate, to convene hearings or roundtable meetings, in order to obtain the views of issuers, accountants, investors, and other interested persons with respect to proposed Professional Auditing Standards."); *PCAOB Rulemaking Docket*, *at* http://www.pcaob.org/Rules/ Rulemaking_Docket.aspx.

No rule of the Board, however, becomes effective unless approved by the Commission. § 107(b)(2), 15 U.S.C. § 7217(b)(2).  Except for certain transitional rules, the Commission must conduct its own notice-and-comment proceedings.  The procedures governing those proceedings are the same ones that govern Commission review of SRO rules — Sarbanes-Oxley expressly incorporates those SRO provisions from the Exchange Act.  § 107(b)(4), 15 U.S.C. § 7217(b)(4) (incorporating 15 U.S.C. § 78s(b)(1)-(3)).  To approve a rule, the Commission must find that it "is consistent with the requirements of [Sarbanes-Oxley] and the securities laws, or is necessary or appropriate in the public interest or for the protection of investors."  § 107(b)(3), 15 U.S.C. § 7217(b)(3).  Board decisions to exempt firms from certain rules similarly require Commission approval.  § 106(c), 15 U.S.C. § 7216(c); § 201(b), 15 U.S.C. § 7231.  Sarbanes-Oxley also gives the Commission authority to abrogate, add to, and delete from Board rules, again incorporating the provisions of the Exchange Act that govern SRO rules.  § 107(b)(5), 15 U.S.C. § 7217(b)(5) (incorporating 15 U.S.C. § 78s(c)).  Any person aggrieved by a final Commission decision may petition for review within 60 days in the court of appeals.  15 U.S.C. § 78y(a), (b).

*Inspections*.  The Board is required to inspect each registered public accounting firm with public-company audit clients every one to three years.  § 101(c)(3), 15 U.S.C. § 7211(c)(3); § 104(b)(1), 15 U.S.C. § 7214(b)(1).  The rules under which the Board conducts inspections are subject to Commission approval, § 104(c), 15 U.S.C. § 7214(c); § 107(b), 15 U.S.C. § 7217(b), and judicial review, 15 U.S.C. § 78y(a).  Where the inspection reveals an apparent violation of the securities laws, professional standards, or Board or SEC rules, the Board may, if appropriate, report it to the Commission and to state regulators, and can begin a disciplinary investigation.  § 104(c), 15 U.S.C. § 7214(c).  Before issuing a final report on any inspection, however, the Board must provide the inspected firm an opportunity to review and respond to the Board's draft inspection report.  § 104(f), 15 U.S.C. § 7214(f).  If the accounting firm disagrees with the Board's response to its comments on the draft report, it may seek Commission review.  § 104(h)(1)(A), 15 U.S.C. § 7214(h)(1)(A).  The firm may also seek Commission review of the Board's decision to make certain parts of the report public.  § 104(h)(1)(B), 15 U.S.C. § 7214(h)(1)(B).  The Commission's decision on review of a report, however, is not "final agency action" for purposes of the Administrative Procedure Act and is not reviewable under the Exchange Act.  § 104(h)(2), 15 U.S.C. § 7214(h)(2).  Rather, judicial review of any apparent deficiencies identified in the inspection report is available if and when, following an investigation, the Board finds that the violations occurred and imposes disciplinary sanctions.  § 104(c)(3), 15 U.S.C. § 7214(c)(3); pp. 8-9, *infra*.

*Disciplinary Proceedings*.  Also like SROs, the Board is authorized to conduct disciplinary investigations and impose sanctions.  When conducting an investigation involving a potential violation of the securities laws, the Board must notify and coordinate its activities with the Commission.  § 105(b)(4)(A), 15 U.S.C. § 7215(b)(4)(A).  The Board may institute

disciplinary proceedings and impose sanctions. § 105(c)(4)-(6), 15 U.S.C. § 7215(c)(4)-(6).

Any party aggrieved may seek Commission review of the Board's determination, § 107(c), 15 U.S.C. § 7217(c), and any sanction is stayed automatically pending Commission review, unless the Commission orders otherwise, § 105(e), 15 U.S.C. § 7215(e). The procedures for review are the same as those governing Commission review of SRO disciplinary sanctions; Sarbanes-Oxley expressly incorporates those provisions of the Exchange Act. § 107(c)(2), 15 U.S.C. § 7217(c)(2) (incorporating 15 U.S.C. § 78s(d)(2), (e)(1)). The Commission may "enhance, modify, cancel, reduce, or require the remission of a sanction imposed by the Board" if, "having due regard for the public interest and the protection of investors," the Commission finds that the sanction is "not necessary or appropriate in furtherance of this Act or the securities laws" or is "excessive, oppressive, inadequate, or otherwise not appropriate." § 107(c)(3), 15 U.S.C. § 7217(c)(3). Any party aggrieved by the Commission's final order may, within 60 days, petition for review in the court of appeals. 15 U.S.C. § 78y(a).

## II.    RELEVANT PROCEEDINGS

### A.    Board Rulemakings and Commission Review

The Commission approved the Board's interim auditing standards, which were based on the existing standards of the American Institute of Certified Public Accountants, on April 25, 2003. *Order Regarding Section 103(a)(3)(B) of the Sarbanes-Oxley Act of 2002*, Exchange Act Release No. 34-47745, 80 SEC Docket 142 (Apr. 25, 2003). Since then, the Board has begun to replace its transitional standards with permanent ones and has adopted other rules governing its operations. For instance, on March 14, 2003, the Board published for public comment proposed rules for the assessment of its annual accounting support fee.[4]  The Board considered the

---

[4] *Proposal for Establishment of Accounting Support Fee*, PCAOB Release No. 2003-002 (Mar. 14, 2003), *available at* http://www.pcaob.org/Rules/Docket_002/2003-04-07_Release2003-

comments received and then submitted its final proposed rules to the Commission for approval.[5]

The Commission in turn published notice of the proposed rules in the Federal Register for further

public comment, reviewed the rules, and ultimately approved them.[6]   The Commission has

similarly approved, after notice and comment, the Board's bylaws; its rules for registration,

inspections, and investigations; and several Board auditing standards.[7]

**B.     The Inspection and Investigation of Plaintiff Beckstead and Watts**

According to the complaint in this case, Beckstead and Watts is a Board-registered public

accounting firm located in Nevada that "specializes in audits of small publicly traded

corporations."   Compl. ¶¶ 12, 69.   In May 2004, the Board inspected Beckstead and Watts

pursuant to § 104 of the Act, 15 U.S.C. § 7214.   Compl. ¶ 74.   Inspectors identified "numerous

auditing deficiencies with respect to Beckstead and Watts's audits of its clients."   Compl. ¶ 75.

---

002.pdf.

[5] *Establishment of Accounting Support Fee*, PCAOB Release No. 2003-003 (Apr. 18, 2003), *available at* http://www.pcaob.org/Rules/Docket_002/2003-04-18_Release_2003-003.pdf.

[6] *Notice of Filing of Proposed Rule on Funding*, Exchange Act Release No. 34-48075, 68 Fed. Reg. 38406-01 (June 27, 2003); *Order Approving Proposed Rules on Funding*, Exchange Act Release No. 34-48278, 80 SEC Docket 2319 (Aug. 1, 2003).

[7] *Order Approving Proposed Rules Relating to Bylaws*, Exchange Act Release No. 34-48212, 80 SEC Docket 1978 (July 23, 2003); *Order Approving Proposed Rules Relating to Registration System*, Exchange Act Release No. 34-48180, 80 SEC Docket 1890 (July 16, 2003); *Order Approving Proposed Rules Relating to Inspections of Registered Public Accounting Firms*, Exchange Act Release No. 34-49787, 82 SEC Docket 3341 (June 1, 2004); *Order Approving Proposed Rules Relating to Investigations and Adjudications*, Exchange Act Release No. 34-49704, 82 SEC Docket 3076 (May 14, 2004); *Order Approving Proposed Auditing Standard No. 1*, Exchange Act Release No. 34-49707, 82 SEC Docket 3079 (May 14, 2004); *Order Approving Proposed Auditing Standard No. 2*, Exchange Act Release No. 34-49884, 83 SEC Docket 212 (June 17, 2004); *Order Approving Proposed Auditing Standard No. 3*, Exchange Act Release No. 34-50253, 83 SEC Docket 1905 (Aug. 25, 2004); *Order Approving Proposed Auditing Standard No. 4*, Exchange Act Release No. 34-53227 (Feb. 6, 2006), *available at* http://www.sec.gov/rules/pcaob/34-53227.pdf; *see also Order Approving Proposed Rules Relating to Compliance with Auditing and Related Professional Practice Standards and Advisory Groups*, Exchange Act Release No. 34-48730, 81 SEC Docket 1509 (Oct. 31, 2003); *Order Approving Proposed Ethics and Independence Rules Concerning Independence, Tax Services, and Contingent Fees*, Exchange Act Release No. 34-53677 (Apr. 19, 2006), *available at* http://www.sec.gov/rules/pcaob/2006/34-53677.pdf.

After permitting Beckstead and Watts to comment, the Board issued its inspection report on September 28, 2005.  Compl. ¶¶ 76, 78; *see Inspection of Beckstead & Watts, LLP*, PCAOB Release No. 104-2005-082 (Sept. 28, 2005), *available at* http://www.pcaobus.org/Inspections/ Public_Reports/2005/Beckstead_and_Watts.pdf.    With respect to eight of the sixteen audit engagements reviewed, the report identified "deficiencies of such significance that it appeared to the inspection team that the Firm did not obtain sufficient competent evidential matter to support its opinion on the issuers' financial statements."    PCAOB Release No. 104-2005-082, at 3. Following the inspection, two of Beckstead and Watts's clients restated their financial statements.  *Id.* at 4.

Beckstead and Watts did not seek SEC review of the Board's inspection report as permitted by § 104(h)(1), 15 U.S.C. § 7214(h)(1).  The complaint alleges that, at the same time the Board issued its inspection report, the Board initiated a disciplinary investigation.  Compl. ¶ 79.  That investigation remains "currently ongoing."  *Id.*  No sanctions have been imposed and, accordingly, Beckstead and Watts has had no occasion to seek Commission review of any sanction under § 107(c), 15 U.S.C. § 7217(c).

C.    **The Instant Lawsuit**

On February 7, 2006, Beckstead and Watts, joined by co-plaintiff Free Enterprise Fund, filed suit in this Court against the Board and four of its members in their official capacities.  The complaint seeks, among other relief, an order enjoining the Board from taking any further action against Beckstead and Watts and a declaratory judgment that the provisions of Sarbanes-Oxley establishing the Board are unconstitutional.  Compl. at 23 (prayer for relief).

Count I of the complaint alleges that Congress violated separation-of-powers principles by vesting wide-ranging executive authority in the Board without sufficient presidential oversight.  Compl. ¶¶ 81-85.  Count II claims that the selection process for Board members

11

violates the Appointments Clause.  U.S. Const. art. II, § 2.  That Clause requires principal officers of the United States to be nominated by the President and confirmed by the Senate, but allows inferior officers to be appointed by the "Heads of Departments."  *Id.*  The complaint alleges that Board members are principal officers and therefore must be nominated by the President and confirmed by the Senate, rather than appointed by the Commission.  Compl. ¶ 90. In the alternative, the complaint asserts that, if the Board members are inferior officers, the Commission still cannot appoint them because (1) the SEC is not a "Department," and (2) even if the SEC were a Department, the Chairman rather than the five Commissioners would be the Department's "Head."  Compl. ¶ 91.  Plaintiffs further urge that the requirement that two and only two Board members be accountants, and that the Commission consult with the Federal Reserve and Treasury Department when appointing Board members, are improper limitations on the power to appoint.  Compl. ¶ 92.  Finally, Count III alleges that Sarbanes-Oxley is an unconstitutional delegation of legislative authority to the Board.  Compl. ¶¶ 93-95.

Beckstead and Watts alleges that the Board's auditing standards have injured it by substantially increasing the time and expense of its public-company audits.  Compl. ¶¶ 72-73.  It asserts that, in response to the defects identified by the Board, it reduced the number of clients it audits, leading to further reduction in profits.  Compl. ¶ 77.  Beckstead and Watts also claims that its professional reputation has been damaged by the Board's inspection report.  Compl. ¶ 80. Finally, Beckstead and Watts alleges that the Board's ongoing investigation is subjecting it to "burdensome discovery" and "legal fees."  Compl. ¶¶ 79-80.

The Free Enterprise Fund, for its part, alleges that it is a non-profit organization that supports "economic growth, lower taxes, and limited government."  Compl. ¶ 11.  Its sole allegation of injury is that its members are "subject to the Board's authority and have been injured by

the regulations imposed by the Board." *Id.* The Free Enterprise Fund does not identify who its members are, how they have been injured, or which regulations caused those injuries.

Neither plaintiff has raised its claims before the Board, the Commission, or the court of appeals. Neither plaintiff submitted comments or otherwise participated in the Board's rulemaking proceedings. Neither plaintiff submitted comments or otherwise participated in the SEC's review of the Board's rules, even though comment periods were open for proposed rules shortly before and after plaintiffs' complaint was filed.[8] Neither plaintiff sought judicial review of the Commission's approval of any Board rules, even though the 60-day period for review was open for one rule when the complaint was filed,[9] and is still open for another rule now.[10] Finally, neither plaintiff filed a petition for rulemaking with the SEC under § 107(d)(1) of Sarbanes-Oxley to modify or withdraw the Board's authority in any respect. 15 U.S.C. § 7217(d)(1).

## SUMMARY OF ARGUMENT

Plaintiffs' suit should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). First and foremost, this Court lacks jurisdiction because this suit was brought outside Congress's exclusive statutory review mechanism. Sarbanes-Oxley, together with the Exchange Act, establishes a detailed mechanism for administrative and judicial review. Because that review mechanism is not only

---

[8] *See Notice of Filing of Proposed Rule on Auditing Standard No. 4*, Exchange Act Release No. 34-52990 (Dec. 21, 2005), *available at* http://www.sec.gov/rules/pcaob/34-52990.pdf; *Notice of Filing of Proposed Ethics and Independence Rules Concerning Independence, Tax Services, and Contingent Fees*, Exchange Act Release No. 34-53427 (Mar. 7, 2006), *available at* http://www.sec.gov/rules/pcaob/34-53427.pdf.

[9] *See Order Approving Proposed Auditing Standard No. 4*, Exchange Act Release No. 34-53227 (Feb. 6, 2006), *available at* http://www.sec.gov/rules/pcaob/34-53227.pdf.

[10] *See Order Approving Proposed Ethics and Independence Rules Concerning Independence, Tax Services, and Contingent Fees*, Exchange Act Release No. 34-53677 (Apr. 19, 2006), *available at* http://www.sec.gov/rules/pcaob/2006/34-53677.pdf.

comprehensive but also adequate to address plaintiffs' constitutional claims, it is exclusive. It cannot be circumvented by filing suit in district court instead.

That conclusion is reinforced by the history of the pre-existing review mechanisms Congress explicitly incorporated in Sarbanes-Oxley — mechanisms repeatedly held exclusive in the decades leading up to Sarbanes-Oxley's enactment. Every one of plaintiffs' complaints about the Board could have been — and still could be — meaningfully addressed through the processes Congress provided. By failing to avail themselves of those processes (and thereby also failing to exhaust administrative remedies), plaintiffs have undermined the purposes of the exclusive statutory review mechanism.

Second, plaintiffs' suit should be dismissed for failure to state a claim. Plaintiffs identify no statutory cause of action that authorizes this district-court suit against the Board. Nor should this Court judicially imply a cause of action where Congress has specified other fully adequate means of review to address plaintiffs' claims.

Finally, even if plaintiffs' suit were not barred for the reasons above, several claims would still have to be dismissed for lack of standing. First, Free Enterprise Fund's vague and generalized allegations of harm are insufficient, even under lenient notice-pleading standards. Second, neither plaintiff has standing to challenge the Act's restrictions on the Commission's appointment authority — the limitation on the number of Board members who may be accountants and the requirement that the Commission consult with the Federal Reserve and Treasury Department before making appointments. Finally, neither plaintiff has standing to challenge the fact that the Act grants appointment authority to the Commission collectively rather than to the Commission's Chairman alone. The Chairman was one of the five Commissioners who voted on appointments, and he concurred in each vote. Plaintiffs therefore

suffered no injury fairly traceable to Congress's decision to vest appointment authority in the Commission rather than the Chairman.

**ARGUMENT**

## I.    PLAINTIFFS HAVE BYPASSED CONGRESS'S EXCLUSIVE STATUTORY MECHANISM FOR JUDICIAL REVIEW

Plaintiffs' complaint should be dismissed because plaintiffs have bypassed Congress's express provisions governing judicial review of Board actions.  The securities laws carefully specify the timing and manner of administrative and judicial review.  Although the express statutory avenues of review were fully available to plaintiffs and were adequate to address their constitutional claims, plaintiffs have ignored Congress's mandated review process and instead sought to enjoin an ongoing Board investigation in this Court.  That attempt to circumvent the statutory mechanism should not be countenanced.

### A.    Where Congress Provides a Comprehensive Remedial Scheme, That Scheme Is Presumed To Be Exclusive

Time and again, the Supreme Court and the D.C. Circuit have recognized that, when Congress channels judicial challenges through a specified statutory mechanism, courts lack jurisdiction to entertain challenges by other means.  *See Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 414, 419 (1965) (district court "had no jurisdiction" because "Congress intended the statutory proceedings . . . to be the sole means" of review); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 218 (1994) ("administrative structure was intended to preclude district court jurisdiction over petitioner's claims"); *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 871-73 (D.C. Cir. 2002) (same).  Congress need not explicitly state that a review mechanism is exclusive; its intent need only be "'fairly discernible in the statutory scheme.'" *Thunder Basin*, 510 U.S. at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).  "Whether a statute is intended to preclude initial judicial review [by other means] is

determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Id.* (citation omitted).

Where a federal statute establishes a comprehensive review process that specifies where, when, and how challenges may be brought, that is strong evidence that Congress intended to preclude challenges by other means. For example, in *Whitney National Bank*, the Supreme Court observed that "Congress has set out in the Bank Holding Company Act of 1956 a carefully planned and comprehensive method for challenging [Federal Reserve] Board determinations" in the court of appeals. 379 U.S. at 420. Although Congress had not "expressly provided that the statutory procedure is to be exclusive," the Court held that the comprehensive structure of the review mechanism showed that Congress intended that result. *Id.* at 420-22.

Likewise, in *Thunder Basin*, the Supreme Court held that the Mine Act's "detailed structure for review[]" — which provided for review first before the Federal Mine Safety and Health Review Commission and then in the court of appeals — was exclusive. 510 U.S. at 207. Although the Act was "facially silent with respect to pre-enforcement claims," the Court concluded that Congress's "comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishe[d] a 'fairly discernible' intent to preclude district court review in the present case." *Id.* at 208, 216; *cf. City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005) (exclusivity may be "inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983'" (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997))); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of

16

suits under § 1983."); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) ("'comprehensive and reticulated statute[s]' . . . should not be supplemented by extratextual remedies").

In *Sturm, Ruger*, the D.C. Circuit applied the same reasoning to preclude claims against the Occupational Safety and Health Administration outside the statutory review structure.  The court held that, because the Occupational Safety and Health Act included its own "comprehensive review process" in which employers could present their claims to the Occupational Safety and Health Review Commission and then to the court of appeals, the district court "lack[ed] . . . subject matter jurisdiction."  300 F.3d at 871-73, 877; *see also City of Rochester v. Bond*, 603 F.2d 927, 935 (D.C. Cir. 1979) ("'[E]ven where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute.'" (quoting *Inv. Co. Inst. v. Bd. of Governors of Fed. Reserve Sys.*, 551 F.2d 1270, 1279 (D.C. Cir. 1977))).  The law is clear:  "You may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under 1331 or 1337; the specific statutory method, if adequate, is exclusive."  *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983) (Posner, J.); *accord Eastern Bridge, LLC v. Chao*, 320 F.3d 84, 88-92 (1st Cir. 2003) (district court lacked jurisdiction over claim against agency that could have been reviewed in court of appeals); *Nat'l Taxpayers Union v. SSA*, 376 F.3d 239, 242-44 (4th Cir. 2004) (challenges "must be adjudicated initially under the administrative review scheme established by Congress in the statute"); *Great Plains Coop v. Commodity Futures Trading Comm'n*, 205 F.3d 353, 355 (8th Cir. 2000) ("Allowing the target of an administrative complaint simply to file for an injunction in a federal district court would

17

defeat the purpose of [the review scheme]: It would create two avenues of judicial review and would allow the plaintiff to short-circuit the administrative review process . . . .").[11]

That rule applies with equal force to constitutional claims. In *Thunder Basin*, for example, the Supreme Court held that the Mine Act's exclusive review provisions applied to the constitutional due-process claim there because, even if the claim would not be entertained by the administrative commission, the claim could be "meaningfully addressed in the Court of Appeals" on review of the commission's decision. 510 U.S. at 215. Similarly, in *Sturm, Ruger*, the D.C. Circuit held that Congress intended the exclusive review provisions of the Occupational Safety and Health Act to apply even to the plaintiff's Fourth Amendment claim because the claim could be raised, *inter alia*, on judicial review in the court of appeals. *See* 300 F.3d at 873-75; *see also Am. Fed. of Gov't Employees, AFL-CIO v. Loy*, 367 F.3d 932, 936-37 (D.C. Cir. 2004) (First and Fifth Amendment claims); *Eastern Bridge*, 320 F.3d at 88-92 (Fourth Amendment claim); *Nat'l Taxpayers Union*, 376 F.3d at 242-43 (First Amendment claim).

Requiring plaintiffs to present constitutional claims to the agency first serves important objectives, even when the claims might not be resolved until review in the court of appeals. Constitutional challenges often turn on how a statute is interpreted. Channeling review through the agency ensures that the agency has the first opportunity to construe the statute, bringing its expertise to bear. *See Action for Children's Television v. FCC*, 59 F.3d 1249, 1257 (D.C. Cir. 1995). Agency review helps avoid unnecessary constitutional adjudication by allowing the agency to resolve a dispute on other grounds, potentially mooting constitutional questions. *See Weinberger v. Salfi*, 422 U.S. 749, 762 (1975). It ensures that ongoing agency enforcement

---

[11] The Supreme Court has found statutory review mechanisms exclusive even when — unlike here — they provide *no* remedy for certain statutory claims. *United States v. Fausto*, 484 U.S. 439, 447-55 (1988); *United States v. Erika, Inc.*, 456 U.S. 201, 206-08 (1982).

proceedings are not harassed by piecemeal and premature litigation. *See Sturm, Ruger*, 300 F.3d at 876. And exclusive review promotes judicial and administrative efficiency by centralizing and streamlining challenges. *See Whitney Nat'l Bank*, 379 U.S. at 422.

**B. Congress Provided a Comprehensive Review Process for Challenges to Board Authority**

The securities laws, and Sarbanes-Oxley in particular, prescribe precisely the sort of comprehensive review process that courts repeatedly have found exclusive. Those laws provide an elaborate and reticulated statutory scheme that details the forums for and limits of administrative and judicial review.

The procedures governing the Commission's own rulemaking and disciplinary proceedings specify how affected parties may participate before the agency, and permit aggrieved persons to seek review within 60 days in the court of appeals. *See* p. 3, *supra*. Grounds not urged before the Commission generally may not be reviewed in the courts. 15 U.S.C. § 78y(c)(1). Likewise, the securities laws provide a comprehensive mechanism for administrative and judicial review of SRO actions, channeling challenges through the SRO, the SEC, and finally to the court of appeals. *See* pp. 3-5, *supra*.

Sarbanes-Oxley continues that pattern of carefully crafted procedures for administrative and judicial review. With respect to rulemaking, for example, § 107(b)(2) of the Act provides that no Board rule shall become effective without Commission approval. 15 U.S.C. § 7217(b)(2). When the Board proposes a rule, the Commission must publish it for comment. § 107(b)(4), 15 U.S.C. § 7217(b)(4) (incorporating 15 U.S.C. § 78s(b)(1)-(3)). The Commission can then accept or reject the proposed rule. § 107(b)(3)-(4), 15 U.S.C. § 7217(b)(3)-(4). It may also modify, add to, or withdraw Board rules at any time. § 107(b)(5), 15 U.S.C. § 7217(b)(5) (incorporating 15 U.S.C. § 78s(c)). In either case, as with other Commission decisions, an

aggrieved person has 60 days to petition for review in the court of appeals.   15 U.S.C. § 78y(a), (b).

Sarbanes-Oxley likewise establishes a detailed and comprehensive review structure for other Board actions, specifying in each instance the forum, timing, and standards of review.   It sets forth procedures for review of Board disciplinary actions.[12]   It addresses review of accounting support fee rules,[13] and denials of registration.[14]   And it carefully delineates the procedures for review of Board inspection reports.[15]   Congress's comprehensive specification of the forum, timing, and scope of administrative and judicial review demonstrates its intent to establish an exclusive review regime.

Indeed, Congress's review regime specifically addresses *every injury* plaintiffs claim to have suffered.   Plaintiffs claim injury from the Board's allegedly "burdensome" auditing

---

[12] Any person aggrieved by a sanction may apply for review by the Commission within 30 days, § 107(c)(2), 15 U.S.C. § 7217(c)(2) (incorporating 15 U.S.C. § 78s(d)(2)), which automatically stays any sanction (unless the Commission orders otherwise), § 105(e)(1), 15 U.S.C. § 7215(e)(1).  The Commission may enhance, modify, cancel, reduce, or require the remission of the sanction.   § 107(c)(3), 15 U.S.C. § 7217(c)(3).  Any person aggrieved by that order may, within 60 days, seek judicial review in the court of appeals. 15 U.S.C. § 78y(a).  In addition, the Board's rules governing investigations must be published by the Commission for notice and comment and are subject to approval by the Commission followed by review in the court of appeals.  § 107(b)(2)-(5), 15 U.S.C. § 7217(b)(2)-(5); 15 U.S.C. § 78y(a), (b).

[13] The Board's rules for allocation, assessment, and collection of support fees are subject to approval by the Commission.   § 109(d), 15 U.S.C. § 7219(d); § 107(b), 15 U.S.C. § 7217(b). The Commission's order is reviewable by timely petition to the court of appeals.  15 U.S.C. § 78y(a).

[14] Refusals to register are reviewed under the same procedures as disciplinary sanctions. § 102(c)(2), 15 U.S.C. § 7212(c)(2).

[15] Following an inspection, the Board must furnish a draft report to the firm for comment. § 104(f), 15 U.S.C. § 7214(f).  If the firm disagrees with the Board's response, it may seek review by the Commission within 30 days.  § 104(h)(1)(A), (3), 15 U.S.C. § 7214(h)(1)(A), (3). The firm may also seek Commission review of the Board's decision to make certain parts of the report public.   § 104(h)(1)(B), 15 U.S.C. § 7214(h)(1)(B).  In addition, the Board's rules governing inspections must be published by the Commission for notice and comment and are subject to approval by the Commission followed by review in the court of appeals.  § 107(b)(2)-(5), 15 U.S.C. § 7217(b)(2)-(5); 15 U.S.C. § 78y(a), (b).

standards, Compl. ¶¶ 36-38, 62-64, 72-73; its accounting support fee, Compl. ¶¶ 45-54, 65-68; its inspection report, Compl. ¶¶ 40, 74-78, 80; and its "currently ongoing" disciplinary investigation, Compl. ¶¶ 41-44, 79-80. Sarbanes-Oxley addresses review of *each* of those Board actions. *See* pp. 19-20 & nn.12-15, *supra*. Plaintiffs should not be permitted to bypass that statutory regime by pursuing this extra-statutory lawsuit in district court.

Sarbanes-Oxley's review provisions are at least as comprehensive as those found exclusive in *Thunder Basin*, *Sturm, Ruger*, and *National Taxpayers Union*. The Mine Act provisions at issue in *Thunder Basin*, for example, provided that mine operators had to challenge agency actions before the administrative commission within a specified time limit, 510 U.S. at 207; that challenges were heard by an administrative law judge subject to discretionary *de novo* review by the commission, *id.* at 207-08; that the commission could grant temporary relief pending review of most orders and had to expedite review where necessary, *id.* at 208; and that operators could challenge commission decisions only in the appropriate court of appeals, *id.*; *see also Sturm, Ruger*, 300 F.3d at 872-73 (relying on essentially the same factors to find the Occupational Safety and Health Act's review scheme exclusive); *Nat'l Taxpayers Union*, 376 F.3d at 242-43 (same for the Social Security Act).

Sarbanes-Oxley's review provisions have similar features. Accounting firms may challenge disciplinary sanctions or comment on proposed rules before the Commission only within specified time limits. § 107(c)(2), 15 U.S.C. § 7217(c)(2) (incorporating 15 U.S.C. § 78s(d)(2)); § 107(b)(4), 15 U.S.C. § 7217(b)(4) (incorporating 15 U.S.C. § 78s(b)(2)). The statute specifies the Commission's standards of review. § 107(b)(3), (c)(3), 15 U.S.C. § 7217(b)(3), (c)(3). Applications for Commission review operate as a stay of any sanction, and the Commission must provide certain expedited procedures. § 105(e)(1)-(2), 15 U.S.C.

§ 7215(e)(1)-(2).  Commission decisions are reviewable only in the appropriate court of appeals. 15 U.S.C. § 78y(a), (b).  And the jurisdiction of the court of appeals is just as "exclusive" as it is under the Mine Act.  *Compare* 15 U.S.C. § 78y(a)(3), (b)(3), *with* 30 U.S.C. § 816(a)(1).

In *Thunder Basin*, moreover, the Supreme Court found it significant that the Mine Act expressly authorized district court jurisdiction over suits *by the agency* to enjoin violations, but did not confer district court jurisdiction over actions *by mine operators* complaining about agency actions.  510 U.S. at 209; *see also Sturm, Ruger*, 300 F.3d at 873 (similar); *Nat'l Taxpayers Union*, 376 F.3d at 243 (similar).  Likewise here, the securities laws authorize the *Commission* to bring enforcement suits in district court, 15 U.S.C. § 77t(b)-(e); *id.* § 78u(d)(1)-(3), (e); *id.* § 78aa, but confer no district court jurisdiction over suits by *accountants* complaining about the Board's actions.  As in *Thunder Basin*, Congress did not provide for that jurisdiction because it did not intend for it to exist.

### C.    The Statutory and Legislative History of Sarbanes-Oxley's Review Provisions Confirm Congress's Intent That They Be Exclusive

The origins and history of Sarbanes-Oxley's review provisions confirm that Congress intended them to be exclusive.  Rather than create those provisions from scratch, Congress incorporated, *mutatis mutandis*, provisions from the Exchange Act applicable to SROs such as the New York Stock Exchange and the NASD.  Courts had long construed those provisions to be exclusive.  When Congress incorporated those provisions into Sarbanes-Oxley, it intended the same construction.

The Exchange Act establishes a detailed mechanism for SEC review of SRO rulemakings and disciplinary actions, followed by judicial review in the court of appeals.  *See* 15 U.S.C. § 78s(b)-(e); *id.* § 78y; pp. 3-5, *supra*.  Courts of appeals interpreting those provisions have long held them to be exclusive, either as a jurisdictional matter or under the related doctrine of

exhaustion.  *See Swirsky v. NASD*, 124 F.3d 59, 62 (1st Cir. 1997) (dismissing suit against SRO because the " 'comprehensiveness of the review procedure suggests that the doctrine of exhaustion of administrative remedies should be applied to prevent circumvention of established procedures' "); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*, 616 F.2d 1363, 1370 (5th Cir. 1980) (similar); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979) (similar); *cf. Nassar & Co. v. SEC*, 566 F.2d 790, 792 n.3 (D.C. Cir. 1977) ("§ 25(a) of the Securities Exchange Act provides for review of Commission orders in the Court of Appeals. . . .  [T]he district court was correct in dismissing the declaratory action for lack of subject matter jurisdiction."); *SEC v. Andrews*, 88 F.2d 441, 441-42 (2d Cir. 1937) (district court was "without jurisdiction . . . to restrain the execution of an order of the Commission").  Countless district court decisions have reached the same conclusion,[16] as have the leading treatises.[17]  As one court observed, the Exchange Act's SRO review provisions are "indistinguishable" from those the Supreme Court found comprehensive — and therefore exclusive — in *Thunder Basin*.  *See Hayden*, 4 F. Supp. 2d at 338.

---

[16] *See Marchiano v. NASD*, 134 F. Supp. 2d 90, 94-95 (D.D.C. 2001); *Am. Benefits Group, Inc. v. NASD*, No. 99 Civ. 4733, 1999 WL 605246, at *8 (S.D.N.Y. Aug. 10, 1999); *Coleman v. NASD*, No. 99 Civ. 248, 1999 WL 305100, at *2 (S.D.N.Y. May 14, 1999); *Desiderio v. NASD*, 2 F. Supp. 2d 516, 522 (S.D.N.Y. 1998); *Hayden v. N.Y. Stock Exch.*, 4 F. Supp. 2d 335, 337-40 (S.D.N.Y. 1998); *Datek Sec. Corp. v. NASD*, 875 F. Supp. 230, 233 (S.D.N.Y. 1995); *Roach v. Woltmann*, 879 F. Supp. 1039, 1041-42 (C.D. Cal. 1994); *Alton v. NASD*, No. C-94-0618, 1994 WL 443460, at *2-3 (N.D. Cal. July 26, 1994); *Belfort v. NASD*, No. 93 Civ. 7159, 1994 WL 97021, at *1-2 (S.D.N.Y. Mar. 24, 1994); *Maschler v. NASD*, 827 F. Supp. 131, 132 (E.D.N.Y. 1993); *McLaughlin, Piven, Vogel, Inc. v. NASD*, 733 F. Supp. 694, 696-97 (S.D.N.Y. 1990); *Prevatte v. NASD*, 682 F. Supp. 913, 917-18 (W.D. Mich. 1988); *cf. Hirschberg v. Commodity Futures Trading Comm'n*, No. 02 C 6483, 2003 WL 22019310, at *4-5 (N.D. Ill. Aug. 27, 2003) (corresponding provisions of Commodity Exchange Act).

[17] *See* 10 L. Loss & J. Seligman, *Securities Regulation* 4857-66 & n.32 (3d ed. 2005) ("[W]hen the statutory method of judicial review is constitutionally adequate, it is exclusive and there is no jurisdiction in any United States district court . . . ."); 4 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 14.3, at 139 & n.96 (5th ed. 2005) ("Courts generally will not permit collateral attack as an alternative to the statutory review process for disciplinary proceedings.").

Congress did not merely model Sarbanes-Oxley on those Exchange Act provisions. Section 107 of Sarbanes-Oxley *expressly incorporates* them, making the procedures for Commission review of SRO rules and disciplinary orders applicable to Board rules and disciplinary orders "as fully as if the Board were [an SRO]."[18]  The Commission's orders in turn are reviewable by the court of appeals under § 25 of the Exchange Act, 15 U.S.C. § 78y — the same provision that governs judicial review of SEC orders on review of SRO actions.

It is well established that, "where . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 581 (1978); *see also Bragdon v. Abbott*, 524 U.S. 624, 645 (1998); *INS v. Phinpathya*, 464 U.S. 183, 200 (1984).  Indeed, the Supreme Court has held that, where even a single " 'word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.' "  *Evans v. United States*, 504 U.S. 255, 260 n.3 (1992) (quoting Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).    Here, Congress transplanted an entire pre-existing mechanism for administrative and judicial review that had long been construed as exclusive.  By incorporating those provisions in Sarbanes-Oxley and making them applicable to the Board, Congress evinced

---

[18] § 107(b)(4), 15 U.S.C. § 7217(b)(4) ("The provisions of paragraphs (1) through (3) of section 19(b) of the Securities Exchange Act of 1934," which govern SEC review of SRO rulemakings, "shall govern the proposed rules of the Board, as fully as if the Board were a 'registered securities association' for purposes of that section 19(b)."); § 107(b)(5), 15 U.S.C. § 7217(b)(5) ("The provisions of section 19(c) of the Securities Exchange Act of 1934 shall govern the abrogation, deletion, or addition to portions of the rules of the Board by the Commission as fully as if the Board were a 'registered securities association' for purposes of that section 19(c)."); § 107(c)(2), 15 U.S.C. § 7217(c)(2) ("The provisions of sections 19(d)(2) and 19(e)(1) of the Securities Exchange Act of 1934," which govern SEC review of SRO sanctions, "shall govern the review by the Commission of final disciplinary sanctions imposed by the Board . . . as fully as if the Board were a self-regulatory organization.").

its intent that courts apply the same construction.  Whether analyzed as a matter of jurisdiction or exhaustion, the result is the same:  Plaintiffs may not bring claims in a manner that Congress intended to foreclose.

Legislative history confirms that conclusion.  When Congress adopted the current system of administrative and judicial review for SROs in 1975, it deliberately displaced jurisdiction formerly lodged in the district courts in favor of review in the courts of appeals.  *See* S. Rep. No. 94-75, at 36 (1975).  "The Court of Appeals," the Senate Report explains, "appears to provide the most appropriate forum for this review in light of the fact that the District Court's fact finding function is rarely necessary and the questions subject to review are likely to end up in the higher court anyway."  *Id.* at 37.  Sarbanes-Oxley's own legislative history shows that Congress consciously chose to incorporate that same regime into the new Act.  The Senate Banking Committee's report observes that "[t]he rules for SEC oversight of the Board are generally the same as those that apply to SEC oversight of the National Association of Securities Dealers, under section 19 of the Securities Exchange Act."  S. Rep. No. 107-205, at 12 (2002); *see also id.* at 49 ("Section 107 makes the Board generally subject to the same degree of control by the Commission as the National Association of Securities Dealers or the New York Stock Exchange.").  Plaintiffs' attempt to bring this action in district court reintroduces precisely the avenue of review that Congress purposefully eliminated in 1975.

**D.    Congress's Statutory Review Mechanism Is Adequate To Address Plaintiffs' Constitutional Claims**

Plaintiffs' constitutional claims can be more than adequately addressed within the statutory review mechanism Congress created:  Plaintiffs need only raise their claims before the Commission on review of a Board disciplinary sanction, rulemaking, or other proceeding, and then challenge the Commission's decision in the court of appeals under § 25 of the Exchange

Act.    Courts routinely consider constitutional claims in that posture, including facial

constitutional challenges to SEC-administered statutes no different from the challenges plaintiffs

seek to raise here.    *See, e.g.*, *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 104-06 (1946)

(nondelegation challenge to Public Utility Holding Company Act); *Sheldon v. SEC*, 45 F.3d

1515, 1518-19 (11th Cir. 1995) (separation-of-powers and structural due-process challenge to

SEC's organization); *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1103-08 (D.C. Cir. 1988)

(same); *Intercontinental Indus. v. Am. Stock Exch.*, 452 F.2d 935, 942-43 (5th Cir. 1971) (same);

*Sorrell v. SEC*, 679 F.2d 1323, 1325-26 (9th Cir. 1982) (nondelegation challenge to NASD's

enabling statute); *Todd & Co. v. SEC*, 557 F.2d 1008, 1012-13 (3d Cir. 1977) (same); *R.H.

Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952) (same).[19]

For that reason, courts in analogous circumstances have held that plaintiffs must raise

constitutional claims through Congress's statutory review mechanisms even if the agency itself

would not consider them.    In *Thunder Basin*, for example, the Supreme Court held that, even if

the reviewing agency would not itself address constitutional challenges, those claims were still

"of the type Congress intended to be reviewed within this statutory structure" because they could

be "meaningfully addressed in the Court of Appeals."    510 U.S. at 212, 215; *see Nat'l Taxpayers

Union*, 376 F.3d at 243 ("[*Thunder Basin*] seems to have rested its conclusion on the fact that the

plaintiff's constitutional claim could be meaningfully addressed by the court of appeals in due

---

[19] Even when the Commission refuses to hear a constitutional claim, it allows parties to raise the
claim for the record to preserve it for review.    *See, e.g.*, *In re Middle West Corp.*, Public Utility
Holding Company Act Release No. 35-3646, 1942 WL 33793, at *3 (July 6, 1942) ("Respon-
dents also raise questions with respect to the constitutionality of the Act . . . which are, in all
probability, presented to us only in order to preserve such questions in the event of an appeal to
the courts."); *In re North Am. Co.*, Public Utility Holding Company Act Release No. 35-3405,
1942 WL 34307, at *4 n.2 (Apr. 14, 1942) (similar); *In re Wright*, Exchange Act Release No. 34-
1598, 1938 WL 32956, at *20 (Feb. 28, 1938) (similar).

course.").   "Where statutory review is available in the Court of Appeals it will rarely be

inadequate."  *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 78 (D.C. Cir. 1984).

      The same rule applies to facial constitutional challenges to statutes the agency

administers.  In *Weinberger*, the Supreme Court held that subsequent judicial review was an

adequate and exclusive remedy for constitutional challenges to the statute the agency

administered, even though the agency would not consider those claims itself.  *See* 422 U.S. at

762 (describing the review regime as "unquestionabl[y] constitutional[]" and "manifestly

reasonable").  In *American Coalition for Competitive Trade v. Clinton*, the D.C. Circuit rejected

an Appointments Clause challenge to NAFTA's binational panel review system because the

petitioner had bypassed Congress's statutory review scheme.  *See* 128 F.3d 761, 765-67 (D.C.

Cir. 1997) (noting that "[m]any agency adjudication schemes require petitioners to exhaust their

administrative remedies before bringing their constitutional claims to Article III courts").  And in

*National Taxpayers Union*, the Fourth Circuit held that Congress's exclusive statutory review

mechanism precluded suit in district court, even though the plaintiff challenged a federal statute

"as a violation of the First Amendment on its face."   376 F.3d at 243.   "[E]ven if the

administrative agency elects not to decide the constitutional claims," that court declared, "this

court can do so at the appropriate time" on review of the agency's decision.  *Id.* at 243-44.[20]

---

[20] In *Time Warner Entertainment Co., L.P. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996), the D.C.
Circuit held that district courts have jurisdiction over certain facial challenges to an agency's
enabling statute if the suit is "entirely independent of any agency proceedings, whether actual or
prospective." *Id.* at 964-65.  *Time Warner* is inapplicable here because, among other things, the
Board's "investigation and discovery [of plaintiff Beckstead and Watts] is currently ongoing."
Compl. ¶ 79; *see Nat'l Taxpayers Union*, 376 F.3d at 244 n.3 (*Time Warner* inapplicable to
facial constitutional challenge where plaintiff "brought this action in anticipation of imminent
enforcement proceedings, and its arguments amount to defenses to enforcement").  But even if
*Time Warner* removed any *jurisdictional* impediment to plaintiffs' suit in district court,
principles of exhaustion would still require plaintiffs to present their claims to the Commission
first.  *See Marchiano*, 134 F. Supp. 2d at 94 ("[E]ven if this court did have *TRAC* jurisdiction

Courts have applied the same rule to the Exchange Act's SRO review provisions — the very provisions incorporated into Sarbanes-Oxley, *see* pp. 22-25, *supra* — finding the statutory procedures adequate to address constitutional claims, and rejecting attempts to bypass them.  *See Swirsky*, 124 F.3d at 63 (" 'Ultimate review by the court of appeals ensures that constitutional or statutory errors will not go unremedied.' "); *First Jersey*, 605 F.2d at 696 (same); *Hirschberg*, 2003 WL 22019310, at *4 ("Because Hirschberg's constitutional claims also 'can be meaningfully addressed in the court of appeals,' this court's jurisdiction would duplicate the CEA's statutory appeals procedure.").  Indeed, in *First Jersey*, the Third Circuit held that Congress's exclusive statutory review scheme applied even to a claim that the NASD's enabling act was a facially "unconstitutional delegation of legislative power to a private institution."  605 F.2d at 697.  Plaintiffs allege a virtually identical claim here.  Compl. ¶¶ 93-95.

Nothing in the complaint suggests that plaintiffs will suffer irreparable injury of the sort that might render the statutory procedures inadequate.  Irreparable injury at best is a "narrow exception."  *First Jersey*, 605 F.2d at 696.  Free Enterprise Fund's allegations of "injury" are wholly abstract.  *See* pp. 39-40, *infra*.  Beckstead and Watts's alleged injuries — "reduction in . . . revenues and profits," "burdensome discovery," "legal fees," and loss of "professional reputation," Compl. ¶¶ 77-80 — are ordinary incidents of any agency enforcement proceeding, and have never been thought to establish irreparable injury.  *See First Jersey*, 605 F.2d at 697 n.4 ("delay," "pecuniary hardship," and "stress" of investigation not sufficient); *Hayden*, 4 F. Supp. 2d at 340 ("adverse publicity" and "delay and cost of litigation" not sufficient); *Roach*, 879 F.

---

[under *Time Warner*], the court would still dismiss the complaint on the grounds that Marchiano failed to exhaust his administrative remedies."); *cf.* 15 U.S.C. § 78y(c)(1) ("No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.").

Supp. at 1042 ("loss of . . . occupation and livelihood" not sufficient); *Hirschberg*, 2003 WL 22019310, at *5 (similar).[21]

Plaintiffs, like any other firms subject to the Board's authority, had ample opportunity to challenge the Board's authority by seeking review through the mechanisms Congress provided. *See* pp. 5-9, *supra*; *cf. Am. Benefits Group*, 1999 WL 605246, at *7 ("ABG knew or should have known that it had the opportunity to object to the rules by timely petitioning the SEC and thereafter seeking judicial review . . . ."). They could have challenged the Board's auditing standards, the Board's rules respecting support fees, or any other Board rule before the Commission and, following the Commission's decision, pursued their constitutional claims in the court of appeals. § 107(b), 15 U.S.C. § 7217(b). They could have petitioned the Commission to withdraw the Board's authority in whole or in part, and challenged any refusal on constitutional grounds. § 107(d)(1), 15 U.S.C. § 7217(d)(1). Had plaintiffs pursued any of those remedies, their claims would already be pending in — or resolved by — the court of appeals.

---

[21] Although Congress foreclosed judicial review of inspection reports, § 104(h)(2), 15 U.S.C. § 7214(h)(2); p. 8, *supra*, those reports have no *legal* consequences. "Board inspections are not intended to result in conclusive findings, based solely on the inspection, that there has been a violation of law, rules, or professional standards. Such violations cannot be considered to be established for legal purposes other than through the Board's disciplinary process (which includes a hearing with an opportunity to defend and a right to seek review by the Commission and the court of appeals) or through the relevant processes of other regulators or the courts." *Statement Concerning the Issuance of Inspection Reports*, PCAOB Release No. 104-2004-001, at 8-9 (Aug. 26, 2004), *available at* http://www.pcaob.org/inspections/statement_concerning_inspection_reports.pdf. In the event that a finding in the report leads to an investigation and disciplinary sanctions, that ultimate finding is reviewable by the Commission and the courts. § 107(c), 15 U.S.C. § 7217(c). No more is required. *See Aerosource, Inc. v. Slater*, 142 F.3d 572, 576-82 (3d Cir. 1998) (negative inspection report that "imposed no obligations, denied no right, and did not fix or alter a legal relationship" was not judicially reviewable, even though it had "severe adverse impact" on petitioner's business); *cf. Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643-44 (D.C. Cir. 2003) (negative inspection report cannot support due-process claim unless it has a "practical effect" approaching "formal exclusion from a chosen trade or profession").

Having bypassed all of those options, plaintiffs should not be heard to complain that their injuries are "irreparable" now.

### E.    Plaintiffs' Suit Frustrates Congress's Purposes in Establishing an Exclusive Statutory Review Mechanism

Plaintiffs' attempt to bring this action in district court is not merely inconsistent with the statutory review structure. It also undermines Congress's purposes in establishing that structure.

1.    By now it cannot be gainsaid that courts must defer to an agency's construction of a statute entrusted to it for administration. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984). By channeling challenges through the SEC as a precondition to judicial review, Sarbanes-Oxley ensures that, if and when courts are eventually called upon to review the Act's constitutionality, they do so with the benefit of the Commission's authoritative construction of the statute in light of its experience and expertise. *See Action for Children's Television*, 59 F.3d at 1257 ("[I]t would be premature for a court to interpret the statute . . . without the agency itself . . . having done so first."); *Fausto,* 484 U.S. at 449 (exclusive review "enables the development, through the [agency], of a unitary and consistent Executive Branch position . . . and '[e]ncourages more consistent judicial decisions' " (quoting S. Rep. No. 95-969, at 52 (1978))).

Here, the Commission's authoritative construction of the Act is necessary to intelligent resolution of plaintiffs' constitutional claims. Plaintiffs urge throughout their complaint that the Board exercises wide-ranging powers subject only to "circumscribed" or "nominal" SEC oversight and review. *See, e.g.*, Compl. ¶ 84 ("wide-ranging . . . executive or administrative power" subject only to "circumscribed" SEC review); Compl. ¶ 90 ("wide-ranging discretion, duties, functions and independence"); Compl. ¶¶ 55-60 ("[n]ominal" oversight). Each of plaintiffs' claims — that the Board violates separation-of-powers principles by exercising

30

unsupervised executive power (Count I), that the Board's vast powers render its members "principal officers" appointed in violation of the Appointments Clause (Count II), and that the Board wields unsupervised legislative power in violation of the nondelegation doctrine (Count III) — depends on that description of the Board's authority.

But the oversight provisions on which plaintiffs rely are subject to interpretation. For example, plaintiffs argue that the Commission's oversight of Board rulemaking is "minimal" because it must approve Board rules if they are "'consistent with the requirements'" of the securities laws or "'necessary or appropriate in the public interest or for the protection of investors.'" Compl. ¶ 56 (quoting § 107(b)(3), 15 U.S.C. § 7217(b)(3)). Plaintiffs similarly claim that the Commission's oversight of Board sanctions is "limited" because it must affirm a sanction unless, "'having due regard for the public interest and the protection of investors,'" it finds the sanction "'not necessary or appropriate in furtherance of th[e] Act or the securities laws'" or "'excessive, oppressive, inadequate, or otherwise not appropriate to the finding or the basis on which the sanction was imposed.'" Compl. ¶ 58 (quoting § 107(c)(3), 15 U.S.C. § 7217(c)(3)). Those standards, however — including the degree of deference (if any) accorded to the Board's findings — should be construed by the Commission in the first instance.[22]

---

[22] For example, § 107(b)(3) requires the Commission to approve a Board rule if it is "consistent with the requirements of th[e] Act and the securities laws, or is necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 7217(b)(3). Plaintiffs appear to construe that standard to require approval of any rule so long as it either does not conflict with the Act's requirements *or* is in the public interest. *See* Compl. ¶ 56. But it seems unlikely that Congress intended the Commission to approve rules that are not consistent with the securities laws but are in the public interest, or vice versa. Commission orders approving Board rules have typically found that the rules "are consistent with the requirements of the Act and the securities laws *and* are necessary and appropriate in the public interest and for the protection of investors." *See, e.g.*, *Order Approving Proposed Auditing Standard No. 4*, Exchange Act Release No. 34-53227, at 5 (Feb. 6, 2006), *available at* http://www.sec.gov/rules/pcaob/34-53227.pdf (emphasis added).

Commission interpretation is particularly important here because "'agency expertise [could] be brought to bear on' th[ose] statutory questions." *Thunder Basin*, 510 U.S. at 215 (quoting *Whitney Nat'l Bank*, 379 U.S. at 420). The Commission not only has expertise in construing statutes entrusted to it for administration, *see Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 315 (1933), but also has decades of experience reviewing SRO decisions under analogous provisions of the Exchange Act, *see* pp. 3-5, *supra*. This Court should not decide plaintiffs' constitutional claims until the Commission has brought its expertise to bear and construed the provisions on which those claims depend.

2.    Plaintiffs' attempt to bypass the statutory review mechanism also defeats Congress's effort to ensure that disputes are resolved on *non*-constitutional grounds whenever possible. Congress's exclusive review mechanism assures that the agency has an opportunity to avoid constitutional questions by deciding cases on other grounds. *See Weinberger*, 422 U.S. at 762 (administrative review "assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act"); *Am. Coal. for Competitive Trade*, 128 F.3d at 766 (exhaustion allows agency to "'eliminate the basis for a constitutional challenge. For example, a party who fears that the panel process may result in the denial of due process will hopefully have a different view after the process is over.'" (quoting H.R. Rep. No. 100-816, pt. 4, at 23 (1988))); *Massieu v. Reno*, 91 F.3d 416, 426 (3d Cir. 1996) (Alito, J.) (dismissing challenge because "[a] number of the issues to be resolved through administrative exhaustion could entirely moot plaintiff's constitutional challenge"); 2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 15.5, at 1004 (4th ed. 2002).

Even when an agency lacks authority to hear direct constitutional challenges to a statute it administers, *cf. Eng'rs Pub. Serv. Co. v. SEC*, 138 F.2d 936, 952 (D.C. Cir. 1943), *vacated as moot*, 332 U.S. 788 (1947), it can consider the constitutionality of its *own actions* when exercising discretionary authority assigned to it. *See Meredith Corp. v. FCC*, 809 F.2d 863, 872-74 (D.C. Cir. 1987) (agency is "obliged to resolve" constitutional challenges to actions not "specifically mandated by Congress"); *Syracuse Peace Council v. FCC*, 867 F.2d 654, 656 (D.C. Cir. 1989) (agency may not "blind itself to a constitutional defense to a 'self-generated' policy").[23]    Consequently, had plaintiffs followed Congress's exclusive statutory review mechanism, the Commission could have relied on principles of constitutional avoidance to construe its oversight authority expansively, thereby avoiding any perceived constitutional issues.  *See* pp. 30-32 & n.22, *supra*.  For example, by statute, the Board's rules are without effect unless the Commission approves them, § 107(b)(2), 15 U.S.C. § 7217(b)(2), and Board sanctions are stayed pending review by the Commission, § 105(e)(1), 15 U.S.C. § 7215(e)(1).  It is difficult to see how the Board could violate separation-of-powers or nondelegation principles, Compl. ¶¶ 81-85, 93-95, or how the Board's members could be "principal officers" for

---

[23] Adhering to that rule, the Commission routinely considers constitutional challenges to its own discretionary actions.  *See, e.g.*, *Notice of Filing of Proposed Rule Change Relating to Solicitation of Municipal Securities Business Under MSRB Rule G-38*, Exchange Act Release No. 34-51561, 85 SEC Docket 649, 2005 WL 1861765, at *8 (Apr. 15, 2005) (First Amendment challenge to proposed SRO rule change); *In re Marrie*, Exchange Act Release No. 34-48246, 80 SEC Docket 2163, 2003 WL 21741785, at *18 (July 29, 2003) (due-process challenge to enforcement proceeding), *rev'd on other grounds*, 374 F.3d 1196 (D.C. Cir. 2004); *In re Alderman*, Exchange Act Release No. 34-35997, 59 SEC Docket 2075, 1995 WL 442069, at *2 (July 20, 1995) (constitutional vagueness challenge to SRO rule); *Order Approving Proposed Rule Change by the Municipal Securities Rulemaking Board Relating to Political Contributions and Prohibitions on Municipal Securities Business*, Exchange Act Release No. 34-33868, 56 SEC Docket 1045, 1994 WL 117907, at *10-11 (Apr. 7, 1994) (First Amendment challenge to SRO rule change); *Dissemination and Display of Transaction Reports, Last Sale Data and Quotation Information*, Exchange Act Release No. 34-16590, 19 SEC Docket 659, 1980 WL 29568, at *7-8 (Feb. 19, 1980) (First Amendment challenge to Commission rule).

Appointments Clause purposes, Compl. ¶ 90, if the Commission were to render the Board's rules and sanctions advisory by ruling that it will approve them (and thus give them effect) only when it independently determines in its own judgment that it would do the same thing itself.

Had plaintiffs pursued their claims through the exclusive statutory review mechanism, moreover, other developments might have rendered constitutional adjudication unnecessary. The Board's investigation might exonerate Beckstead and Watts of any wrongdoing, or the Commission might have accepted the assertion that the Board's auditing standards are too burdensome and therefore rejected them as not in the public interest. Had plaintiffs petitioned the Commission to rescind the Board's authority under § 107(d)(1), the Commission might have concluded that it was "consistent with the public interest" to withdraw or modify the Board's authority. 15 U.S.C. § 7217(d)(1). Indeed, that "public interest" standard is broad enough to permit the Commission to consider constitutional concerns. *Cf. Whitney Nat'l Bank*, 379 U.S. at 418-19 ("public interest" standard includes consideration of compliance with other federal and state laws). By bringing this action outside the statutory scheme, plaintiffs have prevented resolution of the dispute on non-constitutional grounds. Indeed, that was their *purpose* for suing in this Court — to force adjudication of their constitutional claims. Exclusivity and exhaustion doctrines exist precisely to prevent parties from forcing unnecessary resolution of constitutional issues in that fashion.

3.     This action also undermines Congress's purpose of "preventing premature interference" with agency enforcement proceedings. *Weinberger*, 422 U.S. at 765; *cf. Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (noting "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied

equitable relief"). Congress determined that the enormous shareholder losses caused by auditing failures required immediate remedial action. The review mechanisms set forth in § 107(c) of the Act ensure that the Board and Commission are not distracted from their regulatory mission by the need to defend against piecemeal and premature litigation across the country every time the Board institutes an investigation. 15 U.S.C. § 7217(c). Rather, challenges are funneled through the Commission first, and then to the court of appeals, in an orderly fashion at specified times. By providing pre-enforcement review only for timely challenges to Board rules, and deferring review of enforcement until the imposition of sanctions, Congress sought to ensure that investigation targets would not hamper enforcement efforts with disruptive litigation.

This suit flies in the face of that design. Beckstead and Watts is the subject of a "currently ongoing" Board investigation. Compl. ¶ 79. It filed this lawsuit not merely to vindicate some abstract constitutional interest, but to shut down that investigation and any resulting enforcement proceeding. And it did so outside the review mechanism provided by Congress. That is reason enough to dismiss the suit. *See Sturm, Ruger*, 300 F.3d at 876 ("[T]he company . . . seeks an injunction permanently barring the Secretary from 'pursuing enforcement proceedings under the unlawful targeting inspection programs,' an injunction that would terminate the proceeding currently pending before the Commission. Our obligation to respect the review process established by Congress bars us from permitting Sturm Ruger to make this end run, and requires dismissal of its district court complaint." (citation omitted)); *Nat'l Taxpayers Union*, 376 F.3d at 244 n.3 (complaint filed "in anticipation of imminent enforcement proceedings . . . represents an impermissible attempt to evade the administrative review scheme established by Congress").

4.    Finally, this suit frustrates Congress's interest in promoting judicial and adminis-trative efficiency.  By funneling complaints to the Commission in the first instance, Congress ensured that challenges could be addressed against the backdrop of uniform agency decisions. *See Whitney Nat'l Bank*, 379 U.S. at 422 ("rejection of this doctrine . . . would result in unnecessary duplication and conflicting litigation"; "such duplicative procedures all militate in favor of the conclusion that the statutory steps provided in the Act are exclusive").  And by authorizing review of Commission decisions directly in the court of appeals, Congress ensured that those courts would develop expertise in securities matters and eliminated an "'unnecessary layer of judicial review.'"  *Fausto*, 484 U.S. at 449 (quoting S. Rep. No. 95-969, at 52 (1978)); *see* S. Rep. No. 94-75, at 37 (1975) ("The Court of Appeals appears to provide the most appropriate forum for . . . review [of SRO sanctions] in light of the fact that the District Court's fact finding function is rarely necessary and the questions subject to review are likely to end up in the higher court anyway."); *United Transp. Union v. Norfolk & W. Ry. Co.*, 822 F.2d 1114, 1120 (D.C. Cir. 1987) ("[C]oherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts.").

By suing in district court, plaintiffs have introduced precisely the "unnecessary layer" of review Congress sought to eliminate.  By avoiding the Commission, they create the potential for numerous lawsuits filed in different districts throughout the Nation.  And by failing to present their claims to the Commission, they undermine Congress's goal of ensuring that judicial review occurs against the backdrop of a uniform agency construction.

* * * * *

For all the foregoing reasons, plaintiffs should not be permitted to bypass the statutory review mechanism Congress created.  Because Congress intended that regime to be exclusive, this court lacks jurisdiction over the case.  Principles of exhaustion require the same result.

## II.    PLAINTIFFS HAVE FAILED TO IDENTIFY A CAUSE OF ACTION AUTHORIZING THIS SUIT

Plaintiffs' attempt to bypass the express statutory mechanism for judicial review is unavailing for a second reason:  Plaintiffs have failed to identify a cause of action that authorizes this suit against the Board in district court.  As the Supreme Court has explained, a plaintiff alleging a constitutional violation does not necessarily have a basis for suit.  Rather, the plaintiff must identify a cause of action that entitles him to demand the relief sought.  *See FDIC v. Meyer*, 510 U.S. 471, 483-84 (1994).  Here, plaintiffs do not claim to proceed (and in fact cannot proceed) against the Board under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.[24]  Nor do they identify any other statutory cause of action authorizing this suit.[25]  That, by itself, requires dismissal.  Even if the review scheme Congress provided in Sarbanes-Oxley were less detailed and elaborate than it is, plaintiffs still could not proceed absent a cause of action

---

[24] The APA applies only to "agenc[ies]."  5 U.S.C. § 702.  The Board by statute is not an "agency," *see* § 101(b), 15 U.S.C. § 7211(b), and Congress's designation is conclusive for purposes of the APA.  *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995).  In addition, the APA applies only to "*final* agency action for which there is *no other adequate remedy* in a court."  5 U.S.C. § 704 (emphasis added).  For all the reasons above, pp. 25-30, *supra*, that is not the case here.  The APA does not displace or supplement specific statutory regimes already provided by Congress.  *See Bond*, 603 F.2d at 935.

[25] Although plaintiffs invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331, *see* Compl. ¶ 10, that statute "does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources."  *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249 (1951).  Plaintiffs also cite the Declaratory Judgment Act, 28 U.S.C. § 2201, *see* Compl. ¶ 10, but that Act may "not be used to pre-empt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it [may] be used as a substitute for statutory methods of review."  *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 246 (1952).

authoring this suit.  *See Meyer*, 510 U.S. at 483-84.

Courts have sometimes *judicially implied* a cause of action for constitutional claims.  *See Meyer*, 510 U.S. at 483-86; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 399-400 (1971) (Harlan, J., concurring in judgment) (noting "presumed availability of federal equitable relief" for constitutional violations even absent a "statute creating a 'federal cause of action'").  But they have generally done so only where "the plaintiff lacked any other remedy for the alleged constitutional deprivation."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001) (describing *Davis v. Passman*, 442 U.S. 228 (1979)).  By contrast, where the "review mechanisms crafted by Congress provide[] meaningful redress," those mechanisms "foreclose[] the need to fashion a new, judicially crafted cause of action."  *Id.* at 68 (describing *Bush v. Lucas*, 462 U.S. 367 (1983)); *see, e.g.*, *id.* at 72-74 (refusing to extend implied cause of action for damages under *Bivens* where plaintiff had other remedies); *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 647 (2002) (noting that *Ex parte Young*'s implied cause of action for injunctive relief does not apply where it would be "inconsistent with the 'detailed remedial scheme' . . . Congress had prescribed" (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996))).  Here, the administrative and judicial review scheme provided by Congress is adequate to redress plaintiffs' claims.  As a result, there is no reason for this Court to imply an alternative cause of action that Congress did not itself provide.[26]

---

[26] The absence of statutory authorization for this action also underscores Congress's intent to make Sarbanes-Oxley's express review mechanism exclusive.  Even where Congress has created an alternative cause of action that is, "by its terms, literally applicable," the Supreme Court has held that "a precisely drawn, detailed statute pre-empts more general remedies."  *Brown v. GSA*, 425 U.S. 820, 834 (1976); *see, e.g.*, *Sea Clammers*, 453 U.S. at 20 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.").  *A fortiori*, plaintiffs should not be permitted to bypass the express mechanism for judicial review where, as here, Congress has *not* enacted an alternative cause of action.

### III.    PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR LACK OF STANDING

The complaint must also be dismissed in part because plaintiffs lack standing. Free Enterprise Fund's allegations are insufficient to support standing to raise any claim. And neither plaintiff has standing to raise significant portions of their Appointments Clause challenge.

### A.    Free Enterprise Fund's Allegations Are Insufficient To Support Standing

An association has standing to sue on behalf of its members only if its members would have standing to sue in their own right. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002). Consequently, the Free Enterprise Fund has standing only if one of its members has suffered (1) an injury in fact; that is (2) fairly traceable to the challenged conduct; and that is (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Fund Democracy*, 278 F.3d at 25.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561. Nevertheless, even at the pleading stage, allegations of injury may not be "*too* general." *Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1275 (D.C. Cir. 1994). "[N]ondescript and conclusory allegations of injury are not the type of 'general factual allegations' from which the Court may presume the 'specific facts' necessary to ensure that a plaintiff has standing." *Wright v. McPhie*, No. Civ. A. 04-1204, 2005 WL 3273556, at *3 (D.D.C. Sept. 27, 2005).

In *United States v. AVX Corp.*, 962 F.2d 108 (1st Cir. 1992), for example, the First Circuit refused to find standing from "conclusory" and "generalized" allegations of harm. *Id.* at 117. In that case, the National Wildlife Federation attempted to establish associational standing

by alleging that its " 'members have been and will continue to be harmed by the releases that are the subject of [the] litigation.' " *Id.* at 116. The court held those allegations inadequate:

> The averment has no substance: the members are unidentified; their places of abode are not stated; the extent and frequency of any individual use of the affected resources is left open to surmise. In short, the asserted injury is not anchored in any relevant particulars. The intervenor's papers do not contain an averment, much less a particularized showing, of the type of "concrete injury" that we have said is needed to confer standing in an environmental suit.

*Id.* at 117.

Here, Free Enterprise Fund's sole allegation of injury is that its members are "subject to the Board's authority and have been injured by the regulations imposed by the Board." Compl. ¶ 11. That is as vague as the National Wildlife Federation's allegation that its members " 'have been and will continue to be harmed by the releases that are the subject of [the] litigation.' " *AVX*, 962 F.2d at 116. Just as in *AVX*, the "members are unidentified" and the "asserted injury is not anchored in any relevant particulars." *Id.* at 117. Instead, Free Enterprise Fund has simply alleged that unspecified "members" suffered unspecified "injury" as a result of unspecified "regulations." Compl. ¶ 11. That is precisely the sort of "nondescript and conclusory allegation[] of injury" that fails to establish standing even at the pleading stage. *Wright*, 2005 WL 3273556, at *3.

**B.      Plaintiffs Lack Standing To Raise Certain Appointments Clause Challenges**

In addition, both plaintiffs lack standing to raise significant components of their Appointments Clause claim.

*1.      Plaintiffs Lack Standing To Challenge Restrictions on the Commission's Appointment Authority*

Plaintiffs object to two restrictions on the Commission's appointment power under Sarbanes-Oxley. They object to § 101(e)(2)'s requirement that two, and only two, of the Board's

40

five members "be or have been certified public accountants."  15 U.S.C. § 7211(e)(2).  And they

object to § 101(e)(4)'s requirement that the Commission "consult[] with the Chairman of the

Board of Governors of the Federal Reserve System and the Secretary of the Treasury" before

making appointments.  15 U.S.C. § 7211(e)(4).  According to plaintiffs, those modest restrictions

on the Commission's choice of Board members constitute "improper limitations on the power to

appoint."  Compl. ¶ 92.

       Under *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), however, private

parties — as opposed to the appointing officer whose authority is restricted — lack standing to

raise such claims.  In *NRA*, the plaintiffs challenged the Federal Election Campaign Act's

requirement that " '[n]o more than 3 members of the [Federal Election] Commission . . . may be

affiliated with the same political party,' " claiming that this was an unconstitutional restriction on

the President's appointment power.  *Id.* at 823 (quoting 2 U.S.C. § 437c(a)(1)).  The D.C. Circuit

held that the plaintiffs lacked standing to raise that claim.  It noted that "Appellants do not allege

that FECA affected the President's choice with respect to any particular nomination to the

Commission," and refused to assume that "each of the commissioners would not have been

appointed but for the statute."  *Id.* at 825.  The court noted that "[p]erhaps the President could

challenge the constitutionality of the law by alleging that the statute impinged on his

appointment power with respect to a particular nomination."  *Id.* at 825 n.4.  But it concluded

that private plaintiffs lack standing to complain about restrictions on the *President's* appointment

authority.  *See id.* at 825.

       The same is true here.  Just as FECA required the five-member FEC to have at most three

Republicans or three Democrats, Sarbanes-Oxley requires the Board to have two accountants and

three non-accountants.  Just as the *President* might have had standing to challenge restrictions on

his appointment authority in *NRA*, the *Commission* might have standing challenge restrictions on its appointment authority here.   But just as private parties lacked standing to challenge the appointment restrictions in *NRA*, plaintiffs lack standing to do so here.[27]

>    2.    *Plaintiffs Lack Standing To Challenge Congress's Grant of Appointment*
>          *Authority to the Commission Collectively Rather Than to the Chairman*

Plaintiffs likewise lack standing to challenge Sarbanes-Oxley's vesting of authority to appoint Board members in the Commission collectively rather than in the Commission's Chairman.  Compl. ¶ 91.  Once again, any injuries plaintiffs suffered are not "fairly traceable" to Congress's decision.  The SEC Chairman, one of the five Commission members, participated in each appointment to the Board under Sarbanes-Oxley.  Plaintiffs do not allege that the Chairman dissented from any of the votes on the candidates proposed to fill the Board, or that the Board's composition would have been any different had it been appointed by the Chairman alone.  In fact, it is a matter of public record that the Chairman voted in favor of each candidate.[28]  Under the circumstances, plaintiffs suffered no injury fairly traceable to Congress's decision to place appointment authority in the entire Commission rather than in the Chairman alone.

---

[27] Likewise, private plaintiffs lack standing to challenge the requirement that the Commission consult with the Federal Reserve and Treasury Department.  § 101(e)(4), 15 U.S.C. § 7211(e)(4). To the extent those consultation requirements "restrict" selection of appointees at all, they restrict the *Commission's* appointment authority.  Private plaintiffs lack standing to challenge such restrictions.

[28] *See Proceedings of the Commission* (Oct. 25, 2002), *available at* http://www.sec.gov/news/ openmeetings.shtml; U.S. Gen. Accounting Office, *Actions Needed To Improve Public Company Accounting Oversight Board Selection Process* 12 (2002), *available at* http://www.gao.gov/ new.items/d03339.pdf (summarizing Oct. 25, 2002, vote); *Commission Announces Acting Chairman of Public Company Accounting Oversight Board*, SEC News Release 2003-2 (Jan. 8, 2003), *available at* http://www.sec.gov/news/press/2003-2.htm; *SEC Unanimously Approves William J. McDonough as Chairman of Public Company Accounting Oversight Board*, SEC News Release 2003-63 (May 21, 2003), *available at* http://www.sec.gov/news/press/2003-63.htm; *SEC Names Bill Gradison Acting Chairperson; Approves PCAOB Appointment Procedures*, SEC News Release 2005-171 (Dec. 2, 2005), *available at* http://www.sec.gov/ news/press/2005-171.htm.

In that respect, this case resembles *Reuss v. Balles*, 584 F.2d 461 (D.C. Cir. 1978). *Reuss* held that a bondholder who claimed injury from the Federal Open Market Committee's interest-rate decisions lacked standing to challenge appointments to that committee. The court explained:

> There is no reason to believe that a declaration ultimately resulting in presidential appointment of the entire FOMC would benefit the appellant in any manner whatever, even assuming that a concrete injury caused by the appellees could be established. The same type of decisions would be made by the FOMC, contributing to both increases and decreases in interest rates, the rate of inflation, and other financial indicators.

*Id.* at 469; *see also Comm. for Monetary Reform v. Bd. of Governors of Fed. Reserve Sys.*, 766 F.2d 538, 543 (D.C. Cir. 1985) ("[A]ppellants have given no indication as to how they can succeed in establishing that an overly broad delegation of power to the Federal Reserve System has had the consequence of undermining economic certainty and thereby increasing interest rates."). The Ninth Circuit reached a similar result in *Northwest Environmental Defense Center v. Brennen*, 958 F.2d 930, 937 (9th Cir. 1992) ("Whatever constitutional infirmity may inhere in the Council's structure has not caused the injury of which NEDC complains. . . . NEDC does not allege that plans proposed by a Council that did not include state-appointed members would provide for higher spawning escapement levels . . . ."). Because plaintiffs have failed to allege any link between the claimed defect in the appointment process and their asserted injuries, they lack standing to bring this claim.[29]

---

[29] In *Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984), the court of appeals upheld standing to challenge the appointment of two Department of Justice individuals. Although the government urged that plaintiffs lacked standing because there was no indication that properly appointed officials would have acted differently, the court refused to "assume[] that these very officials *would* in fact have been properly appointed and (especially) confirmed by the Senate." *Id.* at 1495. Here, by contrast, the Court need not "assume" anything — the Chairman of the Commission *in fact did* vote in favor of each appointee.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated: May 15, 2006                          Respectfully submitted,

                                             /s/  Joe Caldwell
Lewis H. Ferguson  (D.C. Bar No. 176312)     Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
J. Gordon Seymour  (D.C. Bar No. 450051)     James R. Doty  (D.C. Bar No. 416785)
Heidi E. Murdy  (D.C. Bar No. 474680)        Jeffrey A. Lamken  (D.C. Bar No. 440547)
PUBLIC COMPANY ACCOUNTING                    Joshua A. Klein  (D.C. Bar No. 489078)
     OVERSIGHT BOARD                          BAKER BOTTS, LLP
1666 K Street, N.W.                          1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20006                       Washington, D.C.  20004-2400
(202) 207-9162 (telephone)                   (202) 639-7700 (telephone)
(202) 862-8430 (facsimile)                   (202) 639-7890 (facsimile)

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2006, I caused a true and correct copy of Defendants'

Motion to Dismiss the Complaint for Lack of Jurisdiction and Failure to State a Claim and the

corresponding Memorandum of Points and Authorities, Statutory Appendix, and Proposed Order

to be served by First Class United States Mail upon the following:


Michael A. Carvin
Noel J. Francisco
Christian G. Vergonis
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Viet D. Dinh
Wendy Keefer
BANCROFT ASSOCIATES PLLC
601 13th St., N.W.
Suite No. 930 South
Washington, D.C. 20005


Sam Kazman (D.C. Bar No. 946376)
Hans Bader (D.C. Bar No. 466545)
COMPETITIVE ENTERPRISE INSTITUTE
1001 Connecticut Avenue, N.W.
Suite 1250
Washington, D.C. 20036

Kenneth W. Starr
24569 Via De Casa
Malibu, CA 90265


_/s/ Joshua Klein_____