**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FREE ENTERPRISE FUND, *et al.*,

                    Plaintiffs,

       -against-

THE PUBLIC COMPANY ACCOUNTING
OVERSIGHT BOARD, *et al.*,

                 Defendants.

Civil Action No. 1:06-cv-00217-JR

**STATUTORY APPENDIX TO DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Lewis H. Ferguson  (D.C. Bar No. 176312)
J. Gordon Seymour  (D.C. Bar No. 450051)
Heidi E. Murdy  (D.C. Bar No. 474680)
PUBLIC COMPANY ACCOUNTING
   OVERSIGHT BOARD
1666 K Street, N.W.
Washington, D.C. 20006
(202) 207-9162 (telephone)
(202) 862-8430 (facsimile)

Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
James R. Doty  (D.C. Bar No. 416785)
Jeffrey A. Lamken  (D.C. Bar No. 440547)
Joshua A. Klein  (D.C. Bar No. 489078)
BAKER BOTTS, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
(202) 639-7700 (telephone)
(202) 639-7890 (facsimile)

*Counsel for Defendants*

**1. The Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (codified at 15 U.S.C. §§ 7201 *et seq.*), provides in relevant part:**

**§ 1. Short Title; Table of Contents.**

(a) SHORT TITLE.—This Act may be cited as the "Sarbanes-Oxley Act of 2002".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.

Sec. 2. Definitions.

Sec. 3. Commission rules and enforcement.

TITLE I—PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD

Sec. 101. Establishment; administrative provisions.

Sec. 102. Registration with the Board.

Sec. 103. Auditing, quality control, and independence standards and rules.

Sec. 104. Inspections of registered public accounting firms.

Sec. 105. Investigations and disciplinary proceedings.

Sec. 106. Foreign public accounting firms.

Sec. 107. Commission oversight of the Board.

Sec. 108. Accounting standards.

Sec. 109. Funding.

\* \* \* \* \*

**§ 2, 15 U.S.C. § 7201.  Definitions.**

(a) IN GENERAL.—In this Act, the following definitions shall apply:

(1) APPROPRIATE STATE REGULATORY AUTHORITY.—The term "appropriate State regulatory authority" means the State agency or other authority responsible for the licensure or other regulation of the practice of accounting in the State or States having jurisdiction over a registered public accounting firm or associated person thereof, with respect to the matter in question.

(2) AUDIT.—The term "audit" means an examination of the financial statements of any issuer by an independent public accounting firm in accordance with the rules of the Board or the Commission (or, for the period preceding the adoption of applicable rules of the Board under section 103, in accordance with then-applicable generally accepted auditing and related standards for such purposes), for the purpose of expressing an opinion on such statements.

(3) AUDIT COMMITTEE.—The term "audit committee" means—

(A) a committee (or equivalent body) established by and amongst the board of directors of an issuer for the purpose of overseeing the accounting and financial reporting processes of the issuer and audits of the financial statements of the issuer; and

(B) if no such committee exists with respect to an issuer, the entire board of directors of the issuer.

(4) AUDIT REPORT.—The term "audit report" means a document or other record—

(A) prepared following an audit performed for purposes of compliance by an issuer with the requirements of the securities laws; and

(B) in which a public accounting firm either—

(i) sets forth the opinion of that firm regarding a financial statement, report, or other document; or

(ii) asserts that no such opinion can be expressed.

(5) BOARD.—The term "Board" means the Public Company Accounting Oversight Board established under section 101.

(6) COMMISSION.—The term "Commission" means the Securities and Exchange Commission.

(7) ISSUER.—The term "issuer" means an issuer (as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c)), the securities of which are registered under section 12 of that Act (15 U.S.C. 78l), or that is required to file reports under section 15(d) (15

U.S.C. 78o(d)), or that files or has filed a registration statement that has not yet become effective under the Securities Act of 1933 (15 U.S.C. 77a et seq.), and that it has not withdrawn.

(8) NON-AUDIT SERVICES.—The term "non-audit services" means any professional services provided to an issuer by a registered public accounting firm, other than those provided to an issuer in connection with an audit or a review of the financial statements of an issuer.

(9) PERSON ASSOCIATED WITH A PUBLIC ACCOUNTING FIRM.—

(A) IN GENERAL.—The terms "person associated with a public accounting firm" (or with a "registered public accounting firm") and "associated person of a public accounting firm" (or of a "registered public accounting firm") mean any individual proprietor, partner, shareholder, principal, accountant, or other professional employee of a public accounting firm, or any other independent contractor or entity that, in connection with the preparation or issuance of any audit report—

(i) shares in the profits of, or receives compensation in any other form from, that firm; or

(ii) participates as agent or otherwise on behalf of such accounting firm in any activity of that firm.

(B) EXEMPTION AUTHORITY.—The Board may, by rule, exempt persons engaged only in ministerial tasks from the definition in subparagraph (A), to the extent that the Board determines that any such exemption is consistent with the purposes of this Act, the public interest, or the protection of investors.

(10) PROFESSIONAL STANDARDS.—The term "professional standards" means—

(A) accounting principles that are—

(i) established by the standard setting body described in section 19(b) of the Securities Act of 1933, as amended by this Act, or prescribed by the Commission under section 19(a) of that Act (15 U.S.C. 17a(s)) or section 13(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78a(m)); and

(ii) relevant to audit reports for particular issuers, or dealt with in the quality control system of a particular registered public accounting firm; and

(B) auditing standards, standards for attestation engagements, quality control policies and procedures, ethical and competency standards, and independence standards (including rules implementing title II) that the Board or the Commission determines—

(i) relate to the preparation or issuance of audit reports for issuers; and

(ii) are established or adopted by the Board under section 103(a), or are promulgated as rules of the Commission.

(11) PUBLIC ACCOUNTING FIRM.—The term "public accounting firm" means—

(A) a proprietorship, partnership, incorporated association, corporation, limited liability company, limited liability partnership, or other legal entity that is engaged in the practice of public accounting or preparing or issuing audit reports; and

(B) to the extent so designated by the rules of the Board, any associated person of any entity described in subparagraph (A).

(12) REGISTERED PUBLIC ACCOUNTING FIRM.—The term "registered public accounting firm" means a public accounting firm registered with the Board in accordance with this Act.

(13) RULES OF THE BOARD.—The term "rules of the Board" means the bylaws and rules of the Board (as submitted to, and approved, modified, or amended by the Commission, in accordance with section 107), and those stated policies, practices, and interpretations of the Board that the Commission, by rule, may deem to be rules of the Board, as necessary or appropriate in the public interest or for the protection of investors.

(14) SECURITY.—The term "security" has the same meaning as in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)).

(15) SECURITIES LAWS.—The term "securities laws" means the provisions of law referred to in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), as amended by this Act, and includes the rules, regulations, and orders issued by the Commission thereunder.

(16) STATE.—The term "State" means any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, or any other territory or possession of the United States.

(b) CONFORMING AMENDMENT.—Section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)) is amended by inserting "the Sarbanes-Oxley Act of 2002," before "the Public".

**§ 3, 15 U.S.C. § 7202.  Commission Rules and Enforcement.**

(a) REGULATORY ACTION.—The Commission shall promulgate such rules and regulations, as may be necessary or appropriate in the public interest or for the protection of investors, and in furtherance of this Act.

(b) ENFORCEMENT.—

(1) IN GENERAL.—A violation by any person of this Act, any rule or regulation of the Commission issued under this Act, or any rule of the Board shall be treated for all purposes in the same manner as a violation of the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) or the rules and regulations issued thereunder, consistent with the provisions of this Act, and any such person shall be subject to the same penalties, and to the same extent, as for a violation of that Act or such rules or regulations.

(2) INVESTIGATIONS, INJUNCTIONS, AND PROSECUTION OF OFFENSES.—Section 21 of the Securities Exchange Act of 1934 (15 U.S.C. 78u) is amended—

(A) in subsection (a)(1), by inserting "the rules of the Public Company Accounting Oversight Board, of which such person is a registered public accounting firm or a person associated with such a firm," after "is a participant,";

(B) in subsection (d)(1), by inserting "the rules of the Public Company Accounting Oversight Board, of which such person is a registered public accounting firm or a person associated with such a firm," after "is a participant,";

(C) in subsection (e), by inserting "the rules of the Public Company Accounting Oversight Board, of which such person is a registered public accounting firm or a person associated with such a firm," after "is a participant,"; and

(D) in subsection (f), by inserting "or the Public Company Accounting Oversight Board" after "self-regulatory organization" each place that term appears.

(3) CEASE-AND-DESIST PROCEEDINGS.—Section 21C(c)(2) of the Securities Exchange Act of 1934 (15 U.S.C. 78u-3(c)(2)) is amended by inserting "registered public accounting firm (as defined in section 2 of the Sarbanes-Oxley Act of 2002)," after "government securities dealer,".

(4) ENFORCEMENT BY FEDERAL BANKING AGENCIES.—Section 12(i) of the Securities Exchange Act of 1934 (15 U.S.C. 78l(i)) is amended by—

(A) striking "sections 12," each place it appears and inserting "sections 10A(m), 12,"; and

(B) striking "and 16," each place it appears and inserting "and 16 of this Act, and sections 302, 303, 304, 306, 401(b), 404, 406, and 407 of the Sarbanes-Oxley Act of 2002,".

(c) EFFECT ON COMMISSION AUTHORITY.—Nothing in this Act or the rules of the Board shall be construed to impair or limit—

(1) the authority of the Commission to regulate the accounting profession, accounting firms, or persons associated with such firms for purposes of enforcement of the securities laws;

(2) the authority of the Commission to set standards for accounting or auditing practices or auditor independence, derived from other provisions of the securities laws or the rules or regulations thereunder, for purposes of the preparation and issuance of any audit report, or otherwise under applicable law; or

(3) the ability of the Commission to take, on the initiative of the Commission, legal, administrative, or disciplinary action against any registered public accounting firm or any associated person thereof.

## TITLE I—PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD

### § 101, 15 U.S.C. § 7211.  Establishment; Administrative Provisions.

(a) ESTABLISHMENT OF BOARD.—There is established the Public Company Accounting Oversight Board, to oversee the audit of public companies that are subject to the securities laws, and related matters, in order to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports for companies the securities of which are sold to, and held by and for, public investors. The Board shall be a body corporate, operate as a nonprofit corporation, and have succession until dissolved by an Act of Congress.

(b) STATUS.—The Board shall not be an agency or establishment of the United States Government, and, except as otherwise provided in this Act, shall be subject to, and have all the powers conferred upon a nonprofit corporation by, the District of Columbia Nonprofit Corporation Act. No member or person employed by, or agent for, the Board shall be deemed to be an officer or employee of or agent for the Federal Government by reason of such service.

(c) DUTIES OF THE BOARD.—The Board shall, subject to action by the Commission under section 107, and once a determination is made by the Commission under subsection (d) of this section—

(1) register public accounting firms that prepare audit reports for issuers, in accordance with section 102;

(2) establish or adopt, or both, by rule, auditing, quality control, ethics, independence, and other standards relating to the preparation of audit reports for issuers, in accordance with section 103;

(3) conduct inspections of registered public accounting firms, in accordance with section 104 and the rules of the Board;

(4) conduct investigations and disciplinary proceedings concerning, and impose appropriate sanctions where justified upon, registered public accounting firms and associated persons of such firms, in accordance with section 105;

(5) perform such other duties or functions as the Board (or the Commission, by rule or order) determines are necessary or appropriate to promote high professional standards among, and improve the quality of audit services offered by, registered public accounting firms and associated persons thereof, or otherwise to carry out this Act, in order to protect investors, or to further the public interest;

(6) enforce compliance with this Act, the rules of the Board, professional standards, and the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, by registered public accounting firms and associated persons thereof; and

(7) set the budget and manage the operations of the Board and the staff of the Board.

(d) COMMISSION DETERMINATION.—The members of the Board shall take such action (including hiring of staff, proposal of rules, and adoption of initial and transitional auditing and other professional standards) as may be necessary or appropriate to enable the Commission to determine, not later than 270 days after the date of enactment of this Act, that the Board is so organized and has the capacity to carry out the requirements of this title, and to enforce compliance with this title by registered public accounting firms and associated persons thereof. The Commission shall be responsible, prior to the appointment of the Board, for the planning for the establishment and administrative transition to the Board's operation.

(e) BOARD MEMBERSHIP.—

(1) COMPOSITION.—The Board shall have 5 members, appointed from among prominent individuals of integrity and reputation who have a demonstrated commitment to the interests of investors and the public, and an understanding of the responsibilities for and nature of the financial disclosures required of issuers under the securities laws and the obligations of accountants with respect to the preparation and issuance of audit reports with respect to such disclosures.

(2) LIMITATION.—Two members, and only 2 members, of the Board shall be or have been certified public accountants pursuant to the laws of 1 or more States, provided that, if 1 of those 2 members is the chairperson, he or she may not have been a practicing certified public accountant for at least 5 years prior to his or her appointment to the Board.

(3) FULL-TIME INDEPENDENT SERVICE.—Each member of the Board shall serve on a full-time basis, and may not, concurrent with service on the Board, be employed by any other person or engage in any other professional or business activity. No member of the Board may

share in any of the profits of, or receive payments from, a public accounting firm (or any other person, as determined by rule of the Commission), other than fixed continuing payments, subject to such conditions as the Commission may impose, under standard arrangements for the retirement of members of public accounting firms.

(4) APPOINTMENT OF BOARD MEMBERS.—

(A) INITIAL BOARD.—Not later than 90 days after the date of enactment of this Act, the Commission, after consultation with the Chairman of the Board of Governors of the Federal Reserve System and the Secretary of the Treasury, shall appoint the chairperson and other initial members of the Board, and shall designate a term of service for each.

(B) VACANCIES.—A vacancy on the Board shall not affect the powers of the Board, but shall be filled in the same manner as provided for appointments under this section.

(5) TERM OF SERVICE.—

(A) IN GENERAL.—The term of service of each Board member shall be 5 years, and until a successor is appointed, except that—

(i) the terms of office of the initial Board members (other than the chairperson) shall expire in annual increments, 1 on each of the first 4 anniversaries of the initial date of appointment; and

(ii) any Board member appointed to fill a vacancy occurring before the expiration of the term for which the predecessor was appointed shall be appointed only for the remainder of that term.

(B) TERM LIMITATION.—No person may serve as a member of the Board, or as chairperson of the Board, for more than 2 terms, whether or not such terms of service are consecutive.

(6) REMOVAL FROM OFFICE.—A member of the Board may be removed by the Commission from office, in accordance with section 107(d)(3), for good cause shown before the expiration of the term of that member.

(f) POWERS OF THE BOARD.—In addition to any authority granted to the Board otherwise in this Act, the Board shall have the power, subject to section 107—

(1) to sue and be sued, complain and defend, in its corporate name and through its own counsel, with the approval of the Commission, in any Federal, State, or other court;

(2) to conduct its operations and maintain offices, and to exercise all other rights and powers authorized by this Act, in any State, without regard to any qualification, licensing, or other provision of law in effect in such State (or a political subdivision thereof);

(3) to lease, purchase, accept gifts or donations of or otherwise acquire, improve, use, sell, exchange, or convey, all of or an interest in any property, wherever situated;

(4) to appoint such employees, accountants, attorneys, and other agents as may be necessary or appropriate, and to determine their qualifications, define their duties, and fix their salaries or other compensation (at a level that is comparable to private sector self-regulatory, accounting, technical, supervisory, or other staff or management positions);

(5) to allocate, assess, and collect accounting support fees established pursuant to section 109, for the Board, and other fees and charges imposed under this title; and

(6) to enter into contracts, execute instruments, incur liabilities, and do any and all other acts and things necessary, appropriate, or incidental to the conduct of its operations and the exercise of its obligations, rights, and powers imposed or granted by this title.

(g) RULES OF THE BOARD.—The rules of the Board shall, subject to the approval of the Commission—

(1) provide for the operation and administration of the Board, the exercise of its authority, and the performance of its responsibilities under this Act;

(2) permit, as the Board determines necessary or appropriate, delegation by the Board of any of its functions to an individual member or employee of the Board, or to a division of the Board, including functions with respect to hearing, determining, ordering, certifying, reporting, or otherwise acting as to any matter, except that—

(A) the Board shall retain a discretionary right to review any action pursuant to any such delegated function, upon its own motion;

(B) a person shall be entitled to a review by the Board with respect to any matter so delegated, and the decision of the Board upon such review shall be deemed to be the action of the Board for all purposes (including appeal or review thereof); and

(C) if the right to exercise a review described in subparagraph (A) is declined, or if no such review is sought within the time stated in the rules of the Board, then the action taken by the holder of such delegation shall for all purposes, including appeal or review thereof, be deemed to be the action of the Board;

(3) establish ethics rules and standards of conduct for Board members and staff, including a bar on practice before the Board (and the Commission, with respect to Board-related matters) of 1 year for former members of the Board, and appropriate periods (not to exceed 1 year) for former staff of the Board; and

(4) provide as otherwise required by this Act.

(h) ANNUAL REPORT TO THE COMMISSION.—The Board shall submit an annual report (including its audited financial statements) to the Commission, and the Commission shall transmit a copy of that report to the Committee on Banking, Housing, and Urban Affairs of the Senate, and the Committee on Financial Services of the House of Representatives, not later than 30 days after the date of receipt of that report by the Commission.

### § 102, 15 U.S.C. § 7212.  Registration with the Board.

(a) MANDATORY REGISTRATION.—Beginning 180 days after the date of the determination of the Commission under section 101(d), it shall be unlawful for any person that is not a registered public accounting firm to prepare or issue, or to participate in the preparation or issuance of, any audit report with respect to any issuer.

(b) APPLICATIONS FOR REGISTRATION.—

(1) FORM OF APPLICATION.—A public accounting firm shall use such form as the Board may prescribe, by rule, to apply for registration under this section.

(2) CONTENTS OF APPLICATIONS.—Each public accounting firm shall submit, as part of its application for registration, in such detail as the Board shall specify—

(A) the names of all issuers for which the firm prepared or issued audit reports during the immediately preceding calendar year, and for which the firm expects to prepare or issue audit reports during the current calendar year;

(B) the annual fees received by the firm from each such issuer for audit services, other accounting services, and non-audit services, respectively;

(C) such other current financial information for the most recently completed fiscal year of the firm as the Board may reasonably request;

(D) a statement of the quality control policies of the firm for its accounting and auditing practices;

(E) a list of all accountants associated with the firm who participate in or contribute to the preparation of audit reports, stating the license or certification number of each such person, as well as the State license numbers of the firm itself;

(F) information relating to criminal, civil, or administrative actions or disciplinary proceedings pending against the firm or any associated person of the firm in connection with any audit report;

(G) copies of any periodic or annual disclosure filed by an issuer with the Commission during the immediately preceding calendar year which discloses accounting

disagreements between such issuer and the firm in connection with an audit report furnished or prepared by the firm for such issuer; and

(H) such other information as the rules of the Board or the Commission shall specify as necessary or appropriate in the public interest or for the protection of investors.

(3) CONSENTS.—Each application for registration under this subsection shall include—

(A) a consent executed by the public accounting firm to cooperation in and compliance with any request for testimony or the production of documents made by the Board in the furtherance of its authority and responsibilities under this title (and an agreement to secure and enforce similar consents from each of the associated persons of the public accounting firm as a condition of their continued employment by or other association with such firm); and

(B) a statement that such firm understands and agrees that cooperation and compliance, as described in the consent required by subparagraph (A), and the securing and enforcement of such consents from its associated persons, in accordance with the rules of the Board, shall be a condition to the continuing effectiveness of the registration of the firm with the Board.

(c) ACTION ON APPLICATIONS.—

(1) TIMING.—The Board shall approve a completed application for registration not later than 45 days after the date of receipt of the application, in accordance with the rules of the Board, unless the Board, prior to such date, issues a written notice of disapproval to, or requests more information from, the prospective registrant.

(2) TREATMENT.—A written notice of disapproval of a completed application under paragraph (1) for registration shall be treated as a disciplinary sanction for purposes of sections 105(d) and 107(c).

(d) PERIODIC REPORTS.—Each registered public accounting firm shall submit an annual report to the Board, and may be required to report more frequently, as necessary to update the information contained in its application for registration under this section, and to provide to the Board such additional information as the Board or the Commission may specify, in accordance with subsection (b)(2).

(e) PUBLIC AVAILABILITY.—Registration applications and annual reports required by this subsection, or such portions of such applications or reports as may be designated under rules of the Board, shall be made available for public inspection, subject to rules of the Board or the Commission, and to applicable laws relating to the confidentiality of proprietary, personal, or other information contained in such applications or reports, provided that, in all events, the Board shall protect from public disclosure information reasonably identified by the subject accounting firm as proprietary information.

(f) REGISTRATION AND ANNUAL FEES.—The Board shall assess and collect a registration fee and an annual fee from each registered public accounting firm, in amounts that are sufficient to recover the costs of processing and reviewing applications and annual reports.

## § 103, 15 U.S.C. § 7213.   Auditing, Quality Control, and Independence Standards and Rules.

(a) AUDITING, QUALITY CONTROL, AND ETHICS STANDARDS.—

(1) IN GENERAL.—The Board shall, by rule, establish, including, to the extent it determines appropriate, through adoption of standards proposed by 1 or more professional groups of accountants designated pursuant to paragraph (3)(A) or advisory groups convened pursuant to paragraph (4), and amend or otherwise modify or alter, such auditing and related attestation standards, such quality control standards, and such ethics standards to be used by registered public accounting firms in the preparation and issuance of audit reports, as required by this Act or the rules of the Commission, or as may be necessary or appropriate in the public interest or for the protection of investors.

(2) RULE REQUIREMENTS.—In carrying out paragraph (1), the Board—

(A) shall include in the auditing standards that it adopts, requirements that each registered public accounting firm shall—

(i) prepare, and maintain for a period of not less than 7 years, audit work papers, and other information related to any audit report, in sufficient detail to support the conclusions reached in such report;

(ii) provide a concurring or second partner review and approval of such audit report (and other related information), and concurring approval in its issuance, by a qualified person (as prescribed by the Board) associated with the public accounting firm, other than the person in charge of the audit, or by an independent reviewer (as prescribed by the Board); and

(iii) describe in each audit report the scope of the auditor's testing of the internal control structure and procedures of the issuer, required by section 404(b), and present (in such report or in a separate report)—

(I) the findings of the auditor from such testing;

(II) an evaluation of whether such internal control structure and procedures—

(aa) include maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of the assets of the issuer;

(bb) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the issuer are being made only in accordance with authorizations of management and directors of the issuer; and

(III) a description, at a minimum, of material weaknesses in such internal controls, and of any material noncompliance found on the basis of such testing.

(B) shall include, in the quality control standards that it adopts with respect to the issuance of audit reports, requirements for every registered public accounting firm relating to—

(i) monitoring of professional ethics and independence from issuers on behalf of which the firm issues audit reports;

(ii) consultation within such firm on accounting and auditing questions;

(iii) supervision of audit work;

(iv) hiring, professional development, and advancement of personnel;

(v) the acceptance and continuation of engagements;

(vi) internal inspection; and

(vii) such other requirements as the Board may prescribe, subject to subsection (a)(1).

(3) AUTHORITY TO ADOPT OTHER STANDARDS.—

(A) IN GENERAL.—In carrying out this subsection, the Board—

(i) may adopt as its rules, subject to the terms of section 107, any portion of any statement of auditing standards or other professional standards that the Board determines satisfy the requirements of paragraph (1), and that were proposed by 1 or more professional groups of accountants that shall be designated or recognized by the Board, by rule, for such purpose, pursuant to this paragraph or 1 or more advisory groups convened pursuant to paragraph (4); and

(ii) notwithstanding clause (i), shall retain full authority to modify, supplement, revise, or subsequently amend, modify, or repeal, in whole or in part, any portion of any statement described in clause (i).

(B) INITIAL AND TRANSITIONAL STANDARDS.—The Board shall adopt standards described in subparagraph (A)(i) as initial or transitional standards, to the extent the Board determines necessary, prior to a determination of the Commission under section

101(d), and such standards shall be separately approved by the Commission at the time of that determination, without regard to the procedures required by section 107 that otherwise would apply to the approval of rules of the Board.

(4) ADVISORY GROUPS.—The Board shall convene, or authorize its staff to convene, such expert advisory groups as may be appropriate, which may include practicing accountants and other experts, as well as representatives of other interested groups, subject to such rules as the Board may prescribe to prevent conflicts of interest, to make recommendations concerning the content (including proposed drafts) of auditing, quality control, ethics, independence, or other standards required to be established under this section.

(b) INDEPENDENCE STANDARDS AND RULES.—The Board shall establish such rules as may be necessary or appropriate in the public interest or for the protection of investors, to implement, or as authorized under, title II of this Act.

(c) COOPERATION WITH DESIGNATED PROFESSIONAL GROUPS OF ACCOUNTANTS AND ADVISORY GROUPS.—

(1) IN GENERAL.—The Board shall cooperate on an ongoing basis with professional groups of accountants designated under subsection (a)(3)(A) and advisory groups convened under subsection (a)(4) in the examination of the need for changes in any standards subject to its authority under subsection (a), recommend issues for inclusion on the agendas of such designated professional groups of accountants or advisory groups, and take such other steps as it deems appropriate to increase the effectiveness of the standard setting process.

(2) BOARD RESPONSES.—The Board shall respond in a timely fashion to requests from designated professional groups of accountants and advisory groups referred to in paragraph (1) for any changes in standards over which the Board has authority.

(d) EVALUATION OF STANDARD SETTING PROCESS.—The Board shall include in the annual report required by section 101(h) the results of its standard setting responsibilities during the period to which the report relates, including a discussion of the work of the Board with any designated professional groups of accountants and advisory groups described in paragraphs (3)(A) and (4) of subsection (a), and its pending issues agenda for future standard setting projects.

**§ 104, 15 U.S.C. § 7214.  Inspections of Registered Public Accounting Firms.**

(a) IN GENERAL.—The Board shall conduct a continuing program of inspections to assess the degree of compliance of each registered public accounting firm and associated persons of that firm with this Act, the rules of the Board, the rules of the Commission, or professional standards, in connection with its performance of audits, issuance of audit reports, and related matters involving issuers.

(b) INSPECTION FREQUENCY.—

    (1) IN GENERAL.—Subject to paragraph (2), inspections required by this section shall be conducted—

        (A) annually with respect to each registered public accounting firm that regularly provides audit reports for more than 100 issuers; and

        (B) not less frequently than once every 3 years with respect to each registered public accounting firm that regularly provides audit reports for 100 or fewer issuers.

    (2) ADJUSTMENTS TO SCHEDULES.—The Board may, by rule, adjust the inspection schedules set under paragraph (1) if the Board finds that different inspection schedules are consistent with the purposes of this Act, the public interest, and the protection of investors. The Board may conduct special inspections at the request of the Commission or upon its own motion.

(c) PROCEDURES.—The Board shall, in each inspection under this section, and in accordance with its rules for such inspections—

    (1) identify any act or practice or omission to act by the registered public accounting firm, or by any associated person thereof, revealed by such inspection that may be in violation of this Act, the rules of the Board, the rules of the Commission, the firm's own quality control policies, or professional standards;

    (2) report any such act, practice, or omission, if appropriate, to the Commission and each appropriate State regulatory authority; and

    (3) begin a formal investigation or take disciplinary action, if appropriate, with respect to any such violation, in accordance with this Act and the rules of the Board.

(d) CONDUCT OF INSPECTIONS.—In conducting an inspection of a registered public accounting firm under this section, the Board shall—

    (1) inspect and review selected audit and review engagements of the firm (which may include audit engagements that are the subject of ongoing litigation or other controversy between the firm and 1 or more third parties), performed at various offices and by various associated persons of the firm, as selected by the Board;

(2) evaluate the sufficiency of the quality control system of the firm, and the manner of the documentation and communication of that system by the firm; and

(3) perform such other testing of the audit, supervisory, and quality control procedures of the firm as are necessary or appropriate in light of the purpose of the inspection and the responsibilities of the Board.

(e) RECORD RETENTION.—The rules of the Board may require the retention by registered public accounting firms for inspection purposes of records whose retention is not otherwise required by section 103 or the rules issued thereunder.

(f) PROCEDURES FOR REVIEW.—The rules of the Board shall provide a procedure for the review of and response to a draft inspection report by the registered public accounting firm under inspection. The Board shall take such action with respect to such response as it considers appropriate (including revising the draft report or continuing or supplementing its inspection activities before issuing a final report), but the text of any such response, appropriately redacted to protect information reasonably identified by the accounting firm as confidential, shall be attached to and made part of the inspection report.

(g) REPORT.—A written report of the findings of the Board for each inspection under this section, subject to subsection (h), shall be—

(1) transmitted, in appropriate detail, to the Commission and each appropriate State regulatory authority, accompanied by any letter or comments by the Board or the inspector, and any letter of response from the registered public accounting firm; and

(2) made available in appropriate detail to the public (subject to section 105(b)(5)(A), and to the protection of such confidential and proprietary information as the Board may determine to be appropriate, or as may be required by law), except that no portions of the inspection report that deal with criticisms of or potential defects in the quality control systems of the firm under inspection shall be made public if those criticisms or defects are addressed by the firm, to the satisfaction of the Board, not later than 12 months after the date of the inspection report.

(h) INTERIM COMMISSION REVIEW.—

(1) REVIEWABLE MATTERS.—A registered public accounting firm may seek review by the Commission, pursuant to such rules as the Commission shall promulgate, if the firm—

(A) has provided the Board with a response, pursuant to rules issued by the Board under subsection (f), to the substance of particular items in a draft inspection report, and disagrees with the assessments contained in any final report prepared by the Board following such response; or

(B) disagrees with the determination of the Board that criticisms or defects identified in an inspection report have not been addressed to the satisfaction of the Board within 12 months of the date of the inspection report, for purposes of subsection (g)(2).

(2) TREATMENT OF REVIEW.—Any decision of the Commission with respect to a review under paragraph (1) shall not be reviewable under section 25 of the Securities Exchange Act of 1934 (15 U.S.C. 78y), or deemed to be "final agency action" for purposes of section 704 of title 5, United States Code.

(3) TIMING.—Review under paragraph (1) may be sought during the 30-day period following the date of the event giving rise to the review under subparagraph (A) or (B) of paragraph (1).

## § 105, 15 U.S.C. § 7215.  Investigations and Disciplinary Proceedings.

(a) IN GENERAL.—The Board shall establish, by rule, subject to the requirements of this section, fair procedures for the investigation and disciplining of registered public accounting firms and associated persons of such firms.

(b) INVESTIGATIONS.—

(1) AUTHORITY.—In accordance with the rules of the Board, the Board may conduct an investigation of any act or practice, or omission to act, by a registered public accounting firm, any associated person of such firm, or both, that may violate any provision of this Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of the Commission issued under this Act, or professional standards, regardless of how the act, practice, or omission is brought to the attention of the Board.

(2) TESTIMONY AND DOCUMENT PRODUCTION.—In addition to such other actions as the Board determines to be necessary or appropriate, the rules of the Board may—

(A) require the testimony of the firm or of any person associated with a registered public accounting firm, with respect to any matter that the Board considers relevant or material to an investigation;

(B) require the production of audit work papers and any other document or information in the possession of a registered public accounting firm or any associated person thereof, wherever domiciled, that the Board considers relevant or material to the investigation, and may inspect the books and records of such firm or associated person to verify the accuracy of any documents or information supplied;

(C) request the testimony of, and production of any document in the possession of, any other person, including any client of a registered public accounting firm that the Board

considers relevant or material to an investigation under this section, with appropriate notice, subject to the needs of the investigation, as permitted under the rules of the Board; and

(D) provide for procedures to seek issuance by the Commission, in a manner established by the Commission, of a subpoena to require the testimony of, and production of any document in the possession of, any person, including any client of a registered public accounting firm, that the Board considers relevant or material to an investigation under this section.

(3) NONCOOPERATION WITH INVESTIGATIONS.—

(A) IN GENERAL.—If a registered public accounting firm or any associated person thereof refuses to testify, produce documents, or otherwise cooperate with the Board in connection with an investigation under this section, the Board may—

(i) suspend or bar such person from being associated with a registered public accounting firm, or require the registered public accounting firm to end such association;

(ii) suspend or revoke the registration of the public accounting firm; and

(iii) invoke such other lesser sanctions as the Board considers appropriate, and as specified by rule of the Board.

(B) PROCEDURE.—Any action taken by the Board under this paragraph shall be subject to the terms of section 107(c).

(4) COORDINATION AND REFERRAL OF INVESTIGATIONS.—

(A) COORDINATION.—The Board shall notify the Commission of any pending Board investigation involving a potential violation of the securities laws, and thereafter coordinate its work with the work of the Commission's Division of Enforcement, as necessary to protect an ongoing Commission investigation.

(B) REFERRAL.—The Board may refer an investigation under this section—

(i) to the Commission;

(ii) to any other Federal functional regulator (as defined in section 509 of the Gramm-Leach-Bliley Act (15 U.S.C. 6809)), in the case of an investigation that concerns an audit report for an institution that is subject to the jurisdiction of such regulator; and

(iii) at the direction of the Commission, to—

(I) the Attorney General of the United States;

18

(II) the attorney general of 1 or more States; and

(III) the appropriate State regulatory authority.

(5) USE OF DOCUMENTS.—

(A) CONFIDENTIALITY.—Except as provided in subparagraph (B), all documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 104 or with an investigation under this section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act (5 U.S.C. 552a), or otherwise, unless and until presented in connection with a public proceeding or released in accordance with subsection (c).

(B) AVAILABILITY TO GOVERNMENT AGENCIES.—Without the loss of its status as confidential and privileged in the hands of the Board, all information referred to in subparagraph
(A) may—

(i) be made available to the Commission; and

(ii) in the discretion of the Board, when determined by the Board to be necessary to accomplish the purposes of this Act or to protect investors, be made available to—

(I) the Attorney General of the United States;

(II) the appropriate Federal functional regulator (as defined in section 509 of the Gramm-Leach-Bliley Act (15 U.S.C. 6809)), other than the Commission, with respect to an audit report for an institution subject to the jurisdiction of such regulator;

(III) State attorneys general in connection with any criminal investigation; and

(IV) any appropriate State regulatory authority,

each of which shall maintain such information as confidential and privileged.

(6) IMMUNITY.—Any employee of the Board engaged in carrying out an investigation under this Act shall be immune from any civil liability arising out of such investigation in the same manner and to the same extent as an employee of the Federal Government in similar circumstances.

(c) DISCIPLINARY PROCEDURES.—

(1) NOTIFICATION; RECORDKEEPING.—The rules of the Board shall provide that in any proceeding by the Board to determine whether a registered public accounting firm, or an associated person thereof, should be disciplined, the Board shall—

(A) bring specific charges with respect to the firm or associated person;

(B) notify such firm or associated person of, and provide to the firm or associated person an opportunity to defend against, such charges; and

(C) keep a record of the proceedings.

(2) PUBLIC HEARINGS.—Hearings under this section shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearing.

(3) SUPPORTING STATEMENT.—A determination by the Board to impose a sanction under this subsection shall be supported by a statement setting forth—

(A) each act or practice in which the registered public accounting firm, or associated person, has engaged (or omitted to engage), or that forms a basis for all or a part of such sanction;

(B) the specific provision of this Act, the securities laws, the rules of the Board, or professional standards which the Board determines has been violated; and

(C) the sanction imposed, including a justification for that sanction.

(4) SANCTIONS.—If the Board finds, based on all of the facts and circumstances, that a registered public accounting firm or associated person thereof has engaged in any act or practice, or omitted to act, in violation of this Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of the Commission issued under this Act, or professional standards, the Board may impose such disciplinary or remedial sanctions as it determines appropriate, subject to applicable limitations under paragraph (5), including—

(A) temporary suspension or permanent revocation of registration under this title;

(B) temporary or permanent suspension or bar of a person from further association with any registered public accounting firm;

(C) temporary or permanent limitation on the activities, functions, or operations of such firm or person (other than in connection with required additional professional education or training);

(D) a civil money penalty for each such violation, in an amount equal to—

   (i) not more than $100,000 for a natural person or $2,000,000 for any other person; and

   (ii) in any case to which paragraph (5) applies, not more than $750,000 for a natural person or $15,000,000 for any other person;

(E) censure;

(F) required additional professional education or training; or

(G) any other appropriate sanction provided for in the rules of the Board.

(5) INTENTIONAL OR OTHER KNOWING CONDUCT.—The sanctions and penalties described in subparagraphs (A) through (C) and (D)(ii) of paragraph (4) shall only apply to—

   (A) intentional or knowing conduct, including reckless conduct, that results in violation of the applicable statutory, regulatory, or professional standard; or

   (B) repeated instances of negligent conduct, each resulting in a violation of the applicable statutory, regulatory, or professional standard.

(6) FAILURE TO SUPERVISE.—

   (A) IN GENERAL.—The Board may impose sanctions under this section on a registered accounting firm or upon the supervisory personnel of such firm, if the Board finds that—

      (i) the firm has failed reasonably to supervise an associated person, either as required by the rules of the Board relating to auditing or quality control standards, or otherwise, with a view to preventing violations of this Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of the Commission under this Act, or professional standards; and

      (ii) such associated person commits a violation of this Act, or any of such rules, laws, or standards.

   (B) RULE OF CONSTRUCTION.—No associated person of a registered public accounting firm shall be deemed to have failed reasonably to supervise any other person for purposes of subparagraph (A), if—

      (i) there have been established in and for that firm procedures, and a system for applying such procedures, that comply with applicable rules of the Board and that would reasonably be expected to prevent and detect any such violation by such associated person; and

21

(ii) such person has reasonably discharged the duties and obligations incumbent upon that person by reason of such procedures and system, and had no reasonable cause to believe that such procedures and system were not being complied with.

(7) EFFECT OF SUSPENSION.—

(A) ASSOCIATION WITH A PUBLIC ACCOUNTING FIRM.—It shall be unlawful for any person that is suspended or barred from being associated with a registered public accounting firm under this subsection willfully to become or remain associated with any registered public accounting firm, or for any registered public accounting firm that knew, or, in the exercise of reasonable care should have known, of the suspension or bar, to permit such an association, without the consent of the Board or the Commission.

(B) ASSOCIATION WITH AN ISSUER.—It shall be unlawful for any person that is suspended or barred from being associated with an issuer under this subsection willfully to become or remain associated with any issuer in an accountancy or a financial management capacity, and for any issuer that knew, or in the exercise of reasonable care should have known, of such suspension or bar, to permit such an association, without the consent of the Board or the Commission.

(d) REPORTING OF SANCTIONS.—

(1) RECIPIENTS.—If the Board imposes a disciplinary sanction, in accordance with this section, the Board shall report the sanction to—

(A) the Commission;

(B) any appropriate State regulatory authority or any foreign accountancy licensing board with which such firm or person is licensed or certified; and

(C) the public (once any stay on the imposition of such sanction has been lifted).

(2) CONTENTS.—The information reported under paragraph (1) shall include—

(A) the name of the sanctioned person;

(B) a description of the sanction and the basis for its imposition; and

(C) such other information as the Board deems appropriate.

(e) STAY OF SANCTIONS.—

(1) IN GENERAL.—Application to the Commission for review, or the institution by the Commission of review, of any disciplinary action of the Board shall operate as a stay of any such disciplinary action, unless and until the Commission orders (summarily or after notice

and opportunity for hearing on the question of a stay, which hearing may consist solely of the submission of affidavits or presentation of oral arguments) that no such stay shall continue to operate.

(2) EXPEDITED PROCEDURES.—The Commission shall establish for appropriate cases an expedited procedure for consideration and determination of the question of the duration of a stay pending review of any disciplinary action of the Board under this subsection.

## § 106, 15 U.S.C. § 7216.  Foreign Public Accounting Firms.

(a) APPLICABILITY TO CERTAIN FOREIGN FIRMS.—

(1) IN GENERAL.—Any foreign public accounting firm that prepares or furnishes an audit report with respect to any issuer, shall be subject to this Act and the rules of the Board and the Commission issued under this Act, in the same manner and to the same extent as a public accounting firm that is organized and operates under the laws of the United States or any State, except that registration pursuant to section 102 shall not by itself provide a basis for subjecting such a foreign public accounting firm to the jurisdiction of the Federal or State courts, other than with respect to controversies between such firms and the Board.

(2) BOARD AUTHORITY.—The Board may, by rule, determine that a foreign public accounting firm (or a class of such firms) that does not issue audit reports nonetheless plays such a substantial role in the preparation and furnishing of such reports for particular issuers, that it is necessary or appropriate, in light of the purposes of this Act and in the public interest or for the protection of investors, that such firm (or class of firms) should be treated as a public accounting firm (or firms) for purposes of registration under, and oversight by the Board in accordance with, this title.

(b) PRODUCTION OF AUDIT WORKPAPERS.—

(1) CONSENT BY FOREIGN FIRMS.—If a foreign public accounting firm issues an opinion or otherwise performs material services upon which a registered public accounting firm relies in issuing all or part of any audit report or any opinion contained in an audit report, that foreign public accounting firm shall be deemed to have consented—

(A) to produce its audit workpapers for the Board or the Commission in connection with any investigation by either body with respect to that audit report; and

(B) to be subject to the jurisdiction of the courts of the United States for purposes of enforcement of any request for production of such workpapers.

(2) CONSENT BY DOMESTIC FIRMS.—A registered public accounting firm that relies upon the opinion of a foreign public accounting firm, as described in paragraph (1), shall be deemed—

(A) to have consented to supplying the audit workpapers of that foreign public accounting firm in response to a request for production by the Board or the Commission; and

(B) to have secured the agreement of that foreign public accounting firm to such production, as a condition of its reliance on the opinion of that foreign public accounting firm.

(c) EXEMPTION AUTHORITY.—The Commission, and the Board, subject to the approval of the Commission, may, by rule, regulation, or order, and as the Commission (or Board) determines necessary or appropriate in the public interest or for the protection of investors, either unconditionally or upon specified terms and conditions exempt any foreign public accounting firm, or any class of such firms, from any provision of this Act or the rules of the Board or the Commission issued under this Act.

(d) DEFINITION.—In this section, the term "foreign public accounting firm" means a public accounting firm that is organized and operates under the laws of a foreign government or political subdivision thereof.

## § 107, 15 U.S.C. § 7217.  Commission Oversight of the Board.

(a) GENERAL OVERSIGHT RESPONSIBILITY.—The Commission shall have oversight and enforcement authority over the Board, as provided in this Act. The provisions of section 17(a)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78q(a)(1)), and of section 17(b)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78q(b)(1)) shall apply to the Board as fully as if the Board were a "registered securities association" for purposes of those sections 17(a)(1) and 17(b)(1).

(b) RULES OF THE BOARD.—

(1) DEFINITION.—In this section, the term "proposed rule" means any proposed rule of the Board, and any modification of any such rule.

(2) PRIOR APPROVAL REQUIRED.—No rule of the Board shall become effective without prior approval of the Commission in accordance with this section, other than as provided in section 103(a)(3)(B) with respect to initial or transitional standards.

(3) APPROVAL CRITERIA.—The Commission shall approve a proposed rule, if it finds that the rule is consistent with the requirements of this Act and the securities laws, or is necessary or appropriate in the public interest or for the protection of investors.

(4) PROPOSED RULE PROCEDURES.—The provisions of paragraphs (1) through (3) of section 19(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78s(b)) shall govern the proposed rules of the Board, as fully as if the Board were a "registered securities association" for purposes of that section 19(b), except that, for purposes of this paragraph—

(A) the phrase "consistent with the requirements of this title and the rules and regulations thereunder applicable to such organization" in section 19(b)(2) of that Act shall be deemed to read "consistent with the requirements of title I of the Sarbanes-Oxley Act of 2002, and the rules and regulations issued thereunder applicable to such organization, or as necessary or appropriate in the public interest or for the protection of investors"; and

(B) the phrase "otherwise in furtherance of the purposes of this title" in section 19(b)(3)(C) of that Act shall be deemed to read "otherwise in furtherance of the purposes of title I of the Sarbanes-Oxley Act of 2002".

(5) COMMISSION AUTHORITY TO AMEND RULES OF THE BOARD.—The provisions of section 19(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78s(c)) shall govern the abrogation, deletion, or addition to portions of the rules of the Board by the Commission as fully as if the Board were a "registered securities association" for purposes of that section 19(c), except that the phrase "to conform its rules to the requirements of this title and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purposes of this title" in section 19(c) of that Act shall, for purposes of this paragraph, be deemed to read "to assure the fair administration of the Public Company Accounting Oversight Board, conform the rules promulgated by that Board to the requirements of title I of the Sarbanes-Oxley Act of 2002, or otherwise further the purposes of that Act, the securities laws, and the rules and regulations thereunder applicable to that Board".

(c) COMMISSION REVIEW OF DISCIPLINARY ACTION TAKEN BY THE BOARD.—

(1) NOTICE OF SANCTION.—The Board shall promptly file notice with the Commission of any final sanction on any registered public accounting firm or on any associated person thereof, in such form and containing such information as the Commission, by rule, may prescribe.

(2) REVIEW OF SANCTIONS.—The provisions of sections 19(d)(2) and 19(e)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78s (d)(2) and (e)(1)) shall govern the review by the Commission of final disciplinary sanctions imposed by the Board (including sanctions imposed under section 105(b)(3) of this Act for noncooperation in an investigation of the Board), as fully as if the Board were a self-regulatory organization and the Commission were the appropriate regulatory agency for such organization for purposes of those sections 19(d)(2) and 19(e)(1), except that, for purposes of this paragraph—

(A) section 105(e) of this Act (rather than that section 19(d)(2)) shall govern the extent to which application for, or institution by the Commission on its own motion of, review of any disciplinary action of the Board operates as a stay of such action;

(B) references in that section 19(e)(1) to "members" of such an organization shall be deemed to be references to registered public accounting firms;

(C) the phrase "consistent with the purposes of this title" in that section 19(e)(1) shall be deemed to read "consistent with the purposes of this title and title I of the Sarbanes-Oxley Act of 2002";

(D) references to rules of the Municipal Securities Rulemaking Board in that section 19(e)(1) shall not apply; and

(E) the reference to section 19(e)(2) of the Securities Exchange Act of 1934 shall refer instead to section 107(c)(3) of this Act.

(3) COMMISSION MODIFICATION AUTHORITY.—The Commission may enhance, modify, cancel, reduce, or require the remission of a sanction imposed by the Board upon a registered public accounting firm or associated person thereof, if the Commission, having due regard for the public interest and the protection of investors, finds, after a proceeding in accordance with this subsection, that the sanction—

(A) is not necessary or appropriate in furtherance of this Act or the securities laws; or

(B) is excessive, oppressive, inadequate, or otherwise not appropriate to the finding or the basis on which the sanction was imposed.

(d) CENSURE OF THE BOARD; OTHER SANCTIONS.—

(1) RESCISSION OF BOARD AUTHORITY.—The Commission, by rule, consistent with the public interest, the protection of investors, and the other purposes of this Act and the securities laws, may relieve the Board of any responsibility to enforce compliance with any provision of this Act, the securities laws, the rules of the Board, or professional standards.

(2) CENSURE OF THE BOARD; LIMITATIONS.—The Commission may, by order, as it determines necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this Act or the securities laws, censure or impose limitations upon the activities, functions, and operations of the Board, if the Commission finds, on the record, after notice and opportunity for a hearing, that the Board—

(A) has violated or is unable to comply with any provision of this Act, the rules of the Board, or the securities laws; or

(B) without reasonable justification or excuse, has failed to enforce compliance with any such provision or rule, or any professional standard by a registered public accounting firm or an associated person thereof.

(3) CENSURE OF BOARD MEMBERS; REMOVAL FROM OFFICE.—The Commission may, as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this Act or the securities laws, remove from office or censure any member of the Board, if the Commission finds, on the record, after notice and opportunity for a hearing, that such member—

(A) has willfully violated any provision of this Act, the rules of the Board, or the securities laws;

(B) has willfully abused the authority of that member; or

(C) without reasonable justification or excuse, has failed to enforce compliance with any such provision or rule, or any professional standard by any registered public accounting firm or any associated person thereof.

### § 108, 15 U.S.C. § 7218. Accounting Standards.

(a) AMENDMENT TO SECURITIES ACT OF 1933.—Section 19 of the Securities Act of 1933 (15 U.S.C. 77s) is amended—

(1) by redesignating subsections (b) and (c) as subsections (c) and (d), respectively; and

(2) by inserting after subsection (a) the following:

"(b) RECOGNITION OF ACCOUNTING STANDARDS.—

"(1) IN GENERAL.—In carrying out its authority under subsection (a) and under section 13(b) of the Securities Exchange Act of 1934, the Commission may recognize, as 'generally accepted' for purposes of the securities laws, any accounting principles established by a standard setting body—

"(A) that—

"(i) is organized as a private entity;

"(ii) has, for administrative and operational purposes, a board of trustees (or equivalent body) serving in the public interest, the majority of whom are not, concurrent with their service on such board, and have not been during the 2-year period preceding such service, associated persons of any registered public accounting firm;

"(iii) is funded as provided in section 109 of the Sarbanes-Oxley Act of 2002;

"(iv) has adopted procedures to ensure prompt consideration, by majority vote of its members, of changes to accounting principles necessary to reflect emerging accounting issues and changing business practices; and

"(v) considers, in adopting accounting principles, the need to keep standards current in order to reflect changes in the business environment, the extent to which international convergence on high quality accounting standards is

necessary or appropriate in the public interest and for the protection of investors; and

"(B) that the Commission determines has the capacity to assist the Commission in fulfilling the requirements of subsection (a) and section 13(b) of the Securities Exchange Act of 1934, because, at a minimum, the standard setting body is capable of improving the accuracy and effectiveness of financial reporting and the protection of investors under the securities laws.

"(2) ANNUAL REPORT.—A standard setting body described in paragraph (1) shall submit an annual report to the Commission and the public, containing audited financial statements of that standard setting body.".

(b) COMMISSION AUTHORITY.—The Commission shall promulgate such rules and regulations to carry out section 19(b) of the Securities Act of 1933, as added by this section, as it deems necessary or appropriate in the public interest or for the protection of investors.

(c) NO EFFECT ON COMMISSION POWERS.—Nothing in this Act, including this section and the amendment made by this section, shall be construed to impair or limit the authority of the Commission to establish accounting principles or standards for purposes of enforcement of the securities laws.

(d) STUDY AND REPORT ON ADOPTING PRINCIPLES-BASED ACCOUNTING.—

(1) STUDY.—

(A) IN GENERAL.—The Commission shall conduct a study on the adoption by the United States financial reporting system of a principles-based accounting system.

(B) STUDY TOPICS.—The study required by subparagraph (A) shall include an examination of—

(i) the extent to which principles-based accounting and financial reporting exists in the United States;

(ii) the length of time required for change from a rules-based to a principles-based financial reporting system;

(iii) the feasibility of and proposed methods by which a principles-based system may be implemented; and

(iv) a thorough economic analysis of the implementation of a principles-based system.

(2) REPORT.—Not later than 1 year after the date of enactment of this Act, the Commission shall submit a report on the results of the study required by paragraph (1) to the Committee

on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives.

### § 109, 15 U.S.C. § 7219.  Funding.

(a) IN GENERAL.—The Board, and the standard setting body designated pursuant to section 19(b) of the Securities Act of 1933, as amended by section 108, shall be funded as provided in this section.

(b) ANNUAL BUDGETS.—The Board and the standard setting body referred to in subsection (a) shall each establish a budget for each fiscal year, which shall be reviewed and approved according to their respective internal procedures not less than 1 month prior to the commencement of the fiscal year to which the budget pertains (or at the beginning of the Board's first fiscal year, which may be a short fiscal year). The budget of the Board shall be subject to approval by the Commission. The budget for the first fiscal year of the Board shall be prepared and approved promptly following the appointment of the initial five Board members, to permit action by the Board of the organizational tasks contemplated by section 101(d).

(c) SOURCES AND USES OF FUNDS.—

(1) RECOVERABLE BUDGET EXPENSES.—The budget of the Board (reduced by any registration or annual fees received under section 102(e) for the year preceding the year for which the budget is being computed), and all of the budget of the standard setting body referred to in subsection (a), for each fiscal year of each of those 2 entities, shall be payable from annual accounting support fees, in accordance with subsections (d) and (e). Accounting support fees and other receipts of the Board and of such standard- setting body shall not be considered public monies of the United States.

(2) FUNDS GENERATED FROM THE COLLECTION OF MONETARY PENALTIES.— Subject to the availability in advance in an appropriations Act, and notwithstanding subsection (i), all funds collected by the Board as a result of the assessment of monetary penalties shall be used to fund a merit scholarship program for undergraduate and graduate students enrolled in accredited accounting degree programs, which program is to be administered by the Board or by an entity or agent identified by the Board.

(d) ANNUAL ACCOUNTING SUPPORT FEE FOR THE BOARD.—

(1) ESTABLISHMENT OF FEE.—The Board shall establish, with the approval of the Commission, a reasonable annual accounting support fee (or a formula for the computation thereof), as may be necessary or appropriate to establish and maintain the Board. Such fee may also cover costs incurred in the Board's first fiscal year (which may be a short fiscal year), or may be levied separately with respect to such short fiscal year.

(2) ASSESSMENTS.—The rules of the Board under paragraph (1) shall provide for the equitable allocation, assessment, and collection by the Board (or an agent appointed by the

Board) of the fee established under paragraph (1), among issuers, in accordance with subsection (g), allowing for differentiation among classes of issuers, as appropriate.

(e) ANNUAL ACCOUNTING SUPPORT FEE FOR STANDARD SETTING BODY.—The annual accounting support fee for the standard setting body referred to in subsection (a)—

(1) shall be allocated in accordance with subsection (g), and assessed and collected against each issuer, on behalf of the standard setting body, by 1 or more appropriate designated collection agents, as may be necessary or appropriate to pay for the budget and provide for the expenses of that standard setting body, and to provide for an independent, stable source of funding for such body, subject to review by the Commission; and

(2) may differentiate among different classes of issuers.

(f) LIMITATION ON FEE.—The amount of fees collected under this section for a fiscal year on behalf of the Board or the standards setting body, as the case may be, shall not exceed the recoverable budget expenses of the Board or body, respectively (which may include operating, capital, and accrued items), referred to in subsection (c)(1).

(g) ALLOCATION OF ACCOUNTING SUPPORT FEES AMONG ISSUERS.—Any amount due from issuers (or a particular class of issuers) under this section to fund the budget of the Board or the standard setting body referred to in subsection (a) shall be allocated among and payable by each issuer (or each issuer in a particular class, as applicable) in an amount equal to the total of such amount, multiplied by a fraction—

(1) the numerator of which is the average monthly equity market capitalization of the issuer for the 12-month period immediately preceding the beginning of the fiscal year to which such budget relates; and

(2) the denominator of which is the average monthly equity market capitalization of all such issuers for such 12-month period.

(h) CONFORMING AMENDMENTS.—Section 13(b)(2) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(b)(2)) is amended—

(1) in subparagraph (A), by striking "and" at the end; and

(2) in subparagraph (B), by striking the period at the end and inserting the following: "; and

"(C) notwithstanding any other provision of law, pay the allocable share of such issuer of a reasonable annual accounting support fee or fees, determined in accordance with section 109 of the Sarbanes-Oxley Act of 2002.".

(i) RULE OF CONSTRUCTION.—Nothing in this section shall be construed to render either the Board, the standard setting body referred to in subsection (a), or both, subject to procedures in Congress to authorize or appropriate public funds, or to prevent such organization from utilizing

additional sources of revenue for its activities, such as earnings from publication sales, provided that each additional source of revenue shall not jeopardize, in the judgment of the Commission, the actual and perceived independence of such organization.

(j) START-UP EXPENSES OF THE BOARD.—From the unexpended balances of the appropriations to the Commission for fiscal year 2003, the Secretary of the Treasury is authorized to advance to the Board not to exceed the amount necessary to cover the expenses of the Board during its first fiscal year (which may be a short fiscal year).

**2. The Securities Exchange Act of 1934, ch. 404, 48 Stat. 898 (codified at 15 U.S.C. §§ 78a *et seq.*), provides in relevant part:**

**§ 19, 15 U.S.C. § 78s.    Registration, Responsibilities, and Oversight of Self-Regulatory Organizations.**

\* \* \* \* \*

(b) Proposed rule changes; notice; proceedings

(1) Each self-regulatory organization shall file with the Commission, in accordance with such rules as the Commission may prescribe, copies of any proposed rule or any proposed change in, addition to, or deletion from the rules of such self-regulatory organization (hereinafter in this subsection collectively referred to as a "proposed rule change") accompanied by a concise general statement of the basis and purpose of such proposed rule change. The Commission shall, upon the filing of any proposed rule change, publish notice thereof together with the terms of substance of the proposed rule change or a description of the subjects and issues involved. The Commission shall give interested persons an opportunity to submit written data, views, and arguments concerning such proposed rule change. No proposed rule change shall take effect unless approved by the Commission or otherwise permitted in accordance with the provisions of this subsection.

(2) Within thirty-five days of the date of publication of notice of the filing of a proposed rule change in accordance with paragraph (1) of this subsection, or within such longer period as the Commission may designate up to ninety days of such date if it finds such longer period to be appropriate and publishes its reasons for so finding or as to which the self-regulatory organization consents, the Commission shall—

(A) by order approve such proposed rule change, or

(B) institute proceedings to determine whether the proposed rule change should be disapproved. Such proceedings shall include notice of the grounds for disapproval under consideration and opportunity for hearing and be concluded within one hundred eighty days of the date of publication of notice of the filing of the proposed rule change. At the conclusion of such proceedings the Commission, by order, shall approve or disapprove such proposed rule change. The Commission may extend the time for conclusion of such

proceedings for up to sixty days if it finds good cause for such extension and publishes its reasons for so finding or for such longer period as to which the self-regulatory organization consents.

The Commission shall approve a proposed rule change of a self-regulatory organization if it finds that such proposed rule change is consistent with the requirements of this chapter and the rules and regulations thereunder applicable to such organization. The Commission shall disapprove a proposed rule change of a self-regulatory organization if it does not make such finding. The Commission shall not approve any proposed rule change prior to the thirtieth day after the date of publication of notice of the filing thereof, unless the Commission finds good cause for so doing and publishes its reasons for so finding.

(3) (A) Notwithstanding the provisions of paragraph (2) of this subsection, a proposed rule change may take effect upon filing with the Commission if designated by the self-regulatory organization as (i) constituting a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule of the self-regulatory organization, (ii) establishing or changing a due, fee, or other charge imposed by the self-regulatory organization, or (iii) concerned solely with the administration of the self-regulatory organization or other matters which the Commission, by rule, consistent with the public interest and the purposes of this subsection, may specify as without the provisions of such paragraph (2).

(B) Notwithstanding any other provision of this subsection, a proposed rule change may be put into effect summarily if it appears to the Commission that such action is necessary for the protection of investors, the maintenance of fair and orderly markets, or the safeguarding of securities or funds. Any proposed rule change so put into effect shall be filed promptly thereafter in accordance with the provisions of paragraph (1) of this subsection.

(C) Any proposed rule change of a self-regulatory organization which has taken effect pursuant to subparagraph (A) or (B) of this paragraph may be enforced by such organization to the extent it is not inconsistent with the provisions of this chapter, the rules and regulations thereunder, and applicable Federal and State law. At any time within sixty days of the date of filing of such a proposed rule change in accordance with the provisions of paragraph (1) of this subsection, the Commission summarily may abrogate the change in the rules of the self-regulatory organization made thereby and require that the proposed rule change be refiled in accordance with the provisions of paragraph (1) of this subsection and reviewed in accordance with the provisions of paragraph (2) of this subsection, if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter. Commission action pursuant to the preceding sentence shall not affect the validity or force of the rule change during the period it was in effect and shall not be reviewable under section 78y of this title nor deemed to be "final agency action" for purposes of section 704 of Title 5.

* * * * *

(c) Amendment by Commission of rules of self-regulatory organizations

The Commission, by rule, may abrogate, add to, and delete from (hereinafter in this subsection collectively referred to as "amend") the rules of a self-regulatory organization (other than a registered clearing agency) as the Commission deems necessary or appropriate to insure the fair administration of the self-regulatory organization, to conform its rules to requirements of this chapter and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purposes of this chapter, in the following manner:

(1) The Commission shall notify the self-regulatory organization and publish notice of the proposed rulemaking in the Federal Register. The notice shall include the text of the proposed amendment to the rules of the self-regulatory organization and a statement of the Commission's reasons, including any pertinent facts, for commencing such proposed rulemaking.

(2) The Commission shall give interested persons an opportunity for the oral presentation of data, views, and arguments, in addition to an opportunity to make written submissions. A transcript shall be kept of any oral presentation.

(3) A rule adopted pursuant to this subsection shall incorporate the text of the amendment to the rules of the self-regulatory organization and a statement of the Commission's basis for and purpose in so amending such rules. This statement shall include an identification of any facts on which the Commission considers its determination so to amend the rules of the self-regulatory agency to be based, including the reasons for the Commission's conclusions as to any of such facts which were disputed in the rulemaking.

(4) (A) Except as provided in paragraphs (1) through (3) of this subsection, rulemaking under this subsection shall be in accordance with the procedures specified in section 553 of Title 5 for rulemaking not on the record.

(B) Nothing in this subsection shall be construed to impair or limit the Commission's power to make, or to modify or alter the procedures the Commission may follow in making, rules and regulations pursuant to any other authority under this chapter.

(C) Any amendment to the rules of a self-regulatory organization made by the Commission pursuant to this subsection shall be considered for all purposes of this chapter to be part of the rules of such self-regulatory organization and shall not be considered to be a rule of the Commission.

(5) With respect to rules described in subsection (b)(5) of this section, the Commission shall consult with and consider the views of the Secretary of the Treasury before abrogating, adding to, and deleting from such rules, except where the Commission determines that an emergency exists requiring expeditious or summary action and publishes its reasons therefor.

(d) Notice of disciplinary action taken by self-regulatory organization against a member or participant; review of action by appropriate regulatory agency; procedure

(1) If any self-regulatory organization imposes any final disciplinary sanction on any member thereof or participant therein, denies membership or participation to any applicant, or prohibits or limits any person in respect to access to services offered by such organization or member thereof or if any self-regulatory organization (other than a registered clearing agency) imposes any final disciplinary sanction on any person associated with a member or bars any person from becoming associated with a member, the self-regulatory organization shall promptly file notice thereof with the appropriate regulatory agency for the self-regulatory organization and (if other than the appropriate regulatory agency for the self-regulatory organization) the appropriate regulatory agency for such member, participant, applicant, or other person. The notice shall be in such form and contain such information as the appropriate regulatory agency for the self-regulatory organization, by rule, may prescribe as necessary or appropriate in furtherance of the purposes of this chapter.

(2) Any action with respect to which a self-regulatory organization is required by paragraph (1) of this subsection to file notice shall be subject to review by the appropriate regulatory agency for such member, participant, applicant, or other person, on its own motion, or upon application by any person aggrieved thereby filed within thirty days after the date such notice was filed with such appropriate regulatory agency and received by such aggrieved person, or within such longer period as such appropriate regulatory agency may determine. Application to such appropriate regulatory agency for review, or the institution of review by such appropriate regulatory agency on its own motion, shall not operate as a stay of such action unless such appropriate regulatory agency otherwise orders, summarily or after notice and opportunity for hearing on the question of a stay (which hearing may consist solely of the submission of affidavits or presentation of oral arguments). Each appropriate regulatory agency shall establish for appropriate cases an expedited procedure for consideration and determination of the question of a stay.

(3) The provisions of this subsection shall apply to an exchange registered pursuant to section 78f(g) of this title or a National securities association registered pursuant to section 78o-3(k) of this title only to the extent that such exchange or association imposes any final disciplinary sanction for

(A) a violation of the Federal securities laws or the rules and regulations thereunder; or

(B) a violation of a rule of such exchange or association, as to which a proposed change would be required to be filed under this section, except that, to the extent that the exchange or association rule violation relates to any account, agreement, contract, or transaction, this subsection shall apply only to the extent such violation involves a security futures product.

(e) Disposition of review; cancellation, reduction, or remission of sanction

(1) In any proceeding to review a final disciplinary sanction imposed by a self-regulatory organization on a member thereof or participant therein or a person associated with such a member, after notice and opportunity for hearing (which hearing may consist solely of consideration of the record before the self-regulatory organization and opportunity for the presentation of supporting reasons to affirm, modify, or set aside the sanction)—

(A) if the appropriate regulatory agency for such member, participant, or person associated with a member finds that such member, participant, or person associated with a member has engaged in such acts or practices, or has omitted such acts, as the self-regulatory organization has found him to have engaged in or omitted, that such acts or practices, or omissions to act, are in violation of such provisions of this chapter, the rules or regulations thereunder, the rules of the self-regulatory organization, or, in the case of a registered securities association, the rules of the Municipal Securities Rulemaking Board as have been specified in the determination of the self-regulatory organization, and that such provisions are, and were applied in a manner, consistent with the purposes of this chapter, such appropriate regulatory agency, by order, shall so declare and, as appropriate, affirm the sanction imposed by the self-regulatory organization, modify the sanction in accordance with paragraph (2) of this subsection, or remand to the self-regulatory organization for further proceedings; or

(B) if such appropriate regulatory agency does not make any such finding it shall, by order, set aside the sanction imposed by the self-regulatory organization and, if appropriate, remand to the self-regulatory organization for further proceedings.

(2) If the appropriate regulatory agency for a member, participant, or person associated with a member, having due regard for the public interest and the protection of investors, finds after a proceeding in accordance with paragraph (1) of this subsection that a sanction imposed by a self-regulatory organization upon such member, participant, or person associated with a member imposes any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter or is excessive or oppressive, the appropriate regulatory agency may cancel, reduce, or require the remission of such sanction.

* * * * *

**§ 25, 15 U.S.C. § 78y.  Court Review of Orders and Rules.**

(a)  Final Commission orders; persons aggrieved; petition; record; findings; affirmance, modification, enforcement, or setting aside of orders; remand to adduce additional evidence

(1) A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

(2) A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated by the Commission for that purpose. Thereupon the Commission shall file in the court the record on which the order complained of is entered, as provided in section 2112 of Title 28 and the Federal Rules of Appellate Procedure.

(3) On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part.

(4) The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive.

(5) If either party applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that the additional evidence is material and that there was reasonable ground for failure to adduce it before the Commission, the court may remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate. If the case is remanded to the Commission, it shall file in the court a supplemental record containing any new evidence, any further or modified findings, and any new order.

(b)  Commission rules; persons adversely affected; petition; record; affirmance, enforcement, or setting aside of rules; findings; transfer of proceedings

(1) A person adversely affected by a rule of the Commission promulgated pursuant to section 78f, 78i(h)(2), 78k, 78k-1, 78o(c)(5) or (6), 78o-3, 78q, 78q-1, or 78s of this title may obtain review of this rule in the United States Court of Appeals for the circuit in which he resides or has his principal place of business or for the District of Columbia Circuit, by filing in such court, within sixty days after the promulgation of the rule, a written petition requesting that the rule be set aside.

(2) A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated for that purpose. Thereupon, the Commission shall file in the court the rule under review and any documents referred to therein, the Commission's notice of proposed rulemaking and any documents referred to therein, all written submissions and the transcript of any oral presentations in the rulemaking, factual

information not included in the foregoing that was considered by the Commission in the promulgation of the rule or proffered by the Commission as pertinent to the rule, the report of any advisory committee received or considered by the Commission in the rulemaking, and any other materials prescribed by the court.

(3) On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the materials set forth in paragraph (2) of this subsection, to affirm and enforce or to set aside the rule.

(4) The findings of the Commission as to the facts identified by the Commission as the basis, in whole or in part, of the rule, if supported by substantial evidence, are conclusive. The court shall affirm and enforce the rule unless the Commission's action in promulgating the rule is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law.

(5) If proceedings have been instituted under this subsection in two or more courts of appeals with respect to the same rule, the Commission shall file the materials set forth in paragraph (2) of this subsection in that court in which a proceeding was first instituted. The other courts shall thereupon transfer all such proceedings to the court in which the materials have been filed. For the convenience of the parties in the interest of justice that court may thereafter transfer all the proceedings to any other court of appeals.

(c) Objections not urged before Commission; stay of orders and rules; transfer of enforcement or review proceedings

(1) No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.

(2) The filing of a petition under this section does not operate as a stay of the Commission's order or rule. Until the court's jurisdiction becomes exclusive, the Commission may stay its order or rule pending judicial review if it finds that justice so requires. After the filing of a petition under this section, the court, on whatever conditions may be required and to the extent necessary to prevent irreparable injury, may issue all necessary and appropriate process to stay the order or rule or to preserve status or rights pending its review; but (notwithstanding section 705 of Title 5) no such process may be issued by the court before the filing of the record or the materials set forth in subsection (b)(2) of this section unless: (A) the Commission has denied a stay or failed to grant requested relief, (B) a reasonable period has expired since the filing of an application for a stay without a decision by the Commission, or (C) there was reasonable ground for failure to apply to the Commission.

(3) When the same order or rule is the subject of one or more petitions for review filed under this section and an action for enforcement filed in a district court of the United States under section 78u(d) or (e) of this title, that court in which the petition or the action is first filed has

jurisdiction with respect to the order or rule to the exclusion of any other court, and thereupon all such proceedings shall be transferred to that court; but, for the convenience of the parties in the interest of justice, that court may thereafter transfer all the proceedings to any other court of appeals or district court of the United States, whether or not a petition for review or an action for enforcement was originally filed in the transferee court. The scope of review by a district court under section 78u(d) or (e) of this title is in all cases the same as by a court of appeals under this section.

* * * * *