# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FREE ENTERPRISE FUND, *et al.*,

                    Plaintiffs,

          -against-

THE PUBLIC COMPANY ACCOUNTING
OVERSIGHT BOARD, *et al.*,

                    Defendants.

Civil Action No. 1:06-cv-00217-JR


## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## <u>MOTION TO DISMISS THE COMPLAINT</u>

Lewis H. Ferguson  (D.C. Bar No. 176312)
J. Gordon Seymour  (D.C. Bar No. 450051)
Heidi E. Murdy  (D.C. Bar No. 474680)
PUBLIC COMPANY ACCOUNTING
    OVERSIGHT BOARD
1666 K Street, N.W.
Washington, D.C. 20006
(202) 207-9162 (telephone)
(202) 862-8430 (facsimile)

Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
James R. Doty  (D.C. Bar No. 416785)
Jeffrey A. Lamken  (D.C. Bar No. 440547)
Joshua A. Klein  (D.C. Bar No. 489078)
BAKER BOTTS, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
(202) 639-7700 (telephone)
(202) 639-7890 (facsimile)

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

ARGUMENT .................................................................................................................. 1

I.    Sarbanes-Oxley's Exclusive Statutory Review Mechanism Applies to Plaintiffs'
      Claims .................................................................................................................. 1

      A.    Courts Routinely Apply Comprehensive Review Regimes Even to Broad
            Constitutional Challenges to Agency Authority ...................................... 2

      B.    Plaintiffs' Authorities Do Not Support Their Purported Exception ...................... 5

      C.    The Statutory Review Mechanism Is Adequate To Address Plaintiffs'
            Claims ................................................................................................... 11

      D.    The Purposes Underlying Congress's Exclusive Review Scheme Apply
            Fully to Plaintiffs' Claims ...................................................................... 15

II.   Plaintiffs May Not Invoke a General Implied Cause of Action to Evade Statutory
      Limits on Remedies Congress Has Expressly Provided ................................... 20

III.  Plaintiffs Lack Standing ................................................................................. 21

      A.    Free Enterprise Fund's Allegations Are Insufficient To Support Standing .......... 21

      B.    Plaintiffs Lack Standing To Raise Certain Appointments Clause
            Challenges ............................................................................................. 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES[1]

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)..................................................................15

*Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984)..........................................................12

*Blitz v. Donovan*, 740 F.2d 1241 (D.C. Cir. 1984) ...........................................................17

*Bois v. Marsh*, 801 F.2d 462 (D.C. Cir. 1986)..................................................................17

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)......................................................................8

*Chatman-Bey v. Thornburgh*, 864 F.2d 804 (D.C. Cir. 1988)................................20, 21

*City of Roseville v. Norton*, 219 F. Supp. 2d 130 (D.D.C. 2002) .....................................23

*Continental Air Lines, Inc. v. Dep't of Transp.*, 843 F.2d 1444 (D.C. Cir. 1988)............18, 19

*Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472 (D.C. Cir. 1986) ..................................9

*Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105 (D.D.C. 2005)........................22

*FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993) ...................................23

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) ....................................................14

*First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690 (3d Cir. 1979)............................2, 5, 10

*Gen. Elec. Co. v. EPA*, 360 F.3d 188 (D.C. Cir. 2004) ............................................6, 10

*Gen. Fin. Corp. v. FTC*, 700 F.2d 366 (7th Cir. 1983)....................................................17

*Johnson v. Robison*, 415 U.S. 361 (1974)........................................................................12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................23

*Marchiano v. NASD*, 134 F. Supp. 2d 90 (D.D.C. 2001) ..................................................8

*Mathews v. Eldridge*, 424 U.S. 319 (1976)......................................................................12

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) .................................. *passim*

---

[1] Authorities on which we chiefly rely are marked by an asterisk.

*Monk v. Sec'y of Navy, 793 F.2d 364 (D.C. Cir. 1986) ...............................................21

Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 125 S. Ct. 2688 (2005)..................17

Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849 (D.C. Cir. 2002)  ................................. passim

*Nat'l Taxpayers Union v. SSA, 376 F.3d 239 (4th Cir. 2004) ...........................................2, 3, 4, 9

Nw. Pipeline Corp. v. FERC, 863 F.2d 73 (D.C. Cir. 1988) .............................................15

Pharm. Research & Mfrs. of Am. v. Thompson, 259 F. Supp. 2d 39 (D.D.C. 2003)....................23

Preiser v. Rodriguez, 411 U.S. 475 (1973)............................................................20, 21

Robinson v. District of Columbia, 403 F. Supp. 2d 39 (D.D.C. 2005)..........................................22

Sohm v. Fowler, 365 F.2d 915 (D.C. Cir. 1966).............................................................17

Stanton v. D.C. Court of Appeals, 127 F.3d 72 (D.C. Cir. 1997) .................................................23

Steadman v. Governor, 918 F.2d 963 (D.C. Cir. 1990)......................................................14

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)......................................................24

*Sturm, Ruger & Co. v. Chao, 300 F.3d 867 (D.C. Cir. 2002) .............................................. passim

Telecomms. Research & Action Ctr. v. FCC, 750 F.2d 70 (D.C. Cir. 1984).................................8

Time Warner Entm't Co., L.P. v. FCC, 93 F.3d 957 (D.C. Cir. 1996) .................................8, 9, 10

Ukiah Adventist Hosp. v. FTC, 981 F.2d 543 (D.C. Cir. 1992)......................................................9

United States v. AVX Corp., 962 F.2d 108 (1st Cir. 1992) .............................................22

Virginia v. United States, 74 F.3d 517 (4th Cir. 1996)...........................................................17

Wallace v. Lynn, 507 F.2d 1186 (D.C. Cir. 1974) ........................................................17

Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411 (1965)............................1

Wright v. McPhie, No. Civ. A. 04-1204, 2005 WL 3273556 (D.D.C. Sept. 27, 2005)................22

## STATUTES

8 U.S.C. § 1160 ............................................................................................................6

15 U.S.C. § 78y .......................................................................................................9, 18

33 U.S.C. § 921 ............................................................................................................7

42 U.S.C. § 1983 ........................................................................................................20

49 U.S.C. § 1486 (1982) ...........................................................................................18

CERCLA § 104 .............................................................................................................6

CERCLA § 106 .............................................................................................................6

CERCLA § 113 .............................................................................................................6

Social Security Act § 1140 ..........................................................................................4

## LEGISLATIVE HISTORY

148 Cong. Rec. S6661 (July 11, 2002) .......................................................................6

## ADMINISTRATIVE DECISIONS

*Proposed Rules on Periodic Reporting by Registered Public Accounting Firms*, PCAOB
    Release No. 2006-004 (May 23, 2006), *available at* http://www.pcaob.org/
    Rules/Docket_019/2006-05-23_Release_No._2006-004.pdf ...........................13

## MISCELLANEOUS

Brief for Petitioner, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) (No. 92-896),
    1993 WL 337849 ...............................................................................................3

*Public Company Accounting Oversight Board: Releases Issued by the SEC on PCAOB
    Rule Proposals*, http://www.sec.gov/rules/pcaob.shtml ...................................13

**ARGUMENT**

**I.    SARBANES-OXLEY'S EXCLUSIVE STATUTORY REVIEW MECHANISM APPLIES TO PLAINTIFFS' CLAIMS**

Plaintiffs do not dispute that, where Congress enacts a comprehensive review scheme, that scheme is presumed to be exclusive, even with respect to constitutional claims. *See Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 419-22 (1965); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-12 (1994); *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 871-73 (D.C. Cir. 2002); Def. Mem. at 15-19.[1]  Nor do they deny that Sarbanes-Oxley prescribes such a comprehensive scheme, specifying in detail the scope, timing, and limitations of both administrative review and judicial review in the court of appeals. *See* Def. Mem. at 19-22.  This lawsuit is utterly at odds with that scheme.  It was brought at the wrong time, in the wrong court, and without the required prior consideration by the SEC.

Plaintiffs nonetheless urge that they fall within an *exception* to that review scheme because this case involves a "facial constitutional challenge to the very basis for the [Board's] authority" that is "wholly collateral" to the statutory review provisions.  Pl. Opp. at 11.  But nothing in the statute's text, structure, or history supports such an exception.  Sarbanes-Oxley incorporated a preexisting SRO review regime that was universally held to be exclusive.  *See* Def. Mem. at 22-25 (citing cases and treatises).   And Congress specifically *rejected* an amendment that would have given district courts jurisdiction over suits by accounting firms such as Beckstead and Watts.  *See* U.S. Br. at 17 & n.6 (citing 148 Cong. Rec. S6661 (July 11, 2002)).  Plaintiffs bear an especially heavy burden in urging this Court to recognize jurisdiction that Congress purposefully chose not to create.

---

[1] Citations to "Def. Mem." are to defendants' memorandum in support of their motion to dismiss. Citations to "Pl. Opp." are to plaintiffs' memorandum in opposition.  Citations to "U.S. Br." are to the United States' statement of interest.

Perhaps recognizing as much, plaintiffs assert that a "tsunami" of precedent supports their claimed exception. Pl. Opp. at 3. But that "tsunami" turns out to be a string of inapposite cases that turn on the particular statutory language in the review schemes at issue in those cases — language that is wholly absent from Sarbanes-Oxley. Moreover, while plaintiffs repeatedly complain that requiring them to pursue their claims through the statutory review mechanism would be "bizarre" and serve "no logical purpose," Pl. Opp. at 28-29, 32, they ignore the obvious reasons why their claims *cannot* be sensibly adjudicated outside that scheme. Plaintiffs' constitutional claims depend critically on the meaning of the statutory review provisions under which the SEC exercises oversight of the Board. By bypassing the SEC entirely, plaintiffs have denied it the opportunity to apply its experience and expertise to construe the review provisions that Congress entrusted to it for administration. Plaintiffs' alleged injuries, moreover, do not arise from the Board's existence in the abstract, but from specific Board actions — rules, inspections, and investigations. Had plaintiffs challenged those actions before the Commission as Congress intended, the Commission could have resolved the dispute on nonconstitutional grounds and thereby avoided the need to resolve constitutional issues.

### A.    Courts Routinely Apply Comprehensive Review Regimes Even to Broad Constitutional Challenges to Agency Authority

Unable to identify any *statutory* exception to Sarbanes-Oxley's review mechanism, plaintiffs argue that comprehensive review regimes do not apply to broad constitutional challenges to agency authority. Pl. Opp. at 19-20. The Board, they claim, cannot "cite a *single case* in which an administrative-review mechanism has been held to implicitly preclude claims of this sort." *Id.* at 12. Not so. Case after case — including *Thunder Basin*, *National Taxpayers Union*, *Sturm, Ruger*, and *First Jersey* — has required plaintiffs to pursue such claims through an exclusive review regime, *even where* plaintiffs challenged an agency's enabling statute, and *even*

*where* the challenges were facial rather than as-applied.

*Thunder Basin* is on point. In that case, the Supreme Court held that the plaintiff could challenge the Mine Act's review procedures only through the statutory review process. 510 U.S. at 215. Contrary to plaintiffs' description, *Thunder Basin* did not distinguish between "two particularized, as-applied challenges" and the "facial Due Process challenge to the administrative-review structure itself." Pl. Opp. at 13. There was only one constitutional claim in that case: the due-process challenge to the statutory review structure. *See* 510 U.S. at 205; *Nat'l Taxpayers Union v. SSA*, 376 F.3d 239, 243 (4th Cir. 2004) (describing *Thunder Basin* as a "challenge to the constitutionality of the Mine Act" itself). Like the claims here, that was a broad-based constitutional attack on the agency's statutory authority. Yet the Court held that it had to be raised through the statutory process nonetheless. *See Thunder Basin*, 510 U.S. at 215.[2]

Plaintiffs point (Pl. Opp. at 11) to *Thunder Basin*'s statement that exclusive-review mechanisms apply only to claims "of the type Congress intended to be reviewed within th[e] statutory structure." 510 U.S. at 212. That observation is correct so far as it goes: If Congress intends to exclude a category of claims, that category is of course excluded. But *Thunder Basin* does not support the various exemptions that plaintiffs attempt to read into that language. The *only* reason *Thunder Basin* cited for holding that the constitutional claim there was "of the type Congress intended to be reviewed within th[e] statutory structure" was that the structure was

---

[2] Plaintiffs' misconception of *Thunder Basin* appears to stem from their belief that the case involved a First Amendment claim. Pl. Opp. at 12 n.1. The case involved a *statutory* claim based on the petitioner's "NLRA rights to exclude union organizers," 510 U.S. at 205, but no First Amendment claim. As the briefing makes clear, the "constitutional claim" referred to in Part III of the opinion was the plaintiff's due-process challenge to the statutory review structure. *See* Brief for Petitioner at 29-36, *Thunder Basin*, 510 U.S. 200 (No. 92-896), 1993 WL 337849. In Part III, the Court concluded that Congress intended that due-process claim to be raised through the review structure, 510 U.S. at 215, and in Part IV, the Court concluded that channeling the claim through that structure did not itself violate the Constitution, *id.* at 216-18.

adequate to address it.  *See id.* at 215; *Nat'l Taxpayers Union*, 376 F.3d at 243 (noting that *Thunder Basin* "seems to have rested its conclusion on the fact that the plaintiff's constitutional claim could be meaningfully addressed by the court of appeals in due course").  Here, too, the statutory scheme is fully adequate to address plaintiffs' claims.  *See* pp. 11-15, *infra.*

Other courts have applied *Thunder Basin* to facial challenges to an agency's statutory authority.  In *National Taxpayers Union*, for example, the Social Security Administration had threatened enforcement action against the plaintiff under § 1140 of the Social Security Act, which prohibits use of the term "Social Security" in private solicitations.  The plaintiff filed suit in district court, alleging that § 1140 was "*facially invalid* because it is unconstitutionally overbroad."  376 F.3d at 241 (emphasis added).  No less than plaintiffs' claims here, that claim was a facial constitutional attack on the source of statutory authority.  Yet the court held that the claim was "of the type Congress intended to be adjudicated, at least initially, through the administrative review scheme" because the plaintiff would have a "meaningful opportunity to litigate its constitutional challenge" on review in the court of appeals.  *Id.* at 244.

*Sturm, Ruger* is also instructive.  The plaintiff there launched a broad attack on an OSHA survey program, claiming that it violated the Fourth Amendment and applicable statutes.  Notwithstanding the plaintiff's contention that it was raising "a purely legal issue consisting of a facial challenge," the D.C. Circuit held that the claims had to be raised through the statutory review regime.  300 F.3d at 869, 874 (internal quotation marks omitted).  The Fourth Amendment claim, the court held, was of the type Congress intended to be reviewed within the statutory structure because that structure was adequate to permit review.  *Id.* at 873-74.  The court distinguished its earlier decision in *National Mining Ass'n v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002) — one of the principal authorities on which plaintiffs rely, *see* pp. 7-8,

*infra* — because the claims in *National Mining* could not have been feasibly reviewed through the statutory review process there. 300 F.3d at 876.

Most conspicuously, plaintiffs all but ignore *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690 (3d Cir. 1979). In that case, the subject of an ongoing NASD disciplinary action filed suit against the NASD in district court, claiming that the NASD's enabling statute was an "unconstitutional delegation of legislative power to a private institution." *Id.* at 697. That claim was obviously a broad facial constitutional challenge to the NASD's enabling statute; indeed, it is indistinguishable from one of plaintiffs' claims here. *See* Def. Mem. at 28; Compl. ¶¶ 93-95. The review scheme the plaintiff sought to evade, moreover, was the same one that plaintiffs seek to bypass here — the SRO review provisions of the Exchange Act, which Congress expressly incorporated into Sarbanes-Oxley. Yet the Third Circuit required the plaintiff to pursue that claim through the statutory review process. 605 F.2d at 697.[3]

### B.    Plaintiffs' Authorities Do Not Support Their Purported Exception

Plaintiffs' contrary authorities are wholly inapposite. Nearly all the cases on which they rely turn on Congress's decision, in express statutory text, to limit exclusivity to particular categories of claims — something Congress did *not* do here.

Plaintiffs' reliance on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), exemplifies their mistake. While plaintiffs describe *McNary* as establishing an across-the-board rule that "facial constitutional challenges" are "'wholly collateral'" and thus exempt from otherwise exclusive review schemes, Pl. Opp. at 12, that case did not involve a comprehensive review scheme at all. It involved a narrow, express preclusion provision under the immigration

---

[3] Plaintiffs state that *First Jersey* found the "claims against NASD . . . precluded because they alleged particularized bias against the plaintiff." Pl. Opp. at 16. But the bias claim in *First Jersey* was separate from the nondelegation claim. The court addressed the bias claim only *after* concluding that the nondelegation claim was unexhausted. *See* 605 F.2d at 697-700.

laws which declared that " '[t]here shall be no administrative or judicial review of a *determination respecting an application* for adjustment of status under this section except in accordance with this subsection.' "  498 U.S. at 486 n.6 (quoting 8 U.S.C. § 1160(e)) (emphasis added).  The Supreme Court held that the "critical words" in that provision — "determination respecting an application" — referred to the "denial of an individual application."  *Id.* at 491-92. Because the plaintiffs' suit challenged "practices and policies" across the board, rather than the denial of an individual application, the provision by its terms did not apply.  *Id.* at 492-94. Unlike *McNary*, this case does not involve an express preclusion provision that encompasses only limited categories of claims.  Rather, Congress enacted a comprehensive review scheme that evinces its intent to reach *all* challenges the scheme is adequate to address.

The D.C. Circuit decisions on which plaintiffs rely suffer from the same defect.  For example, *General Electric Co. v. EPA*, 360 F.3d 188 (D.C. Cir. 2004) (Pl. Opp. at 13-14), like *McNary*, did not involve a comprehensive review scheme at all.  It involved an express preclusion provision, CERCLA § 113(h), that by its terms barred only " 'challenges to removal or remedial action selected under [§ 104 of CERCLA] or to review any order issued under [§ 106(a) of CERCLA].' "  360 F.3d at 191 (quoting 42 U.S.C. § 9613(h)).  As the court of appeals explained:  "Congress thus enumerated only two types of challenges over which federal courts lack jurisdiction — challenges to § 104 actions and § 106(a) orders."  *Id.*  Because the plaintiff did not raise a "challenge to the way in which EPA is administering the statute in any particular removal or remedial action or order," but rather a "challenge to the CERCLA statute itself," its "facial constitutional challenge d[id] not fit within the plain text of § 113(h)."  *Id. General Electric*, like *McNary*, thus stands only for the unremarkable proposition that express preclusion provisions apply only to claims that fall within their textual scope.

6

*National Mining Ass'n v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002) (Pl. Opp. at 14-15), is similarly inapposite. The review regime in that case, far from being comprehensive, merely stated that "a person 'adversely affected or aggrieved by a final *order* of the [Benefits Review] Board may obtain review of that *order* in the United States court of appeals for the circuit in which the injury occurred' "; it did not address review of other agency actions such as regulations. *Id.* at 856 (quoting 33 U.S.C. § 921(c)) (emphasis in opinion). The plaintiffs sought to challenge a regulation, not an order, but the government argued that the statute precluded the claim nonetheless. *Id.* The court responded: "The obvious difficulty with the government's position is that this provision putting exclusive review jurisdiction in the Court of Appeals speaks of orders, but Congress in passing the APA drew a distinction between orders, which typically follow adjudications, and regulations." *Id.* The court specifically contrasted *Thunder Basin* on the ground that the statute in *Thunder Basin* made regulations "explicitly reviewable in the Court of Appeals." *Id.* at 857. The review mechanism at issue here differs from the one in *National Mining* (and resembles the one held exclusive in *Thunder Basin*) in that it provides a comprehensive review scheme that addresses *all* types of Board action — registration denials, inspection reports, sanctions, and rules alike.

While plaintiffs cite *National Mining* as supporting their position (Pl. Opp. at 14-15, 27-28), their reading of the case is exactly backwards. They interpret it to hold that, where Congress provides for review of not merely adjudications but regulations as well, the scheme is *less* likely to be deemed exclusive. Pl. Opp. at 27. But *National Mining* says the opposite: It held that the review provisions of the Black Lung Benefits Act were not exclusive because they were "silent" about review of regulations. 292 F.3d at 856. And it contrasted the Mine Safety Act provisions held exclusive in *Thunder Basin* on the ground that they made regulations "explicitly reviewable

in the Court of Appeals." *Id.* at 857. Plaintiffs simply mistake *National Mining*'s description of the Mine Safety Act at issue in *Thunder Basin* for a description of the Black Lung Benefits Act at issue in *National Mining* itself. *See* Pl. Opp. at 27. The existence of a review provision for rulemaking proceedings makes preclusion *more* likely, not *less* likely. And the statute here, like the statute in *Thunder Basin*, comprehensively provides for review of rulemaking proceedings and adjudications alike. *See* Def. Mem. at 19-22.

Finally, plaintiffs err in relying on *Time Warner Entertainment Co., L.P. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996) (Pl. Opp. at 14). That case did hold that the district court had jurisdiction over a facial constitutional challenge notwithstanding a provision for review in the court of appeals. *Id.* at 964-65. But *Time Warner* was not applying *Thunder Basin*. Rather, it addressed a different jurisdictional objection — that district-court jurisdiction would interfere with the court of appeals' *future* jurisdiction, in violation of *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 78-79 (D.C. Cir. 1984). *See* 93 F.3d at 964-65. The court did not consider whether the *comprehensiveness of the review scheme* demonstrated Congress's intent to foreclose district-court jurisdiction wholly apart from any interference with the court of appeals' prerogatives. The case therefore has no bearing here. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (where the court has "never squarely addressed" a question, it remains "free to address the issue on the merits"); *Sturm, Ruger*, 300 F.3d at 873 n.5 (" 'unaddressed jurisdictional defects [have] no precedential effect' ").

*Time Warner*, moreover, addresses only *jurisdiction*. The case does not address applicable *exhaustion* requirements. 93 F.3d at 964-65. A court may dismiss for want of exhaustion even where jurisdiction exists under *Time Warner*. *See Marchiano v. NASD*, 134 F. Supp. 2d 90, 94 (D.D.C. 2001). Congress has expressly required exhaustion in the Exchange

Act, *see* 15 U.S.C. § 78y(c)(1), and it makes sense to enforce that requirement here:  The SEC's authoritative construction of the statute, in light of its expertise, is necessary to intelligent resolution of plaintiffs' constitutional claims, and the SEC has ample authority to provide relief from *all* the injuries alleged (neither of which was true in *Time Warner*).  *See* pp. 15-19, *infra*; Def. Mem. at 25-30.  Plaintiffs' failure to exhaust is thus fatal to this action.[4]

Plaintiffs' reliance on *Time Warner* and *National Mining* suffers from yet another defect. In *Time Warner*, the court was careful to note that the suit was "entirely independent of any agency proceedings, whether actual or prospective."  93 F.3d at 965.  It distinguished, on that ground, an earlier case denying jurisdiction where the plaintiff had raised a "'purely legal question[]' of FTC jurisdiction" but had done so "*after* the FTC had issued an administrative complaint against it."  *Id.* (citing *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992)) (emphasis added).  *National Taxpayers Union* likewise distinguished *Time Warner* on precisely that ground:  The plaintiff in *National Taxpayers Union* had "brought th[e] action in anticipation of imminent enforcement proceedings, and its arguments amount[ed] to defenses to enforcement."  376 at 244 n.3.  The suit thus was not "wholly independent of the agency's enforcement of a substantive provision" but rather "represent[ed] an impermissible attempt to evade the administrative review scheme established by Congress."  *Id.*  Similarly, in *Sturm,*

---

[4] Plaintiffs urge that the Board raised exhaustion only in a footnote and, as a result, waived the issue.  Pl. Opp. at 28 n.6.  But the Board raised exhaustion throughout the body of its motion and brief.  *See* Defendants' Motion to Dismiss at 1 (plaintiffs "have failed to exhaust administrative remedies"); Def. Mem. at 1 (plaintiffs "have not exhausted administrative remedies"); *id.* at 14 ("failing to exhaust administrative remedies"); *id.* at 22-23 ("related doctrine of exhaustion"); *id.* at 37 ("Principles of exhaustion require the same result.").  It also expressly relied on exhaustion cases such as *First Jersey*.  *See* Def. Mem. at 22-23 & n.16.  Furthermore, it is far from clear that the *Board* (rather than the *Commission*) can waive exhaustion of the *Commission's* administrative processes.  In any event, "non-exhaustion may be raised *sua sponte* by a reviewing court," *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986), and should be invoked when the alternative is unnecessary resolution of constitutional questions.

*Ruger*, the D.C. Circuit distinguished *National Mining* on the ground that *National Mining* did not involve a pending enforcement proceeding:  By seeking "an injunction that would terminate the proceeding currently pending before the Commission," the court explained, the plaintiff in *Sturm, Ruger* was attempting to make an "end run" around the statutory review process.  300 F.3d at 876; *see also First Jersey*, 605 F.2d at 693, 697 (requiring exhaustion of facial constitutional challenge where plaintiff brought suit during ongoing NASD disciplinary action).

Plaintiffs are seeking to make precisely the same sort of "end run" here.  They acknowledge that this suit was filed during an ongoing Board investigation.  Compl. ¶ 79.  And the relief they seek would necessarily terminate that investigation.  Indeed, they specifically pray for "an order and judgment enjoining the Board and its Members from taking any further action against Plaintiff Beckstead and Watts."  Compl. at 23 (prayer for relief).  As a result, *Time Warner* and *National Mining* do not apply.[5]  Simply put, when litigants challenge an enabling statute in the midst of an ongoing investigation or enforcement action, the claim is necessarily intertwined with that action — the inevitable effect of a successful suit is to frustrate *that specific enforcement effort*.  Interference with ongoing agency enforcement implicates the heart of the

---

[5] Plaintiffs dispute this interpretation of *Time Warner* on the ground that "*Time Warner* involved a refusal by certain cable companies to comply with a particular set of FCC regulations"; that "regulatory impositions were 'ongoing' and administrative proceedings were inevitable"; and that there was a "near-certainty" that the plaintiff's dispute would "end up in the administrative process."  Pl. Opp. at 24.  That is both factually inaccurate and legally irrelevant.  It is inaccurate because "regulatory impositions" were *not* ongoing — the suit in *Time Warner* was filed *before* the agency promulgated any rules under the statute.  93 F.3d at 963.  And it is irrelevant because the pertinent question is not whether "regulatory impositions" are ongoing — nor is the question whether enforcement proceedings are a "near-certainty" or even "inevitable."  Rather, the question is whether an *agency investigation or enforcement action* is *imminent or ongoing*.  This case involves a *Board investigation* (not merely Board "regulatory impositions") that is *ongoing* (not merely a "near-certainty" or "inevitable").  *Time Warner* thus does not apply.  Plaintiffs' reliance on *McNary*, *General Electric*, and *National Mining* for this point (Pl. Opp. at 24) is similarly unavailing.  Those cases involved limited preclusion provisions that did not purport to apply to the claims at issue.  *See* pp. 5-8, *supra*.  Where an exclusivity provision by its terms does not apply, it does not matter whether enforcement proceedings are ongoing.

exclusivity doctrine, whether plaintiffs raise broad constitutional challenges or not.

**C.    The Statutory Review Mechanism Is Adequate To Address Plaintiffs' Claims**

Plaintiffs' remaining authorities are all inapposite for another reason:  In each case, the claims were held to be "collateral" — *i.e.*, not "of the type Congress intended to be reviewed within th[e] statutory structure," *Thunder Basin*, 510 U.S. at 212 — because the review structure was *inadequate to address them*.  Plaintiffs, by contrast, have myriad opportunities to raise their claims through the process Congress provided.  They have simply chosen not to avail themselves of those opportunities.

1.    Because courts presume that Congress intends judicial review to be available, they ordinarily will not hold a statutory review mechanism exclusive with respect to claims that cannot be meaningfully raised through that mechanism.  *See Thunder Basin*, 510 U.S. at 212. Numerous cases cited by plaintiffs turn on that presumption.  *McNary* (Pl. Opp. at 12, 18), for example, involved a review scheme that would have denied the plaintiffs *any* opportunity for "meaningful judicial review."  498 U.S. at 496.  The scheme applied only if "the alien [plaintiff was] later apprehended and deportation proceedings [were] initiated" — an alternative which, according to the Supreme Court, was "tantamount to a complete denial of judicial review."  *Id.* at 496-97.  Furthermore, in *McNary* it was "unlikely that a court of appeals would be in a position to provide meaningful review of the type of claims raised" under the statutory mechanism because, without the "factfinding and record-developing capabilities of a federal district court," the court could not develop an "adequate record as to the pattern of INS' allegedly unconstitutional practices."  *Id.* at 497.  Here, by contrast, no such difficulties exist.  Congress deliberately dispensed with the district courts' jurisdiction because it concluded that their fact-finding capabilities were unnecessary.  Def. Mem. at 25.  And the critical prerequisite to plaintiffs' suit is not development of a factual record — let alone a record that only a district

11

court could develop — but rather construction of a statutory review provision that Congress committed to the authority and expertise of the Commission in the first instance. *See* pp. 15-16, *infra*; Def. Mem. at 30-32.

*Mathews v. Eldridge*, 424 U.S. 319 (1976) (Pl. Opp. at 12), and *Johnson v. Robison*, 415 U.S. 361 (1974) (Pl. Opp. at 12), are to the same effect. In *Mathews*, the petitioner made a colorable claim that, "because of his physical condition and dependency upon the disability benefits," he could not obtain full relief by invoking the statutory post-deprivation review mechanism. 424 U.S. at 331. And in *Robison*, the review scheme would have "preclude[d] judicial cognizance of constitutional challenges" altogether. 415 U.S. at 373. For precisely those reasons, the Supreme Court in *Thunder Basin* distinguished those two cases (and *McNary*) as involving total preclusion of meaningful judicial review. *See* 510 U.S. at 212-13.

*Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984) (Pl. Opp. at 20-21), is inapposite for the same reason. *Andrade* was a suit by employees who had not exhausted their constitutional claim through a statutory grievance process. The court of appeals excused that failure, but did so because the claim "could not have been brought" under that procedure. *Id.* at 1491. Indeed, "neither party" even "*argue[d]* that the grievance procedure [was] an adequate forum to resolve the constitutional claims." *Id.* (emphasis added). The only issue presented by that case was whether the employees had to exhaust the claim, *even though* the review scheme was inadequate, because they also raised other claims that the mechanism *was* adequate to address. *See id.*

2.      The review mechanism here, by contrast, is clearly adequate to address plaintiffs' claims. Courts of appeals have been resolving facial constitutional challenges to SEC or SRO enabling statutes for decades under the Exchange Act's review provisions. *See* Def. Mem. at 26 (citing cases). Those are precisely the sorts of claims that plaintiffs raise here.

Plaintiffs nevertheless argue that the review scheme is inadequate because "there is no current controversy sufficient to trigger the administrative-review mechanism" and there may never be one. Pl. Opp. at 19. That is wrong as a factual matter, because it assumes that review of disciplinary sanctions is the only avenue for relief. As shown in our opening brief, Def. Mem. at 7-13, 29-30, plaintiffs have had — and will continue to have — opportunities to raise pre-enforcement constitutional challenges on review of *Board rulemaking proceedings*. They have simply chosen to bypass those opportunities in favor of an extra-statutory suit in this court.

Plaintiffs complain that challenging Board rules would be impractical because it would require them to "rifl[e] through the Federal Register in an effort to find a proposed PCAOB rule applicable to them." Pl. Opp. at 26. But it is hardly unreasonable to expect Board-registered accounting firms (or their counsel) to take a few moments to check pending proposals before rushing to file suit. Proposed Board rules are available not only in the Federal Register, but on the SEC's website as well.[6] The SEC has conducted numerous rule approval proceedings over the past three years, *see* Def. Mem. at 10 n.7, and will continue to do so.[7]

Plaintiffs deride this alternative as "extraordinary," "bizarre," and "contrary to ordinary practice." Pl. Opp. at 26, 28. Noticeably absent from this stream of adjectives is any suggestion that this avenue is *inadequate*. It is not. Plaintiffs have had every opportunity (and will have further opportunities) to seek pre-enforcement review of their constitutional claims through the statutory mechanisms Congress provided. Had they done so in the context of a concrete

---

[6] *See Public Company Accounting Oversight Board: Releases Issued by the SEC on PCAOB Rule Proposals*, http://www.sec.gov/rules/pcaob.shtml.

[7] Just four weeks ago, the Board proposed new rules, which, if adopted by the Board, will be subject to notice and comment before the Commission in due course. *Proposed Rules on Periodic Reporting by Registered Public Accounting Firms*, PCAOB Release No. 2006-004 (May 23, 2006), *available at* http://www.pcaob.org/Rules/Docket_019/2006-05-23_Release_ No._2006-004.pdf.

rulemaking challenge, the SEC could have brought its expertise to bear on the true scope of the review provisions plaintiffs assail as "minimal," or could have exercised its discretion to resolve the dispute on nonconstitutional grounds. *See* pp. 15-19, *infra*. By suing in district court instead, plaintiffs have denied the SEC that opportunity.

Even ignoring that avenue of review, the fact that the Board has not imposed a disciplinary order "sufficient to trigger the administrative-review mechanism" and may never do so (Pl. Opp. at 19) is hardly a reason to *ignore* the statutory scheme. The whole point of finality requirements is to defer review until it proves necessary. "[S]uggest[ions] that the complaint would be 'insulated' from review because the alleged unlawfulness would be moot if [plaintiff] prevailed in the adjudication . . . do not support [interlocutory review]. To the contrary, one of the principal reasons to await the termination of agency proceedings is 'to obviate all occasion for judicial review.' " *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 n.11 (1980).

Likewise, there is no merit to plaintiffs' complaint that termination of the investigation in their favor would not "moot out the ongoing controversy between the parties" because it would not resolve "the Board's authority to impose [auditing] standards or to otherwise regulate [Beckstead and Watts] at all." Pl. Opp. at 22. That is precisely why plaintiffs should challenge those rules on review of *rulemaking proceedings*. *See* p. 13, *supra*. Plaintiffs cannot focus on the Board's rules as an independent source of injury while at the same time ignoring, as "bizarre," the very review mechanism Congress specifically designed for those rules.

Plaintiffs finally suggest that the burdens of interim compliance present them with a "Hobson's choice." Pl. Opp. at 31. But "one cannot avoid an exhaustion requirement merely by delaying beyond the time that an administrative procedure must be brought." *Steadman v. Governor*, 918 F.2d 963, 968 (D.C. Cir. 1990). Plaintiffs could have challenged the Board's

authority in rulemaking proceedings long ago.  *See* Def. Mem. at 29-30.  Any delay is the product of plaintiffs' decision not to participate in the review process Congress provided. Moreover, Congress specified that Board rules and sanctions ordinarily do not take effect until the Commission review process is complete.  *Id.* at 7, 9.  Plaintiffs thus would suffer no harm from availing themselves of their statutory remedies.[8]

### D.    The Purposes Underlying Congress's Exclusive Review Scheme Apply Fully to Plaintiffs' Claims

Plaintiffs' proposal that this Court exempt their constitutional challenges from the statutory review scheme also conflicts with the policies underlying exclusivity and exhaustion.

**1.**    *Agency expertise*.  Plaintiffs acknowledge the importance of "allow[ing] the administrative agency to bring its particular expertise to bear on the issues at hand."  Pl. Opp. at 29.  Agencies should be given the "opportunity to bring [their] knowledge and expertise to bear on an issue before it is presented to a generalist court."  *Nw. Pipeline Corp. v. FERC*, 863 F.2d 73, 77-78 (D.C. Cir. 1988).  Plaintiffs nonetheless contend that prior SEC review would serve "no logical purpose" here because the SEC has no expertise in separation-of-powers, Appointments Clause, and nondelegation issues.  Pl. Opp. at 29, 32.

Plaintiffs simply ignore the obvious reason that the SEC's expertise is not only relevant but potentially dispositive:  Each of plaintiffs' constitutional claims depends on the degree of control Sarbanes-Oxley gives the SEC over the Board.  If the Board's actions are subject to searching review and control by the SEC, it is much less likely that the alleged absence of direct presidential supervision violates separation-of-powers principles; that the Board's members are

---

[8] For that reason, plaintiffs' lengthy quotation from *Abbott Laboratories v. Gardner*, 387 U.S. 136, 151-53 (1967) (Pl. Opp. at 32), is misdirected.  The issue there was whether to authorize pre-enforcement review where Congress had not expressly provided for it.  Here, Congress *has* provided for pre-enforcement review.  Plaintiffs have simply ignored the mechanism Congress established.

principal officers who must be appointed by the President and confirmed by the Senate; or that Congress has impermissibly delegated unsupervised legislative authority. *See* Def. Mem. at 30-32. Presumably for that reason, plaintiffs continue to assert that the SEC's oversight is "minimal and deferential." Pl. Opp. at 4. But as the United States notes, "plaintiffs should not be heard to make these self-serving assumptions about the nature of the SEC's oversight under the statute even as they urge the Court to dispense with the administrative process under which the SEC would be permitted to interpret the statute and exercise that oversight in the first instance." U.S. Br. at 20-21. The disagreement over the meaning of these review provisions proves that prior construction by the SEC is essential to intelligent resolution of these claims.

Plaintiffs' challenge thus is *not* "premised on entirely different facts than, and otherwise wholly unrelated to, any administrative challenge under the statutory mechanism." Pl. Opp. at 19. To the contrary, the challenge depends critically on the meaning of review provisions that would necessarily be at issue in *any* SEC proceeding to review Board action. Construction of those review provisions is committed, in the first instance, to the SEC — the agency charged with administering them. And, given the SEC's long history interpreting and applying the analogous provisions that govern its review of SROs, the Commission is particularly well-equipped to interpret the provisions. Def. Mem. at 32.

Plaintiffs offer no answer, except the oblique suggestion that "any advice the SEC . . . wishes to offer on the relationship between the two entities can be offered through the normal briefing process." Pl. Opp. at 31. But this Court should not require the SEC to develop its views as ad hoc litigation positions rather than through considered and formal deliberation in the statutory proceedings that Congress provided for.[9] The question is whether Congress's review

---

[9] Plaintiffs err in claiming (Pl. Opp. at 31) that the Commission's interpretation of its review

scheme is adequate to address plaintiffs' claims — not whether a district-court lawsuit can be litigated in a way that accommodates the *Commission's* concerns.  "[T]he specific statutory method, if adequate, is exclusive." *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983).

    **2.**    *Avoiding unnecessary constitutional adjudication.*  Exclusivity and exhaustion also "'vindicate the fundamental doctrine that courts should avoid passing on unnecessary constitutional questions.'" *Bois v. Marsh*, 801 F.2d 462, 468 n.11 (D.C. Cir. 1986).  "'[T]he very fact that constitutional issues are put forward constitutes a strong reason for not allowing' the avoidance of administrative remedies." *Blitz v. Donovan*, 740 F.2d 1241, 1248 (D.C. Cir. 1984); *see also Wallace v. Lynn*, 507 F.2d 1186, 1190 (D.C. Cir. 1974); *Sohm v. Fowler*, 365 F.2d 915, 918 (D.C. Cir. 1966); Def. Mem. at 32-34.

    Here, plaintiffs' alleged injuries do not arise from the statute itself or from the Board's mere existence.  They arise from specific Board actions — rules, inspections, and investigations — which must be challenged according to Congress's plan.  *Cf. Virginia v. United States*, 74 F.3d 517, 522-23 (4th Cir. 1996) (plaintiff whose "practical objective" is to nullify agency action may not avoid statutory review scheme by challenging agency's enabling statute).  Those Board actions are subject to SEC review as provided by statute.  Had plaintiffs challenged the actions that aggrieve them through the means provided, the SEC could have resolved the dispute in a way that avoided the need for constitutional adjudication altogether.  *See* Def. Mem. at 32-34.

    Plaintiffs argue that a disciplinary ruling exonerating Beckstead and Watts would not remedy all their injuries so long as the Board "continue[s] to assert regulatory authority over

---

standards presents a "broad-based policy decision" not "appropriately made in individualized adjudicative proceedings."  It is commonplace for courts and other tribunals to interpret their own standards of review in the course of applying those standards to particular cases.  And agencies have long been authorized to make "policy" decisions when delegated such authority. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 125 S. Ct. 2688, 2699 (2005).

Beckstead and FEF's members." Pl. Opp. at 30. But exoneration in the disciplinary process is merely one of many administrative remedies that plaintiffs may pursue. As shown in defendants' opening brief, the Commission could construe the statute or exercise its discretionary authority in several ways that would mitigate or eliminate plaintiffs' injuries. Def. Mem. at 30-34. Most notably, the SEC has express statutory authority *to relieve the Board of any or all of its regulatory responsibilities* if it concludes such action is in the public interest — and the SEC may take into account constitutional considerations in deciding whether to exercise that authority. *Id.* at 34; *cf. Thunder Basin*, 510 U.S. at 215 (rule precluding consideration of constitutional claims is "perhaps of less consequence where, as here, the reviewing body is not the agency itself but an independent commission"). Such action, of course, would entirely moot plaintiffs' constitutional claims.

Where a statute confers discretion that would permit an agency to avoid a constitutional problem, plaintiffs must present their claims to the agency. Thus, in *Continental Air Lines, Inc. v. Department of Transportation*, 843 F.2d 1444 (D.C. Cir. 1988), the D.C. Circuit refused to hear a constitutional challenge to advertising restrictions that had not been raised before the agency. *Id.* at 1455-56. The court relied on a statutory exhaustion requirement strikingly similar to the Exchange Act provision applicable here.[10] Judge Starr's opinion for the court recognized that the Department was powerless to declare the statute at issue unconstitutional. Nevertheless, he concluded that exhaustion was required because it would have provided the agency with an

---

[10] *Compare* 49 U.S.C. § 1486(e) (1982) ("No objection to an order of the Board or Secretary of Transportation shall be considered by the court unless such objection shall have been urged before the Board or Secretary of Transportation or if it was not so urged, unless there are reasonable grounds for failure to do so."), *quoted in Continental*, 843 F.2d at 1455, *with* 15 U.S.C. § 78y(c)(1) ("No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.").

opportunity *to take constitutional concerns into account in its construction and application of the statute*: By choosing "not to favor [the Department] with even a whimper" about the constitutional concern, the petitioner had precluded the agency from "carrying on its interpretive function . . . mindful of the higher demands of the Constitution," thus "strik[ing] at the heart of the exhaustion values codified by Congress." *Id.* at 1455-56. Here, plaintiffs did not merely decline to "favor [the SEC] with even a whimper" about their constitutional concerns. They declined to "favor [the SEC]" with any request for relief at all. Congress has granted the Commission the power to rescind or modify the Board's authority, using the broadest of standards. In those circumstances, the purposes underlying exhaustion and exclusivity are at their zenith.

     **3.** *Interference with agency processes.* Plaintiffs' facial constitutional challenge also presents the prospect of harassment of ongoing Board investigatory efforts. Congress has provided for challenges to Board authority either prospectively (on review of Board rules) or retrospectively (on review of sanctions once imposed), but it has not permitted judicial review in the midst of ongoing Board investigations. *See* Def. Mem. at 6-9. Congress has a strong interest in ensuring that ongoing agency proceedings are not disrupted by piecemeal and premature litigation in court. *Id.* at 34-35. That interest does not depend on the nature of the particular claim presented. Facial constitutional challenges to the Board's authority by the subjects of ongoing Board investigations are no less distracting — indeed, they may well be *more* distracting — than other more specific challenges to Board conduct.

     **4.** *Efficiency.* Finally, plaintiffs' facial constitutional challenge undercuts the interests of judicial efficiency. Def. Mem. at 36. Congress's scheme funnels disputes through a single agency (the SEC) and then directly to the circuit courts. Plaintiffs' alternative substitutes

hundreds of individual judges, and delays circuit court review until completion of those proceedings.  Plaintiffs' proposal entails all the costs of inconsistent interpretation, duplicative litigation, and unnecessary layers of adjudication that Congress sought to avoid.

* * * * *

Congress has prescribed a comprehensive review scheme that is fully adequate to address plaintiffs' constitutional claims on review in the court of appeals.  That alone is enough to require dismissal.  But even if it were not, the particular circumstances of this case would require the same result:  Plaintiffs' constitutional claims inextricably depend on the scope of statutory review provisions that Congress committed to the SEC for interpretation and implementation in the first instance.  Plaintiffs can obtain full relief from the SEC, which has authority to rescind or modify the Board's powers.  And plaintiffs have brought this suit in the midst of an ongoing Board investigation.  Under the circumstances, precedent and sound judicial policy require dismissal.

## II. PLAINTIFFS MAY NOT INVOKE A GENERAL IMPLIED CAUSE OF ACTION TO EVADE STATUTORY LIMITS ON REMEDIES CONGRESS HAS EXPRESSLY PROVIDED

Plaintiffs urge that there is a general, judicially implied cause of action to enjoin state and federal officials from violating the Constitution.  Pl. Opp. at 33-37.  The cases they cite, however, do not address situations where Congress has provided another, more specific remedy.  Where Congress has provided such a remedy, judicially implied causes of action are not available.  *See* Def. Mem. at 38 (citing cases).

Contrary to plaintiffs' assertions (Pl. Opp. at 34), that rule applies whether plaintiffs seek injunctive relief or money damages.  In *Preiser v. Rodriguez*, for example, the Supreme Court held that state prisoners could not evade statutory and common-law limits on habeas corpus by seeking injunctive relief under 42 U.S.C. § 1983.  411 U.S. 475 (1973).  In *Chatman-Bey v.*

20

*Thornburgh*, 864 F.2d 804 (D.C. Cir. 1988) (en banc), the D.C. Circuit applied *Preiser* to federal prisoners who sought equitable relief. As both courts observed, " '[i]t would wholly frustrate explicit congressional intent to hold that [challengers] could evade [statutory exhaustion] requirement[s] by the simple expedient of putting a different label on their pleadings.' " *Id.* at 809 (quoting *Preiser*, 411 U.S. at 489-90); *see also Monk v. Sec'y of Navy*, 793 F.2d 364 (D.C. Cir. 1986).

It follows that, where a precise statutory remedy exists, plaintiffs may not circumvent limits on that remedy by relying on more general implied causes of action. *See Chatman-Bey*, 864 F.2d at 809 (noting "the well-settled principle that a specific statute displaces (or, as is frequently said, preempts) more general remedies").[11] But that is precisely what plaintiffs attempt here. Congress has provided an express remedy in the Exchange Act. It specified the forum and timing of review, and required exhaustion. Plaintiffs must be held to all the requirements of that scheme, despite their attempts to couch their complaint in other terms.

## III.    PLAINTIFFS LACK STANDING

### A.    Free Enterprise Fund's Allegations Are Insufficient To Support Standing

Free Enterprise Fund's *only* allegation of injury is that its members are "subject to the Board's authority and have been injured by the regulations imposed by the Board." Compl. ¶ 11. The complaint does not identify who the members are, how they have been injured, or which regulations caused the injuries. Plaintiffs do not cite a single case that has ever held such an utterly opaque allegation of injury sufficient to withstand a motion to dismiss.

---

[11] Nor can plaintiffs avoid those limits by relying on the Declaratory Judgment Act. *See Monk*, 793 F.2d at 366 (specific statutory remedies "override the general terms of the declaratory judgment and federal question statutes"). That Act does not create a cause of action, but merely establishes a mechanism by which the party that ordinarily would be defendant may bring suit as plaintiff. It does not permit suit where *no* party would otherwise have a cause of action. Def. Mem. at 37 n.25; U.S. Br. at 24 n.12.

Instead, plaintiffs endeavor to supplement their inadequate pleadings with unsupported factual assertions in their legal memorandum. In their statement of facts, for example, they make the novel assertion — without any citation to the complaint — that FEF's members "include public companies that are subject to and have been forced to pay the Board's 'accounting support fee' tax, as well as public company auditors who, like Beckstead, are subject to the regulatory authority of the Board and have been burdened by the costs of compliance." Pl. Opp. at 8. Later, they claim that "FEF's membership includes both public companies and auditors of public companies," who suffer injury from the Board's accounting support fees and auditing standards respectively — again without any citation to the complaint. Pl. Opp. at 39. It is well-settled, however, that a plaintiff may not salvage a defective complaint by making factual assertions in legal briefs. *See, e.g.*, *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 47 (D.D.C. 2005) ("Factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion . . . ."); *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 110 (D.D.C. 2005) (same). The allegations as pled are inadequate, as *United States v. AVX Corp.*, 962 F.2d 108, 116-17 (1st Cir. 1992), and *Wright v. McPhie*, No. Civ. A. 04-1204, 2005 WL 3273556, at *3 (D.D.C. Sept. 27, 2005), make clear. *See* Def. Mem. at 39-40. Plaintiffs do not seriously contend otherwise.

Plaintiffs urge the Court not to address FEF's standing because Beckstead and Watts has standing to raise the same claims. Pl. Opp. at 38. Contrary to plaintiffs' assertions, however, FEF and Beckstead and Watts do not "raise identical claims and seek identical relief." *Id.* FEF's members (according to unsupported factual allegations in plaintiffs' legal memorandum) include public-company issuers who, unlike Beckstead and Watts, pay the Board's accounting support fees. The *legal theories* underlying plaintiffs' claims may be the same (separation of powers,

Appointments Clause, and nondelegation), but where different plaintiffs challenge different Board actions, they are not raising the same "claims." *Cf. Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 79 (D.C. Cir. 1997) ("Litigation of the validity of one past course of conduct is not the same 'claim' as . . . litigation over the validity of [other, subsequent] conduct . . . ."). In any event, whether or not this Court *must* address FEF's standing, it clearly has discretion to do so. *Pharm. Research & Mfrs. of Am. v. Thompson*, 259 F. Supp. 2d 39, 51 n.4 (D.D.C. 2003). That discretion is appropriately exercised where, as here, the lack of standing is glaring.

**B.    Plaintiffs Lack Standing To Raise Certain Appointments Clause Challenges**

Plaintiffs also fail to defend their standing to challenge (1) the restrictions on the Commission's appointment authority, and (2) the vesting of appointment authority in the Commission rather than the Chairman individually.

As to the restrictions on the Commission's appointment authority, plaintiffs respond only in a footnote. Pl. Opp. at 42 n.9. Plaintiffs do not dispute that *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), dismissed a private party's challenge to restrictions on the President's authority to appoint FEC members for lack of standing. Instead, they urge that challenges to the President's appointment authority are different, reciting the court's observation that Presidents had often viewed restrictions on their appointment authority as unenforceable. Pl. Opp. at 42 n.9. But that observation was hardly a principal or essential basis for the decision. The court held that private parties could not challenge restrictions on the appointing officer's selection of appointees because the party restrained by such restrictions was the *appointing officer*, and any indirect effect on private parties was entirely speculative. 6 F.3d at 825 & n.4; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) ("[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is . . . 'substantially more difficult' to establish."); *City of Roseville v. Norton*, 219 F. Supp. 2d 130,

147-48 (D.D.C. 2002) (rejecting private-party standing to raise Tenth Amendment anti-commandeering claims because "the prudential standing principles limiting third party standing" preclude private parties from vindicating a government officer's rights").

Plaintiffs' defense of their standing to challenge Congress's decision to vest appointment authority in the SEC, rather than the Chairman, is no more convincing. Because the Chairman voted in favor of each appointment, plaintiffs effectively got what they claim they were entitled to: Board members chosen by the Chairman. Plaintiffs speculate that "the presence of additional, improperly present members (*i.e.*, the other SEC commissioners)" during deliberations might have influenced the Chairman's vote. Pl. Opp. at 41. Even if so, that caused no injury that *plaintiffs* have standing to complain about. Just as the President may consult individual Senators (or, for that matter, anyone else) in deciding whom to nominate, the Chairman was entitled to consult whomever he wished in deciding how to vote. Those consulted were not "improperly present" during his deliberations. And if the challenged provision restricted the Chairman's decision by causing him to take into account views he otherwise would not have, that would give the *Chairman*, not plaintiffs, cause to seek redress. It is thus no different from the restriction on how many accountants may be appointed, or the requirement to consult with the Federal Reserve and Treasury Department. Such restrictions, to the extent they "restrict" at all, restrict the *appointing officer's* selection of appointees. *See* pp. 23-24, *supra*; Def. Mem. at 40-43.

Plaintiffs finally suggest that this Court need not address their standing to raise these claims, implying that we have "parsed" their Appointments Clause challenge too finely and that these sub-claims are "only incidental" to their primary arguments that the Board members are principal officers and that the SEC is not a "Department." Pl. Opp. at 40, 42 n.9. But courts may not address even "incidental" claims absent standing. *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 101 (1998).  As contemplated by this Court's briefing order, jurisdictional issues should be resolved now.  No purpose would be served by requiring merits briefing on "incidental" claims that plaintiffs lack standing to raise.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed.


Dated: June 19, 2006                          Respectfully submitted,

                                              /s/  Joe Caldwell

Lewis H. Ferguson  (D.C. Bar No. 176312)      Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
J. Gordon Seymour  (D.C. Bar No. 450051)      James R. Doty  (D.C. Bar No. 416785)
Heidi E. Murdy  (D.C. Bar No. 474680)         Jeffrey A. Lamken  (D.C. Bar No. 440547)
PUBLIC COMPANY ACCOUNTING                     Joshua A. Klein  (D.C. Bar No. 489078)
    OVERSIGHT BOARD                           BAKER BOTTS, LLP
1666 K Street, N.W.                           1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20006                        Washington, D.C.  20004-2400
(202) 207-9162 (telephone)                    (202) 639-7700 (telephone)
(202) 862-8430 (facsimile)                    (202) 639-7890 (facsimile)

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2006, I caused a true and correct copy of the foregoing to be served by the court's electronic case filing system on all parties subscribing thereto, and by overnight express mail upon the following:

Michael A. Carvin
Noel J. Francisco
Christian G. Vergonis
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Viet D. Dinh
Wendy Keefer
BANCROFT ASSOCIATES PLLC
601 13th St., N.W.
Suite No. 930 South
Washington, D.C. 20005

Sam Kazman
Hans Bader
COMPETITIVE ENTERPRISE INSTITUTE
1001 Connecticut Avenue, N.W.
Suite 1250
Washington, D.C. 20036

Kenneth W. Starr
24569 Via De Casa
Malibu, CA 90265

Robert J. Katerberg
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Washington, D.C. 20001

/s/ Joshua Klein