# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
FREE ENTERPRISE FUND *et al.*           )
                                        )
                    Plaintiffs,         )
                                        )
         v.                             )          Civil Action No. 1:06-cv-00217-JR
                                        )
THE PUBLIC COMPANY ACCOUNTING           )
OVERSIGHT BOARD *et al.*                )
                                        )
                    Defendants.         )
_____)

## PLAINTIFFS' RESPONSE TO THE UNITED STATES' STATEMENT OF INTEREST

Pursuant to this Court's order dated June 13, 2006, Plaintiffs respectfully submit this response to the Statement of Interest of the United States.

The United States joins Defendants in arguing that this case should be dismissed because of a purported congressional intent to require facial constitutional challenges to the Public Company Accounting Oversight Board's ("PCAOB") structure to be raised only through either the quasi-adjudicative proceedings established for review of PCAOB disciplinary sanctions or the notice-and-comment rulemaking procedures established for the promulgation of PCAOB rules and accounting standards.

As an initial matter, in presenting the adjudication and rulemaking procedures as acceptable alternatives to one another, the United States completely undermines its own argument by conceding that neither mechanism is itself exclusive with respect to the facial constitutional claims asserted here. In particular, the Government's acknowledgement of notice-and-comment rulemaking as an appropriate route for Plaintiffs' separation of powers challenges

conclusively demonstrates that the adjudicative process here, unlike the one in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), cannot be *exclusive*.  None of the alleged advantages of the adjudicative process (*e.g.*, allowing the agency to bring its expertise to bear or providing it an opportunity to moot the dispute) could have been thought important in this context because, according to the United States' own analysis, Congress was perfectly content with permitting circumvention of this process through a rulemaking challenge that lacks those alleged advantages.  On the other hand, the rulemaking route cannot be deemed exclusive for the same reason — *i.e.*, the appropriateness of an adjudicatory challenge — and for the additional reason that no court anywhere has ever hinted that appellate review of agency rulemaking is the exclusive means for bringing a challenge that has nothing to do with the content or scope of the promulgated rules, but is solely being used as a vehicle to resolve the antecedent question of whether the agency has any constitutional regulatory authority at all.

In addition, wholly apart from the fact that the United States' "exclusivity" argument is at war with itself, the agency's adjudicative process cannot possibly be deemed the exclusive means for Plaintiffs to challenge the unconstitutional structure and appointment process of the PCAOB because:  (1) that adjudicative process is not available to Plaintiffs and may well never be; (2) a favorable resolution in that process for Plaintiff Beckstead and Watts will in no way resolve or eliminate its challenge to the Board's power to assert any regulatory authority; (3) the Plaintiffs' various separation of powers challenges are entirely unrelated and collateral to any fact-bound auditing disputes that can be adjudicated under the statutory review procedure; and (4) neither the Securities and Exchange Commission nor the PCAOB has any authority to consider or resolve these separation of powers issues that are so completely foreign to any agency expertise.  Needless to say, this Court cannot be implicitly stripped of its traditional,

equitable power to adjudicate and enjoin an unconstitutional agency's structure (or actions) by the mere existence of a procedure that is unavailable to the Plaintiffs and cannot possibly resolve the issues they raise in this Court or grant them the relief they seek in this Court. A brief review of governing D.C. Circuit and Supreme Court precedent makes this clear.

**1.    Administrative Adjudication Is Not the Appropriate Mechanism for Adjudication of Plaintiffs' Claims**

Like Defendants, the United States principally relies on a series of cases, typified by *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), addressing the proper forum, as between a federal district court and an agency adjudication, for the resolution of disputes about discretionary agency enforcement action. These cases hold that, where an agency's application of a statute to a regulated entity under a particularized set of circumstances creates a controversy about the propriety of the agency's decision, the entity cannot make an end-run around the administrative-review mechanism created by Congress to adjudicate and resolve such a controversy. As the D.C. Circuit has put it, the *Thunder Basin* doctrine prevents a plaintiff from attempting "to short-circuit the administrative process by challenging a[n agency's] *enforcement* position in a district court." *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 858 (D.C. Cir. 2002) (emphasis added). Thus, a prerequisite to the invocation of *Thunder Basin* preclusion is the availability of an administrative mechanism for review of a discretionary agency enforcement action.

Moreover, even where there exists a particularized enforcement action and a mechanism for review thereof, *Thunder Basin* does not preclude district-court jurisdiction over facial constitutional challenges to the agency's enabling act because such challenges are "wholly collateral to a statute's review provisions and outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212 (internal quotation marks omitted). Rather, *Thunder Basin* is applicable only to

"a challenge to the *way* in which [the agency] is *administering* the statute in any particular removal or remedial action or order."  *Gen. Elec. Co. v. EPA*, 360 F.3d 188, 191 (D.C. Cir. 2004) (emphasis added).  As the D.C. Circuit has repeatedly emphasized, courts must be cognizant of this "necessary distinction" when applying *Thunder Basin* and related jurisdictional doctrines. *Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996) (per curiam); *see also* Pls.' Opp. at 11-18.[1]

In short, in every context, a statutory review mechanism needs to be exhausted, or can be deemed exclusive, only where the plaintiffs challenge a *decision* of the agency that *caused* the complained-of injury and the agency is capable of issuing a favorable administrative decision *eliminating* that injury.  Here, Plaintiffs do not challenge the correctness of any particular agency decision, but rather challenge the agency's basic structure.  And the administrative review mechanism cannot eliminate Plaintiffs' injury because that mechanism is not available to Plaintiffs and, if it ever becomes available, is inherently incapable of either resolving Plaintiffs' structural challenge or offering full relief from the injury caused.  Thus, for the reasons detailed below, *Thunder Basin*'s implicit preclusion rule has absolutely no application here.

*First*, the prerequisite for any application of the *Thunder Basin* doctrine — the availability to Plaintiffs of the statutory mechanism for agency adjudication — is absent here.

_____

[1] Although a wealth of authority cutting across all jurisdictional doctrines supports this point, *see id.* at 12-18, the D.C. Circuit's decision in *General Electric Co. v. Whitman* provides a concise summary of that law.  There, in language largely echoing the United States' arguments here, the district court found that the plaintiff's facial challenge to the CERCLA statute was precluded because of the plaintiff's ongoing interaction with the agency.  *See* 257 F. Supp. 2d 8, 22-28 (D.D.C. 2004).  The D.C. Circuit reversed (*reported at* 360 F.3d 188).  It held that the district court's jurisdiction over the plaintiff's challenge could not be *implicitly* precluded (as the United States argues here) even if, unlike here, the express statutory language arguably reached plaintiff's claim.  360 F.3d at 192.  This was so, the D.C. Circuit reasoned, because the plaintiff's lawsuit was a "facial, or 'systemic'" constitutional challenge to the statutory scheme, rather than a "challenge to the way in which [the agency was] administering the statute."  *Id.* at 191-92; *see also* Pls.' Opp. at 14-18 (citing cases recognizing this "necessary distinction").

Specifically, the mechanism for agency adjudication relied upon by the United States and

Defendants applies *only* to agency "review of disciplinary sanctions that the PCAOB may

impose on public company accountants." Statement of Interest at 6. But the PCAOB has not

imposed (or threatened to impose) disciplinary sanctions on either of the Plaintiffs. Accordingly,

there is in this case no extant (or imminent) agency enforcement action that is amenable to

review via agency adjudication. *See* Pls.' Opp. at 22-23; *Indep. Broker-Dealers' Trade Ass'n v.*

*SEC*, 442 F.2d 132, 141 (D.C. Cir. 1971) (finding district-court jurisdiction over challenge to

SEC action because of "an absence of any ongoing administrative proceeding, and absence of

any claim that court jurisdiction would or might interfere with such proceedings"). In short,

Plaintiffs cannot be said to be *evading* the statute's administrative-review mechanism because

there is no agency action providing a basis for Plaintiffs to *invoke* that administrative-review

mechanism.

      The absence of an administratively reviewable controversy places the instant case in stark

contrast to every authority relied upon by the United States and Defendants. *Thunder Basin*, for

example, involved a controversy between the plaintiff and the agency concerning whether a

particular employee representative qualified for designation under the substantive provisions of

the statute; the plaintiff had already "complained to" the agency about the designation before it

filed its lawsuit to have the matter resolved. *See* 510 U.S. at 204, 216. Similarly, *Sturm, Ruger*,

involved a dispute between the plaintiff and the agency concerning citations imposed by the

agency on the plaintiff; enforcement proceedings had begun, and the plaintiff's claims in the

district court were "identical" to the claims in its pending administrative challenge to the

citations. *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002). *National Taxpayers*

*Union* involved a dispute over whether the statute allowed the agency to prevent the plaintiff

from including certain content in its mass mailing.  *See Nat'l Taxpayers Union v. Soc. Sec. Admin.*, 376 F.3d 239, 240-41 (4th Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005).  And *First Jersey Securities* involved an ongoing disciplinary proceeding for fraud that had been initiated by the agency against the plaintiff.  *See First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 692-93 (3d Cir. 1979).[2]

*Second*, even if administrative adjudication were available, district-court jurisdiction would still not be precluded because use of the administrative-review process has no potential to resolve Plaintiffs' grievance with the agency or otherwise moot the constitutional claims asserted here.  Plaintiffs broadly challenge the PCAOB's ongoing assertion of *any* regulatory authority over them, and the PCAOB will continue to assert that ongoing regulatory authority over them no matter what the result of any particular enforcement action.  Any reversal by the SEC of the hypothetical sanction imposed by the Board on Plaintiff Beckstead and Watts would therefore in no way cure its injury or moot out its claim.  Because the "statutory review process would [thus] be insufficient to provide [Plaintiffs] with the full relief to which [they] might be entitled," this inherently insufficient  process cannot be deemed the exclusive procedure for mounting this broad-based structural challenge.  *Nat'l Mining Ass'n*, 292 F.3d at 859 (citing *Krescholleck v. S.*

_____

[2] In addition to being inapplicable because there is no ongoing or imminent agency adjudication here, *First Jersey* is irrelevant for another reason.  That case did not involve *preclusion* under the *Thunder Basin* doctrine, but rather involved the defense of failure to exhaust administrative remedies.  *First Jersey*, 605 F.2d at 695.  Here, not only have Defendants waived any exhaustion defense, *see* Pls.' Opp. at 28 n.6, but *Andrade v. Lauer* establishes that, in this Circuit, a plaintiff need not exhaust a pending administrative proceeding in order to bring a district-court injunctive action challenging the agency on separation of powers grounds.  *See* 729 F.2d 1475, 1491-93 (D.C. Cir. 1984); Pls.' Opp. at 17, 20-21.  Even under the Third Circuit's view of the exhaustion doctrine, moreover, this lawsuit falls within both of the recognized exceptions to the exhaustion requirement:  the administrative proceeding is "inadequate to prevent irreparable injury" (*First Jersey*, 605 F.2d at 696) because the agency is powerless to provide the relief sought, *see infra* pp. 7-8, and "there is a clear and unambiguous . . . constitutional violation" (*First Jersey*, 605 F.2d at 696), as Plaintiffs will demonstrate when this case is briefed on the merits.

*Stevedoring Co.*, 78 F.3d 868 (3d Cir. 1996)); *see also Comm. for GI Rights v. Callaway*, 518 F.2d 466, 474 (D.C. Cir. 1975) (exhaustion not required when it would "merely delay a decision by the federal courts").

Indeed, even where administrative review could moot out a separation of powers claim (because a plaintiff challenges only one specific agency action that can be resolved on non-constitutional grounds) and thus "avoid[] possibly needless decision of constitutional questions," such structural claims still need not be subjected to administrative review because "granting relief to these [plaintiffs] would not preclude the same issue arising with respect to other acts" by the allegedly unconstitutional actor against other potential plaintiffs. *Andrade*, 729 F.2d at 1492-93. *A fortiori*, the structural challenge here need not be submitted to agency review since the agency cannot possibly resolve the controversy because there are *no* non-constitutional grounds for doing so.

*Third*, reliance on the administrative-review process here would also be futile because the PCAOB and the SEC are "powerless" to provide Plaintiffs with the declaratory and injunctive relief they seek. *Cont'l Air Lines, Inc., v. Dep't of Transp.*, 843 F.2d 1444, 1456 (D.C. Cir. 1988). Specifically, administrative agencies "lack[] institutional competence to resolve the . . . constitutionality of a statute." *McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992); *see also Mathews v. Diaz*, 426 U.S. 67, 76 (1976) (holding that "the constitutionality of the statute" is a question "beyond the [agency's] competence"); Pls.' Opp. at 29 (citing cases). Indeed, as the D.C. Circuit has stated, it is a "well known principle that regulatory agencies are not free to declare an act of Congress unconstitutional." *Meredith Corp. v. FCC*, 809 F.2d 863, 872 (D.C. Cir. 1987).

To be sure, the rule forbidding agency constitutional adjudication is "not mandatory" in every case, such as where, as in *Thunder Basin*, the plaintiff mounted a Due Process challenge to the agency adjudication. *Thunder Basin*, 510 U.S. at 215. After all, routine administrative law challenges to "arbitrary and capricious" or "biased" agency action can be framed as Due Process challenges. *See First Jersey*, 605 F.2d at 697-98. *Andrade*, however, squarely held that *separation of powers* challenges "could not have been brought in the [administrative] grievance procedure" because the agency officials "have neither the qualifications nor the expertise to articulate and develop" such "important principles governing the relative influence of the Legislative and Executive branches over the carrying out of this country's laws." 729 F.2d at 1491. Indeed, this point was so self-evident that "neither party" even *argued* "that the grievance procedure is an adequate forum to resolve the constitutional claims." *Id.*

Here, so far as we can tell, the United States refrains from arguing the absurd proposition that the accountants and securities lawyers at the PCAOB and SEC have "expertise" concerning the Appointments Clause or similar separation of powers principles, or are authorized to adjudicate, in the administrative-review process, Congress's compliance with such standards. For some strange reason, however, the United States nonetheless maintains that the SEC should have the opportunity to interpret the statute in the first instance because the SEC could somehow rely on the doctrine of constitutional doubt to limit the applicability of the Act. *See* Statement of Interest at 20. But if the agency cannot assess Congress's compliance with separation of powers principles, it follows that it may not artificially limit the statute enacted by Congress to "avoid" constitutional problems it is inherently unable to assess. Indeed, as the D.C. Circuit has observed, "it would [be] irresponsible for [an agency] gratuitously to cast constitutional doubt on a congressional command." *Meredith Corp.*, 809 F.2d at 872.

In all events, there is no plausible interpretation the SEC could give to the statute that would obviate the need for judicial review of Plaintiffs' claims. As will be made more clear when the parties present their briefing on the merits, the principal argument in support of those claims is that the Act unconstitutionally grants the PCAOB executive or administrative power while depriving the President of the ability to both appoint and remove the PCAOB members who exercise that power. Obviously, the SEC could not interpret the statute, contrary to its unambiguous language, to give the President, rather than the SEC, the power to appoint and remove PCAOB members. Nor would the SEC be able to relieve the PCAOB of all of its authority, even assuming the language of the statute permitted such action in response to a well-founded constitutional claim, because the adjudicative process would not be the appropriate context for the exercise of this power. To the contrary, the Act makes clear that the SEC is authorized to relieve the PCAOB of its authority only "by *rule*." SOX § 107(d)(1), 15 U.S.C. § 7217(d)(1) (emphasis added). Simply put, agency review of this case would be a meaningless exercise.

For all of these reasons, this lawsuit is plainly "wholly collateral" to the Act's procedures for administrative adjudication. *Thunder Basin*, 510 U.S. at 212-13. Indeed, Plaintiffs' broad separation of powers challenge to the authority of the PCAOB to act is even further removed from (*i.e.*, collateral to) the procedures for administrative review than was the case in other decisions in which facial constitutional challenges were allowed to proceed in district court. In *National Mining Association*, for example, the plaintiffs were permitted to challenge rules that established the formula for compensation that would be mandated in an "order" subject to immediate appellate review. *See* 292 F.3d at 856. Even though the plaintiffs' district court claims were the *same* retroactivity challenges that could have been brought against those

"orders," the Court deemed these challenges sufficiently collateral to avoid the *Thunder Basin* rule, merely because it was "necessary to analyze carefully all of the regulations together as well the entire rulemaking process, which would not be feasible in individual adjudications." *Id*. at 858. Similarly, in *McNary*, the plaintiffs were permitted to challenge the legality of the very proceedings that the agency was using within the administrative-review mechanism. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 485-87 (1991). And in *General Electric*, too, the plaintiff's facial challenge related to the administrative-orders regime that the agency was using to adjudicate grievances with the plaintiff. *See* 360 F.3d at 190-91. If each of these facial constitutional challenges was collateral to the respective statute's administrative proceedings, then, *a fortiori*, Plaintiffs' challenge to the PCAOB's very authority must be collateral to the administrative-review mechanism of the Sarbanes-Oxley Act.

In the face of all this, the United States argues that it "blink[s] reality" to contend that Plaintiffs' lawsuit is not a challenge to an "anticipated disciplinary sanction." Statement of Interest at 22. To the contrary, the entire point is that this lawsuit is *not* such a challenge. Nobody contends that a disciplinary sanction is imminent or even anticipated; indeed, Beckstead and Watts fully anticipates that the Board will conclude that sanctions are unwarranted.

To be sure, Plaintiffs do refer in their Complaint to the Board's ongoing investigation of Beckstead and Watts, but they do so only in the course of providing (for standing purposes) several specific examples of the ways in which it has suffered concrete financial injury as a result of Congress's empowerment of the Board. (Other examples include the costs that Beckstead and Watts has incurred and continues to incur in complying with the Board's auditing standards and the burdens placed on it by the Board's inspection and inspection report. *See* Compl. ¶¶ 72-80.) Other than being a part of Beckstead's injury in fact, the PCAOB's investigation is irrelevant to

this lawsuit — indeed, the one thing this Court will *never* hear during the course of this litigation is *any* discussion about the substance of the PCAOB's auditing standards or whether Beckstead's auditing practices comply with those standards. Accordingly, if the Board's investigation were to end tomorrow, this lawsuit would continue in precisely the same manner.[3]

For the same reasons, there is no significance to the fact that Congress failed to enact an amendment allowing "accounting firms subjected to discipline by the PCAOB an alternate option of bypassing SEC review and obtaining immediate judicial review in federal district court" (even assuming failures to enact can ever be significant). Statement of Interest at 17. The defeat of this amendment shows at most that Congress wanted the SEC to review challenges to PCAOB disciplinary actions prior to judicial review. Again, however, Plaintiffs' lawsuit is not and cannot be a challenge to any PCAOB disciplinary action, since there has been no such action and the issues presented here are wholly collateral to any such challenge.

In sum, Congress could not have intended for administrative adjudication to preclude district-court jurisdiction over Plaintiffs' claims because those claims (i) do not arise out of a

---

[3] The United States' grotesque mischaracterization of Plaintiffs' lawsuit as a challenge to an "anticipated" sanction also provides the false foundation for its mistaken contentions that the lawsuit is not ripe (Statement of Interest at 28 n.15) and that Beckstead lacks standing to sue (*id.* at 9 n.2). Because the lawsuit challenges ongoing burdens imposed by agency regulation, it is ripe even in the absence of any enforcement action. *Abbott Labs. v. Gardner*, 387 U.S. 136, 151-53 (1967); *see also* Pls.' Opp. at 31-32. Those ongoing burdens, moreover, are sufficient to give Beckstead standing to sue, for "litigants have standing to challenge the authority of an agency on separation-of-powers grounds . . . where they are directly subject to the authority of the agency." *Comm. for Monetary Reform v. Bd. of Governors of Fed. Reserve Sys.*, 766 F.2d 538, 543 (D.C. Cir. 1985); *see also Cellco P'ship v. FCC*, 357 F.3d 88, 100 (D.C. Cir. 2004) (holding that "entity continuously burdened by the costs of complying . . . with what it contends are [illegal] regulations" has standing to sue); Pls.' Opp. at 37-38. The United States' effort to challenge the factual predicates of Beckstead's claimed injuries (Statement of Interest at 9 n.2) is also misplaced. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted; alteration in original).

controversy over discretionary agency action amenable to review in a pending or imminent

agency adjudicative procedure, (ii) are incapable of being resolved or mooted by that

adjudicative procedure, and (iii) seek relief that the agency is not empowered to give.  As claims

"wholly collateral" to any administrative adjudication, those claims belong in this Court.

      **2.**     **Notice-and-Comment Rulemaking Is Not the Appropriate Mechanism for Adjudication of Plaintiffs' Claims**

Apparently recognizing the inadequacy of its *Thunder Basin* argument, the United States

joins Defendants in making the novel argument that Congress intended facial constitutional

challenges to the PCAOB's enabling act to be brought pursuant to the mechanism for notice-and-

comment rulemaking under the Securities Exchange Act.  *See* Statement of Interest at 23.  This is

a remarkable contention.  No case anywhere has ever suggested that notice-and-comment

rulemaking is the exclusive (or even appropriate) forum for challenging the constitutionality of a

rule, particularly where the challenge has absolutely nothing to do with the substance of the rule

itself, but goes instead to the agency's constitutional authority to promulgate it.

Rather, district-court jurisdiction is potentially precluded by appellate review of agency

rulemaking only where it might affect the court of appeals' future jurisdiction.  *See Telecomm.*

*Research & Action Ctr. v. FCC*, 750 F.2d 70, 78-79 (D.C. Cir. 1984) ("*TRAC*").  *TRAC*,

however, has nothing to do with favoring *agency* review over judicial review.  Rather, *TRAC*

applies only *after* "the agency has exercised or . . . failed to exercise [its] authority," *Time*

*Warner*, 93 F.3d at 965, and concerns the choice between judicial review in the court of appeals

and judicial review in the district court.  *See Indep. Broker-Dealers' Trade Ass'n*, 442 F.2d at

142 (explaining that the review provisions of § 25(a) of the Securities Exchange "relate not to

whether there is judicial review, but whether Congress intended to concentrate it" in the court of

appeals, and holding that "[w]e discern no such intent").  Nobody contends that *TRAC* applies

here.  Even if it did, moreover, *Time Warner* makes clear that the general principle permitting

constitutional challenges to an enabling act to be brought in district court applies as well to the

*TRAC* situation.  *See Time Warner,* 93 F.3d at 965 (holding that district court had jurisdiction

because "[q]uestions concerning the constitutionality of an agency's enabling statute . . . do not

require any particular agency expertise").  Indeed, as previously noted, that principle is so

fundamental that it cuts across all jurisdictional doctrines and unequivocally permits this Court to

exercise jurisdiction over this lawsuit.  *See* Pls.' Opp. at 16-17.

      Nor would applying *Thunder Basin* to the rulemaking context make any sense.  In the

first place, the only relief that a court of appeals could grant on review from notice-and-comment

rulemaking is the overruling of the specific rule being challenged; it could not enjoin all agency

action (the relief sought here) or otherwise deal with potentially complicated questions of

remedy.  Moreover, unlike an as-applied enforcement action, which generally results in a

controversy that can be resolved at the time of the enforcement action, rules of the sort at issue

here have continuing applicability and impose ongoing demands on a regulated entity.  Requiring

the exclusive use of rulemaking procedures would therefore mean that Plaintiffs and other parties

who are presently being injured by the PCAOB's rules would have to wait for the fortuity of the

agency's initiation of a new notice-and-comment rulemaking procedure before they could seek

and obtain relief for present injury.  This cannot be the result intended by Congress.  *See Sturm,*

*Ruger*, 300 F.3d at 874 (explaining that district-court jurisdiction is appropriate where plaintiffs

have "no other means, within *their* control, of obtaining judicial review" (emphasis added,

internal quotation marks omitted)).  Indeed, the result would be particularly harsh because the

agency's rules burden not only those entities who could have objected during the notice-and-

comment period, but also those entities who are first injured by, or first become subject to, the

rules only at some time *subsequent* to their enactment.  Under the regime proposed by Defendants and the United States, the only way for such a regulated entity to challenge the present effects of an already enacted rule would be to violate the rule and assert its claims as a defense to an enforcement action — a course of action that the Supreme Court has repeatedly and unequivocally rejected.  *See Abbott Labs.*, 387 U.S. at 151-53; *Ex parte Young*, 209 U.S. 123, 148 (1908); Pls.' Opp. at 31-32.

In short, there is nothing in the appellate review provision which remotely "demonstrates that Congress intended to preclude challenges such as the present one." *Thunder Basin*, 510 U.S. at 208.  The obvious purpose of that appellate review provision is to provide a vehicle for challenging a rule where there is an alleged statutory or constitutional defect in the *rule*.  Here, the government hypothesizes that Plaintiffs could have randomly selected a rule which Plaintiffs agree furthers the public interest (if it had been passed by a constitutionally-compliant entity), solely as a device to raise separation of powers challenges having nothing to do with the propriety of the rule being "challenged" (or any particular rule).  The fact that Plaintiffs' challenge might have been brought through this entirely circuitous route provides absolutely no basis for inferring that Congress intended that this indirect vehicle would *displace* the direct and traditional route of a district court challenge that *does* focus on the actual controversy between the parties.

- 14 -

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

Dated:  June 27, 2006                    Respectfully submitted,


 /s/     Michael A. Carvin
Michael A. Carvin (D.C. Bar No. 366784)
Noel J. Francisco (D.C. Bar No. 464752)
Christian G. Vergonis (D.C. Bar No. 483293)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
(202) 879-3939
(202) 626-1700 (fax)

Kenneth W. Starr (D.C. Bar No. 273425)
24569 Via De Casa
Malibu, CA 90265
(310) 506-4621

Viet D. Dinh (D.C. Bar No. 456608)
Wendy Keefer
BANCROFT ASSOCIATES PLLC
601 13th Street, N.W.
Suite No. 930 South
Washington, D.C. 20005
(202) 234-0090
(202) 234-2806 (fax)

Sam Kazman (D.C. Bar No. 946376)
Hans Bader (D.C. Bar No. 466545)
COMPETITIVE ENTERPRISE INSTITUTE
1001 Connecticut Avenue, N.W.
Suite 1250
Washington, D.C. 20036
(202) 331-1010 (fax)

*Attorneys for Plaintiffs Free Enterprise Fund
and Beckstead and Watts, LLP*