IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREE ENTERPRISE FUND, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. A. No. 06-217 (JR) |
| | ) |
| THE PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD, et al., | ) |
| | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Intervenor. | ) |

**REPLY MEMORANDUM OF INTERVENOR UNITED STATES IN SUPPORT OF
UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT**

Of Counsel:

BRIAN G. CARTWRIGHT
General Counsel

ANDREW N. VOLLMER
Deputy General Counsel

JACOB H. STILLMAN
Solicitor

JOHN W. AVERY
Senior Litigation Counsel

MICHAEL L. POST
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SUSAN K. RUDY
Assistant Director

ROBERT J. KATERBERG
 (D.C. Bar No. 466325)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6112
Washington, D.C. 20001
Telephone:    (202) 616-8298
Facsimile:    (202) 616-8460

Attorneys for the United States

## <u>TABLE OF CONTENTS</u>

I.   THE MEMBERS OF THE PCAOB ARE INFERIOR OFFICERS
     UNDER THE APPOINTMENTS CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  THE SEC IS A DEPARTMENT FOR APPOINTMENTS CLAUSE
     PURPOSES,  AND ITS COMMISSIONERS ARE ITS HEAD . . . . . . . . . . . . . . . . 6

III. THE STATUTE DOES NOT VIOLATE THE SEPARATION OF
     POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**CASES**                                                                                                     Page(s)

Buckley v. Valeo,
    424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Collins v. United States,
    14 Ct. Cl. 568 (1878) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Edmond v. United States,
    520 U.S. 651 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

First Western Gov't Sec., Inc. v. Commissioner,
    94 T.C. 549 (1990), aff'd, 930 F.2d 975 (2d Cir.), cert. denied, 502 U.S. 957
    (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Freytag v.  Commissioner,
    501 U.S. 868 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Morrison v. Olson,
    487 U.S. 654 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13, 15

Silver v. United States Postal Service,
    951 F.2d 1033 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

United States v. Bonilla-Montenegro,
    331 F.3d 1047 (9th Cir. 2003), cert. denied, 540 U.S. 1210 (2004) . . . . . . . . . . . . . . 15

United States v. Fisk,
    70 U.S. (3 Wall) 445 (1865) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Gantt,
    194 F.3d 987 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Germaine,
    99 U.S. 508 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Weiss v. United States,
    510 U.S. 163 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATUTES

15 U.S.C. § 78d-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78j . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78m . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78s . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

15 U.S.C. § 78u-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78w . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 7202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 17

15 U.S.C. § 7211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 7215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10

15 U.S.C. § 7217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

15 U.S.C. § 7219 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Act of Sept. 24, 1789, 1 Stat. 73 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## OTHER MATERIALS

Applicability of Executive Order 12674 to Personnel of the Regional Fishery Management
        Councils, 17 Op. Off. Legal Counsel 150 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

The structure of the Public Company Accounting Oversight Board ("PCAOB" or "Board") is constitutional because the PCAOB's members are Inferior Officers, who may be appointed and removed by the Securities and Exchange Commission ("SEC" or "Commission"), and because the statute contains numerous checks on the PCAOB that prevent it from taking nearly any final legal action without SEC approval. Plaintiffs' Combined Reply Memorandum in Support of their Motion for Summary Judgment and Memorandum in Opposition to Defendants' and the United States' Cross-Motions for Summary Judgment ("Pl. Reply/Opp.") raises no substantial new issues, but instead persists in advancing implausible and conjectural interpretations of the statute couched in inflated rhetoric. The Court should dismiss this case on the ground that plaintiffs have not complied with the exclusive statutory review mechanism in the statute. <u>See</u> Statement of Interest of the United States (dkt. no. 19). But if the Court reaches the merits, intervenor United States' cross-motion for summary judgment should be granted and plaintiffs' motion should be denied.

## I.    THE MEMBERS OF THE PCAOB ARE INFERIOR OFFICERS UNDER THE APPOINTMENTS CLAUSE

In our opening brief, we explained that the members of the PCAOB are Inferior Officers because their "work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." <u>Edmond v. United States</u>, 520 U.S. 651, 663 (1997); <u>see</u> Memorandum of Proposed Intervenor United States in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of United States' Cross-Motion for Summary Judgment (dkt. no. 41) ("U.S. Mem.") at 11-17. Indeed, the members of the PCAOB "have no power to render a final decision on behalf of the United States" unless permitted by the SEC. <u>Edmond</u>, 520 U.S. at 665. This is true because the SEC has control over virtually

everything the PCAOB does, including the PCAOB's issuance of rules, its disciplinary sanctions, its budget, its conduct of litigation, its inspections, and its investigations. Indeed, the SEC has overarching authority to "relieve the Board of any responsibility to enforce compliance with any provision of this Act, the securities laws, the rules of the Board, or professional standards," 15 U.S.C. § 7217(d)(1), and can "censure or impose limitations upon" its "activities, functions, and operations," id. § 7217(d)(2).

In attempting to demonstrate that the PCAOB members are nevertheless Principal Officers, plaintiffs elevate some factors, ignore others, and seek to introduce altogether new tests. In particular, plaintiffs appear to argue that the Principal Officer/Inferior Officer distinction is primarily a question of at-will removability. See Pl. Reply/Opp. at 31-33; see also id. at 29 (suggesting that Principal Officer status turns on "whether one's employment is subject to the unfettered discretion of a supervisor"). But, as we previously emphasized, removal is a factor, not a litmus test. See U.S. Mem. at 16-17. Edmond v. United States, 520 U.S. 651 (1997), demonstrates as much: plaintiffs correctly note that the Court in Edmond relied on the Judge Advocate General's power to remove the Coast Guard judges at will (albeit only for purposes other than "influenc[ing] . . . the outcome of individual proceedings," Edmond, 520 U.S. at 664) as a factor in concluding that the Coast Guard judges were Inferior Officers, see Pl. Reply/Opp. at 31, but neglect to acknowledge that removal was just one of a number of features of supervision, exercised by both the Judge Advocate General and the Court of Appeals for the Armed Forces, that the Edmond Court relied upon. See Edmond, 520 U.S. at 664-65. If the Supreme Court had analyzed the issue the way plaintiffs now propose, it could have stopped at removal and would have had no reason to look beyond to the other forms of supervision, such as

the substantive appellate review exercised by the Court of Appeals for the Armed Forces.[1]

Here, of course, the members of the PCAOB <u>are</u> removable by the presidentially appointed Commissioners of the SEC, so this factor points <u>toward</u>, not against, their being Inferior Officers. Plaintiffs' argument that the SEC's removal authority is not sufficiently robust rests on the same conjectural and self-serving interpretations that characterized their opening memorandum. <u>See</u> U.S. Mem. at 31-33. Contrary to plaintiffs' <u>ipse dixit</u> that "the removal provisions here completely prevent the SEC from removing those Board members who pursue policies and practices that the SEC considers anathema," Pls' Mem. at 32, if a PCAOB member persists in disfavored regulatory activities in defiance of the SEC's direction, he or she would have "willfully abused the authority of that member," 15 U.S.C. § 7217(d)(3)(B), and would be removable on that ground alone, if not others. <u>See also</u> <u>infra</u> at 11-12 (further discussing removal in separation-of-powers context). The SEC would also have ample ability, among other things, to relieve the Board of any enforcement responsibility, 15 U.S.C. § 7217(d)(1), to exercise its authority to abrogate, delete, or add to the relevant rules of the PCAOB, 15 U.S.C. § 7217(b)(5), or to use its approval authority over the PCAOB's budget, 15 U.S.C. § 7219(b), to rein in a PCAOB that was pursuing a regulatory program that the SEC considered "anathema."[2]

_____

[1] While plaintiffs repeatedly rely on language from Justice Souter's concurring opinion in <u>Edmond</u>, <u>see</u> Pl. Reply/Opp. at 31, 34, 35, 36, they overlook his concluding statement that where "it is 'hard to say with any certainty' whether [officers] should be considered principal or inferior officers, deference to the political branches' judgment is appropriate," <u>Edmond</u>, 520 U.S. at 668-69 (Souter, J., concurring in part and concurring in the judgment) (quoting <u>Weiss v. United States</u>, 510 U.S. 163, 192-94 (1994) (Souter, J., concurring)). Here, of course, the political branches' judgment plainly is that the members of the PCAOB are Inferior Officers.

[2] Plaintiffs cannot draw any support from the Office of Legal Counsel's opinion regarding regional fishery management councils. <u>See</u> Pl. Reply/Opp. at 32 & n.16 (citing <u>Applicability of Executive Order 12674 to Personnel of the Regional Fishery Management Councils</u>, 17 Op. Off.

Plaintiffs also claim that the PCAOB members are Inferior Officers because they exercise "broad authority" or "decide important policy issues." Pls' Mem. at 29, 30. But the Supreme Court has stressed that even Inferior Officers "exercis[e] significant authority pursuant to the laws of the United States" because that criterion "marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather, as we said in Buckley, the line between officer and nonofficer." Edmond, 520 U.S. at 662 (citing Buckley v. Valeo, 424 U.S. 1, 126 (1976)); see also United States v. Gantt, 194 F.3d 987, 999 (9th Cir. 1999) ("The Constitution does not use the term 'inferior' 'in the sense of petty or unimportant' but in the sense of a subordinate to a principal officer." (quoting Collins v. United States, 14 Ct. Cl. 568, 574 (1878))). In any event, plaintiffs' characterizations elide the crucial role of the SEC, whose concurrence is necessary in virtually every situation in which the PCAOB would be in the position of "decid[ing] important policy issues" or exercising "broad authority." Likewise,

---

Legal Counsel 150, 155 (1993)). That opinion did not address the dividing line between Principal and Inferior Officers, nor any issue under the Appointments Clause, for that matter; rather, it analyzed whether the regional fishery management council members and staff were covered by an executive order prescribing ethics standards for government employees. Moreover, the restriction on removal authority discussed there went far beyond a "for cause" standard. It conditioned the Secretary of Commerce's power to remove a member of a fishery council on the prior recommendation of two-thirds of the fishery council itself. Nothing about the SEC's removal authority over PCAOB members is conditioned on the prior recommendation of the PCAOB; rather, the Sarbanes-Oxley Act falls in the category that the opinion distinguished as "more traditional legislation in which some form of 'cause' is all that is required before removal can occur." 17 Op. Off. Legal Counsel at 157.

Nor does First Western Gov't Sec., Inc. v. Commissioner, 94 T.C. 549, 558 (1990), aff'd, 930 F.2d 975 (2d Cir.), cert. denied, 502 U.S. 957 (1991), involving special trial judges of the Tax Court, support the proposition that at-will removability is a prerequisite for Inferior Officer status. While the First Western court did note that the special trial judges were removable at will, it concluded that they were Inferior Officers after comparing them to United States Magistrate Judges, who, the court noted, are Inferior Officers even though they "can only be removed for cause," id. at 558-59.

plaintiffs' description of the PCAOB as having "extraordinary autonomy from the normal budgetary and administrative process" (Pl. Reply/Opp. at 30) not only is refuted by the plain language of the statute, see 15 U.S.C. § 7219(b) ("The budget of the Board shall be subject to approval by the Commission."); id. § 7217(a) ("The Commission shall have oversight and enforcement authority over the Board"), but bears no relation to any criterion any court has heretofore employed in analyzing Principal Officer/Inferior Officer status.[3]

As we previously demonstrated, the comprehensive supervision that the SEC exercises over the PCAOB's regulatory activities makes the PCAOB's members Inferior Officers. See U.S. Mem. at 12-16; Edmond, 520 U.S. at 666 (holding that the Coast Guard judges were Inferior Officers "by reason of the supervision over their work"). Plaintiffs decry that the SEC's review of PCAOB rules and disciplinary sanctions is "appellate-like." Pl. Reply/Opp. at 33. But, as we previously explained, there is no reason why appellate review cannot constitute effective control, particularly when coupled with myriad other forms of supervision. See U.S. Mem. at 26-28. In Edmond itself, the only substantive review of the Coast Guard judges' daily output (i.e., their decisions in particular cases) consisted of the appellate review by the Court of Appeals for Armed Forces. Here, the PCAOB's rules and appealed disciplinary sanctions generally do not even go into effect, and in the case of disciplinary sanctions do not even become public, until after SEC approval. 15 U.S.C. § 7215(d)(1)(C), (e); 15 U.S.C. § 7217(b)(2).

In any event, the SEC's authority over PCAOB rules and disciplinary sanctions is, of course, not limited to review in its appellate capacity. Rather, the SEC can at any time abrogate,

---

[3] Of course, to the extent that plaintiffs mean to seriously argue that Principal Officer/Inferior Officer status is affected by an officer's salary, Pl. Reply/Opp. at 36, nothing in the relevant case law even remotely suggests such an approach.

delete, or add to the rules of the PCAOB. 15 U.S.C. § 7217(b)(5). Likewise, the very rules of procedure under which the PCAOB conducts its disciplinary sanction process are subject to SEC approval, see 15 U.S.C. §§ 7215(a), 7217(b); the PCAOB is generally required to notify the SEC at the outset of any investigation involving a potential violation of the securities laws, 15 U.S.C. § 7215(b)(4)(A); and the SEC could adopt rules of its own that would enable it to take immediate action to require the PCAOB to stop or start an inspection, investigation, or disciplinary proceeding, 15 U.S.C. §§ 7202(a), 7217(a). In these and other ways, the SEC exercises far more and closer supervision over the PCAOB than the Judge Advocate General and Court of Appeals for the Armed Forces exercised over the Coast Guard judges in Edmond. For all of these reasons, the SEC's oversight over the PCAOB is comprehensive, and the members of the PCAOB are Inferior Officers.[4]

## II.    THE SEC IS A DEPARTMENT FOR APPOINTMENTS CLAUSE PURPOSES, AND ITS COMMISSIONERS ARE ITS HEAD

In our opening brief, we explained that the SEC should be considered a Department capable of appointing Inferior Officers, consistent with the longstanding interpretation of Congress and the Executive and the considered view of the four concurring Justices in Freytag v. Commissioner, 501 U.S. 868 (1991).[5] See U.S. Mem. at 17-20. In response, plaintiffs cite no

---

[4] We respond infra, in the discussion of plaintiffs' separation-of-powers claim, to plaintiffs' renewed argument that the standard by which the SEC reviews PCAOB action is excessively deferential. See infra at 13-16.

[5] The dismissive treatment that plaintiffs give the well-reasoned analysis in Justice Scalia's concurring opinion for himself and three other Justices in Freytag is ironic given plaintiffs' extensive reliance on much less definitive statements of a single concurring Justice writing only for himself in Edmond. See see Pl. Reply/Opp. at 31, 34, 35, 36 (citing Edmond, 520 U.S. at 666-69 (Souter, J., concurring in part and concurring in the judgment)).

new authority but instead simply continue to rely on the majority opinion in <u>Freytag</u>, which expressly declined to take a position on "any question involving an appointment of an inferior officer by the head of one of the principal agencies, such as . . . the Securities and Exchange Commission," <u>Freytag</u>, 501 U.S. at 887 n.4.  <u>See</u> Pl. Reply/Opp. at 36-39.  Plaintiffs argue that "if <u>Freytag</u>'s holding that the term 'departments' includes only 'executive divisions like the Cabinet-level departments' means anything, it means that politically unaccountable independent agencies like the SEC are not departments." Pl. Reply/Opp. at 38 (quoting <u>Freytag</u>, 501 U.S. at 885-86).  On the contrary, the cited language is more reasonably read simply to explain why the Tax Court, the entity actually at issue in <u>Freytag</u>, could not be considered a Department.  That the Tax Court could not accurately be described as an "executive division like the Cabinet-level departments" says little about whether the SEC might be deemed to fall within that category.

Plaintiffs also persist in their assertion that the Appointments Clause forbids a collective body, such as the SEC, from being a "Head of a Department" vested with appointing authority. <u>See</u> Pl. Reply/Opp. at 39-41.  They still fail, however, to present any authority for that proposition, other than the "historical record" that they say establishes that "[t]he notion of a department run by committee would have been utterly foreign to our Founding Fathers."  Pl. Reply/Opp. at 39-40.  Of course, that a notion may have been "utterly foreign to our Founding Fathers" does not necessarily make it unconstitutional; the question, rather, is whether the Framers incorporated into the Constitution any specific command or prohibition on the subject. There is no evidence indicating -- and certainly no precedent holding -- that the word "Heads" as used in the Appointments Clause was intended to carry an implicit singularity requirement. Thus, the sole judicial opinion addressing this issue, <u>Silver v. United States Postal Service</u>, 951

F.2d 1033, 1038-39 (9th Cir. 1991), as well as Department of Justice opinions spanning sixty

years, all reject the position plaintiffs advocate.  Plaintiffs' criticism of <u>Silver</u> and the Department

of Justice opinions as not having sufficiently analyzed the issue is little more than a diversion

from plaintiffs' failure to cite <u>any</u> case law or considered opinions containing <u>any</u> analysis of the

issue in their favor.[6]

      In sum, the word "Department" as used in the Appointments Clause "has reference to the

subdivision of the power of the Executive into departments, for the more convenient exercise of

that power."  <u>United States v. Germaine</u>, 99 U.S. 508, 510 (1879).  In the modern era, some

executive power is exercised by agencies that are not Cabinet departments and that have a

collective body as their Head.  If such agencies are to exist, it would be anomalous to deny them

the appointing power that they need to carry out their functions.  <u>Cf.</u> <u>Freytag</u>, 501 U.S. at 921

(Scalia, J., concurring in part and concurring in the judgment) (suggesting that "adjusting the

remainder of the Constitution to compensate for <u>Humphrey's Executor</u> is a fruitless endeavor").

Thus, the Court should follow the lead of the concurring Justices in <u>Freytag</u> who considered this

---

     [6] Similarly, plaintiffs' assertion that the Appointments Clause's conferral of appointing
authority on "Courts of Law," which can be collective bodies, "demonstrates that the Framers
understood the difference between vesting the appointment power in collective body and vesting
it in the <u>head</u> of a collective body" (Pl. Reply/Opp. at 41 (emphasis in original)) does not
logically follow, because "Courts of Law," like "Heads of Departments," could consist either of
single individuals or of collective bodies.  <u>Compare</u> Act of Sept. 24, 1789, § 1, 1 Stat. 73, 73
(Supreme Court of six Justices), <u>with</u> <u>id.</u> § 3, 1 Stat. at 73 (District Courts "to consist of one
judge" each).  As we pointed out in our opening brief, the "Courts of Law" provision does,
however, tend to show that the Framers did not generally consider appointments by collective
bodies the pernicious vice that plaintiffs portray.

specific issue, as well as the uniform interpretation of the Executive Branch and the Congress, and hold that the SEC is a Department.[7]

## III. THE STATUTE DOES NOT VIOLATE THE SEPARATION OF POWERS

The PCAOB is simply not the unchecked entity that plaintiffs portray, and the Sarbanes-Oxley Act neither undermines the powers of the Executive Branch nor prevents it from accomplishing its constitutionally assigned functions. As discussed in our opening brief and above, in addition to empowering the SEC to remove members of the PCAOB for cause, the statute includes pervasive mechanisms for SEC control over virtually everything that the PCAOB does. The PCAOB's rules and disciplinary sanctions do not become effective until approved by

---

[7] For the first time in their latest brief, plaintiffs argue that the full Commission is not the Head of the Department because the Chairman is the Head. See Pl. Reply/Opp. at 41-42. Assuming arguendo (a) that plaintiffs can be heard to make this argument despite having not raised it in their opening brief and having conceded earlier in their reply/opposition brief that the SEC is "run by a multi-headed committee" (Pl. Reply/Opp. at 4), and (b) that plaintiffs have standing to raise this claim, but see Defendants' Memo. of Pts. & Auth. in Support of Mot. to Dismiss (dkt. no. 17), at 42-43 n.28, their new argument is without merit. Each and every one of the Commission's substantive powers, including adopting rules, bringing enforcement actions, and adjudicating administrative actions, is exercised by the Commission as a whole. See, e.g., 15 U.S.C. §§ 7217(a) ("The Commission shall have oversight and enforcement authority over the Board . . . ."), 7217(b)(2) ("No rule of the Board shall become effective without prior approval of the Commission . . . ."), 7217(d)(1) (The Commission . . . may relieve the Board of any responsibility to enforce compliance . . . .") (emphasis added); see also, e.g., 15 U.S.C. §§ 78f(b), 78j(b), 78m(b)(1), 78u-2, 78w (various powers under 1934 Act, all exercised by Commission collectively). Indeed, in all of the Securities Exchange Act of 1934 (the SEC's organic statute), there is only one mention of the Chairman. See 15 U.S.C. § 78d-2 (transferring to Chairman "the functions of the Commission with respect to assignment of Commission personnel, including Commissioners, to perform such functions as may have been delegated by the Commission to the Commissioner personnel, including Commissioners . . . ."). That Reorganization Plan No. 10 of 1950 provides for certain internal administrative functions to be vested in the Chairman individually, in the same way that, for example, certain administrative functions might be handled by the chief judge of a court, does not change the fact that the executive power of the SEC as a regulatory agency is exercised by the Commission, nor does it render the other Commissioners subordinates of the Chairman.

the SEC, and may be changed by the SEC.  15 U.S.C. §§ 7215(e), 7217(b)(2), (b)(4), (b)(5), (c)(2), (c)(3).  The SEC's review of the PCAOB's disciplinary sanctions is de novo.  See U.S. Mem. at 13-14.  The SEC can abrogate, delete, or add to the PCAOB's rules at any time.  15 U.S.C. § 7217(b)(5).  The PCAOB cannot litigate without the SEC's approval and the SEC must approve its budget.  15 U.S.C. §§ 7211(f)(1), 7219(b).  The SEC "by rule, consistent with the public interest, the protection of investors, and the other purposes of this Act and the securities laws, may relieve the Board of any responsibility to enforce compliance with any provision of this Act, the securities laws, the rules of the Board, or professional standards."  15 U.S.C. § 7217(d)(1).  Either through these provisions, or by promulgating its own rules under its general authority under the Sarbanes-Oxley Act, 15 U.S.C. § 7202(a); see also 15 U.S.C. § 7217(a) ("The Commission shall have oversight and enforcement authority over the Board, as provided in this Act."), the SEC could, if deemed appropriate, direct the PCAOB to notify it about preliminary matters such as the institution of particular inspections, investigations, or disciplinary proceedings, and require the SEC's advance approval in order for the PCAOB to initiate or cease such an undertaking.

Contrary to plaintiffs' arguments (Pl. Reply/Opp. at 16-18), the SEC's power to control the PCAOB by removing its members cannot be analyzed in a vacuum without taking into account all of the other tools the SEC has at its disposal to accomplish the same ultimate end: control over the activities of the PCAOB.  Removal is not an end unto itself; rather, "[t]he analysis contained in [the Supreme Court's] removal cases is designed . . . to ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article

II." <u>Morrison v. Olson</u>, 487 U.S. 654, 689-90 (1988). As we have discussed, <u>see</u> U.S. Mem. at 8-9, 25-26; <u>supra</u> at 2, 3-4, 6, the SEC not only has review authority over every final legal action the PCAOB takes, but also has the ability to restrict or even eliminate the PCAOB's enforcement authority altogether and to enforce the provisions of the Sarbanes-Oxley Act directly. These two powers, together with the SEC's review authority, give it ample authority to supervise the enforcement of the Act. The fact that the Court in <u>Morrison</u> analyzed the various separation-of-powers issues presented by that statute in a particular sequence neither creates a one-size-fits-all template for separation-of-powers analysis in all future cases, nor compels this Court to compartmentalize its analysis by temporarily pretending that these pervasive mechanisms for SEC control by means other than removal do not exist.

In any event, even if removal is examined in isolation, the statute is constitutional, because, as discussed herein, it allows removal of PCAOB members for good cause, including refusal to accept the SEC's supervision. Plaintiffs assert that the SEC's power to remove members of the PCAOB "is far more limited" than the separation of powers permits. <u>See</u> Pl. Reply/Opp. at 12. This assertion, however, depends entirely on their own particular interpretation of the removal provisions -- an interpretation selectively adopted by plaintiffs for the sole purpose of lending credence to their separation-of-powers claim. Indeed, plaintiffs go so far as to articulate wholly new formulations of the standard custom-made for their argument, contending, for example, that only "those [PCAOB members] who most egregiously and deliberately flout their duties or the securities statutes" are removable. <u>See</u> Pl. Reply/Opp. at 13.

Needless to say, the statute does not contain any "most egregiously and deliberately flout" test. As explained at length in our opening brief, the removal provisions that Congress actually

enacted are capable of constitutional application because they may readily be interpreted to permit removal of PCAOB members for, among other things, refusing to accept the statutorily prescribed supervision or comply with the direction of the SEC.  See U.S. Mem. at 30-33.  In response, plaintiffs call the removal provision "niggardly," engage in farfetched comparisons to discipline and impeachment of Article III judges (Pl. Reply/Opp. at 12, 13), and recycle the line from their opening brief about the supposed impossibility of removing a PCAOB member "who launches deep and onerous investigations into what he erroneously perceives as violations of law."  Pl. Reply/Opp. at 12.  But since, as shown in our opening brief, see U.S. Mem. at 31-33, an erroneous perception of law does not negate willfulness, the hypothetical that plaintiffs describe comes squarely within at least one of the specified grounds in § 7217(d)(3) -- enabling removal of a member who "has willfully abused the authority of that member" -- and such a member could be readily removed.  At the very least, the SEC, guided by the canon of constitutional avoidance, could reasonably so interpret the statute it is charged with administering.  That is particularly so if the "deep and onerous investigations" are carried out in contravention of the direction of the SEC or the SEC's own enforcement program, or in plaintiffs' own words, "wholly at odds with the SEC's firm view of the law and proper enforcement" (Pl. Reply/Opp. at 14).[8]

_____

    [8] Plaintiffs are mistaken to say that the United States "concede[s] that the SEC cannot remove a member who pursues an interpretation of the law, or otherwise exercises his enforcement discretion, in a manner about which reasonable people could disagree."  Pl. Reply/Opp. at 13.  The United States has not conceded and does not concede that point.  Whatever "reasonable people" may disagree about, if the SEC disapproved a PCAOB member's interpretation of the law, or exercise of enforcement discretion, and the PCAOB member nevertheless persisted in that interpretation or exercise in contravention of the SEC's direction, that PCAOB member might well be removable under one or more of the specified grounds in §
                                                                                            (continued...)

Nor does the statute violate the separation of powers by placing removal authority in the SEC. <u>See</u>, <u>e.g.</u>, Pl. Reply/Opp. at 2, 16, 19. As explained in our opening brief, because (a) the members of the PCAOB are Inferior Officers who may be appointed by the Head of a Department, and (b) the power to remove is incident to the power to appoint, they are naturally -- and constitutionally -- removable by the same Head of a Department who appoints them, the same as legion other Inferior Officers throughout government. <u>See</u> U.S. Mem. at 29-30. Plaintiffs cite no authority for the proposition that the separation of powers requires that Inferior Officers who are appointed by a Head of a Department be removable directly by the President. Thus, there is no substance behind plaintiffs' repeated rhetoric about the Sarbanes-Oxley Act "completely strip[ping]" the President of removal authority over members of the PCAOB. <u>See</u>, <u>e.g.</u>, Pl. Reply/Opp. at 2, 16, 19. [9]

---

[8](...continued)
7217(d)(3), or at least the SEC could reasonably so construe the statute. Plaintiffs similarly misapprehend the United States' position to the extent they understand us to have argued that "Congress could impose <u>any</u> restriction on the removal of an inferior officer consistent with the 'public interest.'" Pls' Mem. at 6 (emphasis in original). The United States has not taken and does not take that position. Rather, we argue that the particular for-cause removal provisions in the Sarbanes-Oxley Act, in the overall context of the statute, do not "unduly trammel[] on executive authority." <u>Morrison</u>, 487 U.S. at 691-92; <u>see also</u> <u>id.</u> at 724 n.4 (Scalia, J., dissenting) (recognizing that it is sufficient to ensure presidential "control over all exercises of the executive power" if Inferior Officers are simply "removable <u>for cause</u>, which would include, of course, the failure to accept supervision" (emphasis in original)). Thus, plaintiffs' suggestion that the United States' position paves the way for extreme hypotheticals such as Congress "prohibit[ing] the Attorney General from removing the Solicitor General" even if the Solicitor General refused to comply with orders of the President or Attorney General (Pl. Reply/Opp. at 3) is ill-conceived and logically flawed.

[9] The SEC's organic statute does not contain any provisions expressly addressing the removal of SEC Commissioners, and the scope of the President's authority to remove SEC Commissioners has not been judicially determined. The Court need not reach this issue in this case, however, because the Sarbanes-Oxley Act is consistent with the separation of powers for

(continued...)

Plaintiffs also argue, once more, that the standard by which the SEC reviews PCAOB actions is excessively deferential. They again look past the actual statutory scheme and instead attack a concocted, exaggerated version of the statute, often substituting their own, slanted formulations for the operative language. For example, plaintiffs refer to a "reasonableness" standard of review under which the SEC must allow the PCAOB to take any regulatory action "about which reasonable people may disagree." Pl. Reply/Opp. at 13; see also Pl. Reply/Opp. at 15 ("The range of enforcement and legal interpretation choices available to the Board that could be viewed as reasonable is, of course, virtually limitless."). Later, plaintiffs articulate an "arguably consistent with a rational conception of the securities laws" standard, Pl. Reply/Opp. at 32 (arguing that SEC is powerless to restrain PCAOB "so long as [PCAOB enforcement policies and practices] are arguably consistent with a rational conception of the securities laws and the Board member's own statutory responsibilities"), and follow that up with a "rational policy choice" criterion, id. at 34 (SEC's review limited to "prevent[ing] the PCAOB's rules from straying outside the bounds of rational policy choices" (emphasis in original)).

None of these variations can be squared with the statute. Even plaintiffs now admit that the SEC is charged with "fairly broad" (Pl. Reply/Opp. at 20 n.11, 23), de novo review of disciplinary sanctions, the PCAOB's most potent enforcement tool vis-a-vis registered public accounting firms and persons associated with such a firm. Moreover, the statute contains no language limiting the SEC's review of PCAOB rules to whether the rule is "arguably consistent

---

[9](...continued)
the reasons stated in the text, regardless of whether the President's power to remove the
Commissioners of the SEC is at will or only for cause.

with a rational conception of the securities laws" or the various other formulations floated by plaintiffs.

Plaintiffs lay great stress on the word "or" in 15 U.S.C. § 7217(b)(3) ("The Commission shall approve a proposed rule, if it finds that the rule is consistent with the requirements of this Act and the securities laws, or is necessary or appropriate in the public interest or for the protection of investors"), embracing the anomalous proposition that the SEC would be bound to approve a PCAOB proposed rule that is consistent with the Sarbanes-Oxley Act even if against the public interest, or a PCAOB proposed rule that is necessary and appropriate in the public interest even if it is inconsistent with the securities laws.  See Pl. Reply/Opp. at 20.  However, the Supreme Court long ago cautioned that "[i]n the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature.  In order to do this, courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'"  United States v. Fisk, 70 U.S. (3 Wall) 445, 447 (1865); see also United States v. Bonilla-Montenegro, 331 F.3d 1047, 1051 (9th Cir. 2003) ("[A] statute's use of disjunctive or conjunctive language is not always determinative.  Rather, we must strive to give effect to the plain, common-sense meaning of the enactment without resorting to an interpretation that defies common sense.") (citation and internal quotation marks omitted), cert. denied, 540 U.S. 1210 (2004).  Here, plaintiffs' interpretation defies not only common sense, but also the canon that "it is the duty of federal courts," and no less the SEC, "to construe a statute in order to save it from constitutional infirmities."  Morrison v. Olson, 487 U.S. 654, 682 (1988).  The PCAOB previously cited a concrete example of SEC review of PCAOB rules applying the standard conjunctively, see Defendants' Memo. of Pts. & Auth. in Support of Mot. to Dismiss (dkt. no. 17), at 31 n.22, and

-15-

plaintiffs have not come forward with any concrete example showing the contrary. Plaintiffs

should not be heard to argue that the SEC would be bound to take an interpretation contrary to

common sense and past practice, particularly where, as here, they have bypassed the very

statutory review scheme that would have created a concrete record on how the SEC's review of

PCAOB proposed rules is exercised. In any event, the SEC has independent authority to

abrogate, add to, or delete from the PCAOB's rules; that authority is not governed by

§ 7217(b)(3), but rather is authorized "as the Commission deems necessary or appropriate to

assure the fair administration of [the PCAOB], conform the rules promulgated by that Board to

the requirements of title I of the Sarbanes-Oxley Act of 2002, or otherwise further the purposes

of that Act, the securities laws, and the rules and regulations thereunder applicable to that

Board." 15 U.S.C. § 78s(c), as modified by 15 U.S.C. § 7217(b)(5); see also U.S. Mem. at 28-

29. That this power, which is a form of rulemaking, is to be exercised through the same form of

notice-and-comment procedures that apply to rulemaking generally (including the very rules of

the PCAOB that would be the subject of the abrogation) hardly renders it ineffective or deprives

it of force.[10]

     Finally, as we emphasized in our opening brief, the SEC could withdraw enforcement

authority, in a class of cases or even a particular case, if it believed that the PCAOB was being

---

     [10] Plaintiffs continue to insist that the SEC owes Chevron deference to the PCAOB, reasoning that "just as Chevron is designed to restrain the judiciary, so too is Section 107(b)(3) designed to restrain the SEC." Pl. Reply/Opp. at 20. Of course, all standards of review could be said to "restrain" the reviewer in a sense. It hardly follows that two standards of review originating in vastly different contexts must be equivalent. As noted in our opening brief, the Chevron doctrine is relevant to this case in a very different way: it indicates that the SEC is entitled to deference in its interpretation and application of the Sarbanes-Oxley Act, including those provisions governing its supervision of the PCAOB. See U.S. Mem. at 29 n.22.

too aggressive or not aggressive enough in its regulatory activities.  See 15 U.S.C. § 7217(d)(1),

(d)(2); U.S. Mem. at 26.  Of course, the separation of powers manifestly does not require that the

SEC micro-manage the PCAOB's daily functioning, including matters suggested by plaintiffs

such as who to interview or what offices to visit in an investigation (Pl. Reply/Opp. at 23-24).

However, as noted above, the SEC has the ability to create a framework in which the PCAOB

would be required to notify it about preliminary matters such as the institution of particular

inspections, investigations, or disciplinary proceedings.  See 15 U.S.C. § 7217(b)(5) (SEC

empowered to amend PCAOB's rules); 15 U.S.C. § 7202(a) (SEC empowered to issue own rules

and regulations "as may be necessary or appropriate in the public interest or for the protection of

investors, and in furtherance of this Act").  Such a framework could even include a requirement

to obtain the SEC's advance approval before initiating or ceasing such an undertaking.  It is of no

moment that the SEC has not yet seen fit to exercise its rulemaking power in this particular way

during the brief period the PCAOB has been in existence (see Pl. Reply/Opp. at 24), because the

issue for separation-of-powers purposes is whether the SEC could exercise this power in a

situation where it deemed such exercise necessary or appropriate.  In short, the SEC has more

than ample resources at its disposal to curtail any regulatory activities of the PCAOB that are

"wholly at odds" (Pl. Reply/Opp. at 14, 33) with the SEC's own enforcement program.

## CONCLUSION

For the foregoing reasons, intervenor United States respectfully submits that, if

defendants' motion to dismiss is denied and the Court reaches the merits of the constitutional

issues in this case, intervenor United States' motion for summary judgment should be granted.

Dated: October 11, 2006


Of Counsel:

BRIAN G. CARTWRIGHT
General Counsel

ANDREW N. VOLLMER
Deputy General Counsel

JACOB H. STILLMAN
Solicitor

JOHN W. AVERY
Senior Litigation Counsel

MICHAEL L. POST
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

Respectfully submitted,


PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SUSAN K. RUDY
Assistant Director
Federal Programs Branch


 _/s/ Robert J. Katerberg_____
ROBERT J. KATERBERG
 (D.C. Bar No. 466325)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6112
Washington, D.C. 20001
Telephone:     (202) 616-8298
Facsimile:     (202) 616-8460
Robert.Katerberg@usdoj.gov

Attorneys for the United States