**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FREE ENTERPRISE FUND, *et al.*,

                Plaintiffs,

     -against-

THE PUBLIC COMPANY ACCOUNTING
OVERSIGHT BOARD, *et al.*,

                Defendants,

     -and-

UNITED STATES OF AMERICA,

                Intervenor.

Civil Action No. 1:06-cv-00217-JR
Judge Robertson

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Lewis H. Ferguson  (D.C. Bar No. 176312)
J. Gordon Seymour  (D.C. Bar No. 450051)
Heidi E. Murdy  (D.C. Bar No. 474680)
PUBLIC COMPANY ACCOUNTING
   OVERSIGHT BOARD
1666 K Street, N.W.
Washington, D.C. 20006
(202) 207-9162 (telephone)
(202) 862-8430 (facsimile)

Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
James R. Doty  (D.C. Bar No. 416785)
Jeffrey A. Lamken  (D.C. Bar No. 440547)
Robert K. Kry  (D.C. Bar No. 490545)
Joshua A. Klein  (D.C. Bar No. 489078)
BAKER BOTTS, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
(202) 639-7700 (telephone)
(202) 639-7890 (facsimile)

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.    A STRAIGHTFORWARD APPLICATION OF CONTROLLING PRECEDENT
      MAKES CLEAR THAT THE BOARD IS CONSTITUTIONAL................................... 2

      A.    Sarbanes-Oxley Is Constitutional Under the Appointments Clause ...................... 2

      B.    The Act Is Fully Consistent with Separation-of-Powers Principles ...................... 5

II.   PLAINTIFFS' APPOINTMENTS CLAUSE ARGUMENTS IGNORE THE
      STATUTORY TEXT AND HAVE NO BASIS IN PRECEDENT ................................... 6

      A.    Plaintiffs Fail To Demonstrate That Board Members Are Principal
            Officers ............................................................................................................. 6

      B.    Plaintiffs Fail To Overcome Overwhelming Authority Holding That
            Independent Agencies Like the SEC Are "Departments" .................................... 12

      C.    Plaintiffs Fail To Show That the Chairman Rather Than the Commission
            Is the SEC's Head ............................................................................................. 13

III.  PLAINTIFFS' SEPARATION-OF-POWERS ARGUMENTS HAVE NO
      FOUNDATION IN HISTORY OR PRECEDENT ........................................................ 17

      A.    Plaintiffs' Separation-of-Powers Arguments Are Foreclosed by *Hennen*
            and *Perkins*...................................................................................................... 18

      B.    The SEC's Removal Authority Easily Satisfies *Morrison* .................................. 21

      C.    The Restrictions on the President's Power To Remove SEC
            Commissioners Are Irrelevant ............................................................................ 23

      D.    The Cause Restrictions Are Severable................................................................. 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

### CASES[1]

*Belenke v. SEC*, 606 F.2d 193 (7th Cir. 1979) ...............................................................................9

*Bowsher v. Synar*, 478 U.S. 714 (1986) ..........................................................................................13

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ............................9

*Clark v. Martinez*, 543 U.S. 371 (2005) ........................................................................................10

*Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119 (9th Cir. 2005) ...........................8

*Dismas Charities, Inc. v. Dep't of Justice*, 401 F.3d 666 (6th Cir. 2005) .....................................8

*\*Edmond v. United States*, 520 U.S. 651 (1997) ................................................................... *passim*

*FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993) ...............................................17

*Freytag v. Comm'r*, 501 U.S. 868 (1991) ...............................................................................4, 12

*\*In re Hennen*, 38 U.S. 230 (1839) ......................................................................................... *passim*

*Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000) ........................................................................15

*MCI Telecomms. Corp. v. FCC*, 57 F.3d 1136 (D.C. Cir. 1995) ....................................................8

*MFS Sec. Corp. v. SEC*, 380 F.3d 611 (2d Cir. 2004) ..................................................................13

*\*Morrison v. Olson*, 487 U.S. 654 (1988) .............................................................................. *passim*

*NASD v. SEC*, 431 F.3d 803 (D.C. Cir. 2005) ................................................................................9

*NTEU v. Reagan*, 663 F.2d 239 (D.C. Cir. 1981)....................................................................5, 17

*Nader v. Bork*, 366 F. Supp. 104 (D.D.C. 1973) .........................................................................23

*Printz v. United States*, 521 U.S. 898 (1997).............................................................................14

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ...................................................9

*Silver v. U.S. Postal Serv.*, 951 F.2d 1033 (9th Cir. 1991) ...........................................................4

---

[1] Authorities on which we chiefly rely are marked by an asterisk.

*United States v. Gibson*, 770 F.2d 306 (2d Cir. 1985) ................................................................9

*United States v. Hartwell*, 73 U.S. 385 (1867) ......................................................................17

*United States v. Jones*, 763 F.2d 518 (2d Cir. 1985) .................................................................17

*United States v. Lane*, 64 M.J. 1 (C.A.A.F. 2006) .................................................................17

*United States v. Pabon-Cruz*, 391 F.3d 86 (2d Cir. 2004) ..........................................................9

*\*United States v. Perkins*, 116 U.S. 483 (1886) .................................................... *passim*

*\*United States v. Salerno*, 481 U.S. 739 (1987) .................................................................2, 10

*Weiss v. United States*, 510 U.S. 163 (1994) .................................................................7, 16

*Williams Cos. v. FERC*, 345 F.3d 910 (D.C. Cir. 2003) ..........................................................9

*Wonsover v. SEC*, 205 F.3d 408 (D.C. Cir. 2000) .................................................................22

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const. art. II, § 2 .................................................................................................2

5 U.S.C. § 553 .................................................................................................................8

5 U.S.C. § 903 ...............................................................................................................16

5 U.S.C. § 904 ...............................................................................................................16

5 U.S.C. § 5349 .............................................................................................................10

7 U.S.C. § 2 .....................................................................................................................4

7 U.S.C. § 6j .................................................................................................................10

15 U.S.C. § 42 .................................................................................................................4

15 U.S.C. § 78d ..........................................................................................................2, 16

15 U.S.C. § 78d-1 .........................................................................................................15

15 U.S.C. § 78q .............................................................................................................12

15 U.S.C. § 78s .....................................................................................................8, 10, 15

15 U.S.C. § 78u .................................................................................................... 15

15 U.S.C. § 78w ................................................................................................... 15

15 U.S.C. § 80a-2 ................................................................................................. 10

15 U.S.C. § 80a-3 ................................................................................................. 10

15 U.S.C. § 80a-63 ............................................................................................... 10

15 U.S.C. § 6758 .................................................................................................. 10

*Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 ..................................... *passim*

    § 101, 15 U.S.C. § 7211 ............................................................... 3, 4, 22, 25

    § 103, 15 U.S.C. § 7213 ....................................................................... 10

    § 104, 15 U.S.C. § 7214 ..................................................................... 3, 16

    § 105, 15 U.S.C. § 7215 ....................................................................... 3, 7

    § 107, 15 U.S.C. § 7217 .................................................................. *passim*

    § 109, 15 U.S.C. § 7219 ................................................................ 3, 11, 16

47 U.S.C. § 155 ...................................................................................................... 4

## LEGISLATIVE MATERIALS

S. Rep. No. 107-205 (2002) ................................................................................. 10

## EXECUTIVE MATERIALS

*Applicability of Executive Order No. 12674 to Personnel of Regional Fishery Management Councils*, 17 Op. Off. Legal Counsel 150 (1993) ..................................... 11

*Authority of Civil Service Commission To Appoint a Chief Examiner*, 37 Op. Att'y Gen. 227 (1933) ............................................................................................................. 4

*The Constitutional Separation of Powers Between the President and Congress*, 20 Op. Off. Legal Counsel 124 (1996) ......................................................................... 4

Reorganization Plan No. 10, 15 Fed. Reg. 3175 (May 25, 1950) ............................. 15, 16

*Special Message to the Congress Summarizing the New Reorganization Plans*, Public Paper No. 1950-53 (Mar. 13, 1950), *available at* http://www.trumanlibrary.org/ publicpapers/index.php?pid=673&st=&st1=.................................................................15

*Special Message to the Congress Transmitting Reorganization Plans 1 Through 13 of 1950*, Public Paper No. 1950-54 (Mar. 13, 1950), *available at* http://www.trumanlibrary.org/publicpapers/index.php?pid=674&st=&st1= ...................15

## MISCELLANEOUS

Steven G. Calabresi & Christopher S. Yoo, *The Unitary Executive During the First Half-Century*, 47 Case W. Res. L. Rev. 1451 (1997)....................................................12

Gerald Cullinan, *The United States Postal Service* (1973)............................................12

GAO, *Actions Needed To Improve PCAOB Selection Process* (2002) ..........................17

*History of the U.S. Postal Service*, *at* http://www.usps.com/history/history/his1.htm................12

Henry Learned, *The President's Cabinet* (1912)..........................................................12

Wesley Rich, *The History of the United States Post Office to the Year 1829* (1924) ..................12

# INTRODUCTION

Shorn of plaintiffs' inapposite hypotheticals and distracting hyperbole, this case is straightforward—and wholly governed by precedent. Under *Edmond v. United States*, 520 U.S. 651 (1997), and *Morrison v. Olson*, 487 U.S. 654 (1988), the Board's members are unquestionably "inferior officers" within the meaning of the Appointments Clause. Once that is recognized, plaintiffs' remaining arguments collapse. The Appointments Clause makes clear that inferior officers may be appointed by the heads of departments like the SEC. The Supreme Court's decision in *In re Hennen*, 38 U.S. 230 (1839), makes clear that, when Congress vests the authority to appoint an inferior officer in a department head, the President need not be given authority to remove him; that authority instead vests in the department head that appointed the inferior officer in the first place. And *United States v. Perkins*, 116 U.S. 483 (1886), holds that, when Congress vests appointment authority in a department head, it may restrict removal "as it deems best for the public interest." *Id.* at 485.

Plaintiffs do not ask this Court to apply those holdings. Instead, they ask this Court to ignore them. For example, while plaintiffs assail the "view" that Congress may prescribe the "'conditions for removal' that 'it deems best for the public interest'" as a "radical understanding of the Excepting Clause," Pl. Reply at 2-3 (emphasis omitted),[1] that "view" is not merely ours. It is the Supreme Court's: The standard is a direct quotation of the Court's holding in *Perkins*. The only radical position in this case is plaintiffs' proposal that the Court ignore governing Supreme Court precedent in favor of their own unprecedented position.

---

[1] Citations to "Pl. Mem." are to plaintiffs' memorandum in support of their motion for summary judgment. Citations to "Def. Mem." are to the Board's memorandum in opposition and in support of its cross-motion for summary judgment. Citations to "U.S. Mem." are to the United States' memorandum in opposition and in support of its cross-motion for summary judgment. Citations to "Pl. Reply" are to plaintiffs' combined reply and opposition. Citations to "Motion To Dismiss" are to the Board's memorandum in support of its motion to dismiss.

Plaintiffs' remaining arguments are equally foreclosed.  Their claim that Board members are principal rather than inferior officers cannot be reconciled with the terms of the statute or with *Edmond* and *Morrison*.  Similarly, in arguing that the SEC is not a "department" and that the Commission is not its head, plaintiffs fight against 70 years of precedent—without citing a single contrary authority.  With their Appointments Clause challenge foreclosed, plaintiffs seek refuge in a free-form separation-of-powers challenge.  But there, too, plaintiffs' claims have no foundation:  The SEC's pervasive oversight and removal authority are fully sufficient under governing precedent.  Finally, to the extent there is any doubt about the scope of the SEC's authority, plaintiffs cannot prevail: *United States v. Salerno*, 481 U.S. 739 (1987), precludes courts from declaring an act facially unconstitutional unless the challenger establishes that "*no set of circumstances* exists under which the Act would be valid."  *Id.* at 745 (emphasis added).

## ARGUMENT

## I. A STRAIGHTFORWARD APPLICATION OF CONTROLLING PRECEDENT MAKES CLEAR THAT THE BOARD IS CONSTITUTIONAL

### A. Sarbanes-Oxley Is Constitutional Under the Appointments Clause

The Excepting Clause allows Congress to vest authority to appoint inferior officers in department heads.  U.S. Const. art. II, § 2.  That is exactly what Sarbanes-Oxley does.  Board members are inferior officers.  The SEC is a department.  And the Commission is its head.

1.    That Board members are at most "inferior officers" is inescapable.  Under the Supreme Court's decision in *Edmond*, " 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."  *Edmond v. United States*, 520 U.S. 651, 663 (1997).  Here, the Commissioners of the SEC are "appointed by the President by and with the advice and consent of the Senate."  15 U.S.C. § 78d(a).  And, as thoroughly demonstrated in our opening

brief, the SEC has pervasive authority to supervise and direct the Board's work.  Def. Mem. at 3-
7.  The SEC reviews Board rules, which are without effect unless the SEC approves them.
§ 107(b)(2), 15 U.S.C. § 7217(b)(2).  The SEC on its own initiative may abrogate, delete, or add
to Board rules at any time.  § 107(b)(5), 15 U.S.C. § 7217(b)(5).  The Board's inspections and
disciplinary proceedings are conducted under SEC-approved rules, §§ 104(c), 105(a), 15 U.S.C.
§§ 7214(c), 7215(a), and sanctions are stayed pending any SEC review unless the SEC orders
otherwise, § 105(e)(1), 15 U.S.C. § 7215(e)(1).  The Board's budget must be approved by the
SEC.  § 109(b), 15 U.S.C. § 7219(b).  The SEC selects Board members, § 101(e)(4)(A), 15
U.S.C. § 7211(e)(4)(A), and it can remove them for cause, § 107(d)(3), 15 U.S.C. § 7217(d)(3).
Finally, under a provision that plaintiffs barely acknowledge, the SEC can rescind Board
enforcement authority at any time in the public interest.  § 107(d)(1), 15 U.S.C. § 7217(d)(1).

Even this shortened list of SEC powers conclusively shows that the Board's members are
inferior officers.  Like the Coast Guard judges held to be inferior officers in *Edmond*, Board
members are subject to their superiors' "administrative oversight," 520 U.S. at 664; they operate
under "'rules of procedure'" prescribed or approved by their superiors, *id.*; and they can be
removed by their superiors, *id*.  Finally, and "significant[ly]," like the Coast Guard judges, the
Board has "no power to render a final decision on behalf of the United States unless permitted to
do so by other Executive officers."  *Id.* at 665.  If the Coast Guard judges in *Edmond* were
inferior, as the Supreme Court held, then Board members certainly are as well.

*Morrison v. Olson*, 487 U.S. 654 (1988), makes this an even easier case.  Board members
are subject to far *more* control than the independent counsel held inferior there.  The independent
counsel could exercise the full prosecutorial authority of the Department of Justice, subject only
to the requirement that she follow Department policy "'except where not possible.'"  *Id.* at 662.

3

The Attorney General had no authority to direct, countermand, review, or otherwise control her actions. The Board, by contrast, has no criminal prosecutorial authority, and its disciplinary decisions are subject to thorough review by the SEC. Moreover, the SEC chooses the Board's members. § 101(e)(4)(A), 15 U.S.C. § 7211(e)(4)(A). In *Morrison*, by contrast, the independent counsel was chosen by a three-judge court *outside* the Executive Branch. 487 U.S. at 661.

  2. Nor can there be any doubt that the SEC is a "department." In an unbroken line of decisions stretching back more than 70 years, the three branches of government have unanimously agreed that independent agencies are "departments" capable of appointing inferior officers. Congress has routinely vested appointment authority in independent agencies like the SEC. *See, e.g.*, 7 U.S.C. § 2(a)(4) (CFTC); 15 U.S.C. § 42 (FTC); 47 U.S.C. § 155(e) (FCC). The Executive likewise has found such agencies to be departments. *See The Constitutional Separation of Powers Between the President and Congress*, 20 Op. Off. Legal Counsel 124, 152 (1996); *Authority of Civil Service Commission To Appoint a Chief Examiner*, 37 Op. Att'y Gen. 227 (1933). And every judicial authority to reach the issue has agreed that independent agencies like the SEC are departments. *See Freytag v. Comm'r*, 501 U.S. 868, 914-22 (1991) (Scalia, J., concurring in judgment, joined by O'Connor, Kennedy, and Souter, JJ.); *Silver v. U.S. Postal Serv.*, 951 F.2d 1033, 1036-38 (9th Cir. 1991); *id.* at 1043-44 (O'Scannlain, J., dissenting). While plaintiffs attempt to cobble together a contrary argument from scattered stray remarks, *every* authority that has squarely considered the issue has rejected their position.

  3. Equally clearly, the Commission is the SEC's "head." While plaintiffs renew their argument that a multimember commission cannot be the "head" of an agency for Appointments Clause purposes, Pl. Reply at 39-41, seven decades of authority reject the position. The Ninth Circuit in *Silver* and Attorney General opinions dating back to 1933 have

squarely held that a multimember commission can be the head of a department.  Def. Mem. at

26.  No authority has ever held otherwise.

### B.    The Act Is Fully Consistent with Separation-of-Powers Principles

The Act's oversight and removal provisions are also entirely consistent with separation-

of-powers principles.  Notwithstanding plaintiffs' focus on *presidential* removal authority, the

Supreme Court's decision in *In re Hennen*, 38 U.S. 230 (1839), clearly instructs that "the power

of removal [is] incident to the power of appointment"; consequently, "the President has certainly

*no power* to remove" inferior officers appointed by a department head.  *Id.* at 259-60 (emphasis

added); *accord NTEU v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981).  And under the Supreme

Court's holding in *United States v. Perkins*, 116 U.S. 483 (1886), "when congress, by law, vests

the appointment of inferior officers in the heads of departments, it may limit and restrict the

power of removal *as it deems best for the public interest*."  *Id.* at 485 (emphasis added).

Those principles are the beginning and the end of the separation-of-powers analysis in

this case.  Because the President has "no power to remove" inferior officers appointed by a

department head, *Hennen*, 38 U.S. at 260, Congress cannot have violated separation of powers

by vesting removal authority in the SEC rather than the President.  And because Congress can

limit the removal of such officers "as it deems best for the public interest," *Perkins*, 116 U.S. at

485, Congress cannot have violated separation of powers by enumerating particular grounds for

removal under § 107(d)(3), 15 U.S.C. § 2717(d)(3).  Although plaintiffs object to that conclusion

as "radical" (Reply at 2-3), the governing standard—that Congress may establish conditions for

removal of such officers "as it deems best for the public interest"—is a direct quotation from

Supreme Court precedent.  *Hennen* and *Perkins* foreclose plaintiffs' separation-of-powers claim.

The conclusion that Sarbanes-Oxley satisfies separation-of-powers requirements is

particularly clear given the oversight authority, including substantial authority to remove Board

members, that the Act grants to the SEC—an executive agency.  *See* pp. 2-3, *supra*.  Whether viewed alone or in combination, the SEC's removal power and its more general oversight authority are more than sufficient to defeat plaintiffs' claim of unconstitutional intrusion into Executive authority.

## II.    PLAINTIFFS' APPOINTMENTS CLAUSE ARGUMENTS IGNORE THE STATUTORY TEXT AND HAVE NO BASIS IN PRECEDENT

Hemmed in by precedent on all sides, plaintiffs seek refuge through misdirection.  They mischaracterize the terms of Sarbanes-Oxley and offer a revisionist description of controlling Supreme Court cases.  Their arguments rest on a pastiche of citations and half-quotations taken out of context, and cannot justify departure from Supreme Court precedent.

### A.    Plaintiffs Fail To Demonstrate That Board Members Are Principal Officers

Notwithstanding the SEC's pervasive oversight over the Board, plaintiffs assert that certain features of that oversight convert the Board's members into principal officers.  But in each instance, the text of the Act shows the SEC's authority to be far greater than plaintiffs acknowledge, and binding precedent proves plaintiffs' point to be immaterial.

1.    *Oversight*.  Plaintiffs assert that Board members are principal officers because the SEC only *reviews* Board decisions after the fact rather than *directing* them in advance.  Pl. Reply at 33-34.  That claim is foreclosed by *Edmond*.  There, the Coast Guard judges' superiors were *statutorily barred* from "attempt[ing] to influence (by threat of removal or otherwise) the outcome of individual proceedings."  520 U.S. at 664.  The superiors thus could not "direct" proceedings in particular cases; rather, they could exercise control only by prescribing rules and conducting appellate review of individual decisions after the fact.  *See id.* at 664-65.  The SEC can do precisely the same things here:  It can prescribe and approve rules for the Board, and it can review Board decisions.  Indeed, the SEC's oversight is far *more* extensive than the review

in *Edmond*: Unlike the "narrow[]" and "limit[ed]" appellate review there, *id.* at 665, the SEC's review is searching and independent. *See* pp. 8-10, *infra*.[2]

The notion that a superior must micromanage an inferior officer's decisions is equally foreclosed by *Morrison*. In that case, the Attorney General had *no* power to direct decisions; the independent counsel merely had to follow general Department of Justice policies to the extent possible. 487 U.S. at 662. Yet the Supreme Court found the independent counsel "clearly" an inferior officer. *Id.* at 671. That Board members are inferior officers is even clearer here.

2.    *Notice and Comment*.    Plaintiffs reiterate their complaint that the SEC's supervision is inadequate because the Act in some instances channels SEC control through well established procedures such as notice-and-comment rulemaking. As we pointed out (Def. Mem. at 20), however, almost all Board rules are without effect until the SEC approves them, § 107(b)(2), 15 U.S.C. § 7217(b)(2), and Board sanctions are stayed pending any SEC review unless the SEC orders otherwise, § 105(e)(1), 15 U.S.C. § 7215(e)(1). As a result, those procedures generally do not diminish the *SEC's* control—rather, they diminish the *Board's* authority by delaying the effectiveness of Board decisions until the SEC completes its review.[3]

_____

[2] Plaintiffs argue that, even if the SEC's powers over the Board amount to "direct[ion] and supervis[ion]" under *Edmond*, that *still* is not enough to make Board members inferior officers in view of the breadth of their responsibilities and the restrictions on their removal. Pl. Reply at 35-36. But plaintiffs' only authorities for that point are a single Justice's concurrence in one case and a single Justice's dissent in another. *See id.* The views of single Justices cannot trump *Edmond*'s express holding. Moreover, plaintiffs' reliance on Justice Souter's concurrence in *Edmond* (Reply at 31, 34, 35, 36) is unhelpful to their case for an additional reason. Justice Souter's approach is highly deferential to Congress: "'Where . . . the label that better fits an officer is fairly debatable, the fully rational congressional determination surely merits . . . tolerance.'" *Weiss v. United States*, 510 U.S. 163, 194 (1994) (Souter, J., concurring). In any event, nothing about the scope of the Board's responsibilities or the SEC's removal authority renders Board members principal officers. *See* Def. Mem. at 16; pp. 10-12, *infra*.

[3] Plaintiffs complain that the SEC's oversight is hampered by a provision allowing rules "'concerned solely with the administration'" of the Board to take effect without prior SEC approval. Pl. Reply at 35 (quoting § 107(b)(4), 15 U.S.C. § 7217(b)(4) (incorporating 15 U.S.C.

Moreover, as we also pointed out (Def. Mem. at 20-21), the SEC can forgo notice and comment when "impracticable, unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(B).  Plaintiffs offer *no response* except to dismiss that exception as "limited."  Pl. Reply at 21.  That *ipse dixit* aside, it is hard to see how supervision could be deemed ineffective based on a restriction the principal officer can forgo upon finding that the "public interest" so requires.

In any event, notice and comment does not fetter the SEC.  It ensures that the SEC's consideration of Board rules benefits from the same public participation as the rules the SEC itself proposes.  Notice and comment "assure[s] that the 'agency will have before it the [relevant] facts and information,'" *MCI Telecomms. Corp. v. FCC*, 57 F.3d 1136, 1141 (D.C. Cir. 1995), and  "give[s] those with interests affected by rules the chance to participate . . . [to] ensure fair treatment," *Dismas Charities, Inc. v. Dep't of Justice*, 401 F.3d 666, 678 (6th Cir. 2005).  To suggest that provisions of the Constitution designed to "ensure political accountability" (Pl. Mem. at 35) require Congress to *refuse* public input is ironic, to say the least.  Litigants often challenge "*not* being given an opportunity to comment," but it is unprecedented for plaintiffs to "complain[] that they *were* given such an opportunity."  U.S. Mem. at 28.

3.    *Standards of Review*.  Plaintiffs' contention that SEC review is too deferential (Reply at 20) is also meritless.  Plaintiffs abandon their claim that Board *sanctions* are reviewed under a deferential standard.  *Compare* Pl. Mem. at 9 (claiming that review is "circumscribed"), *with* Pl. Reply at 23 (conceding that review is "fairly broad").  While plaintiffs continue to complain about the standard of review for Board *rules*, that point fares no better.  Sarbanes-

---

§ 78s(b)(3)(A))).  That exception, however, is limited to internal "housekeeping" matters, *see Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1130 n.11 (9th Cir. 2005), and the SEC may abrogate such rules "summarily," 15 U.S.C. § 78s(b)(3)(C).  It is hard to see how supervision could be deemed ineffective based on an exception for mere housekeeping rules that the SEC can render ineffective at the stroke of a pen.

Oxley incorporates provisions for review of SRO rules—provisions that courts have construed to require an "independent determination." *Belenke v. SEC*, 606 F.2d 193, 198 (7th Cir. 1979); *see also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 233-34 (1987) ("[T]he Commission has broad authority to oversee and to regulate the rules adopted by the SROs . . . ."). As the D.C. Circuit has observed, "the legal views of the [SRO] must yield to the Commission's view of the law." *NASD v. SEC*, 431 F.3d 803, 806 (D.C. Cir. 2005).

Plaintiffs' analogy to *Chevron* deference (Reply at 20) thus falls short. *Chevron* governs review by *courts*, not agencies. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Plaintiffs cite not one case in which a reviewing *agency* was required to give similar deference to a subordinate decisionmaker's view of the law. Nothing in Sarbanes-Oxley purports to overturn the ordinary understanding that a subordinate's legal views must yield to the Commission's independent determination of the law.

Plaintiffs urge that the statutory text requires deference because the SEC must "'approve a proposed rule, if it finds that the rule is consistent with the requirements of this Act and the securities laws, *or* is necessary or appropriate in the public interest or for the protection of investors.'" Pl. Reply at 20 (quoting § 107(b)(3), 15 U.S.C. § 7217(b)(3) (emphasis added)). Plaintiffs thus claim that the SEC must approve even Board rules that are *in*consistent with the securities laws, so long as they are "in the public interest." That interpretation is absurd. No agency has *ever* been required to approve *illegal* rules. Congress obviously intended the SEC to review Board rules to ensure they are *both* consistent with the securities laws *and* in the public interest. *See Williams Cos. v. FERC*, 345 F.3d 910, 912 & n.1 (D.C. Cir. 2003) (disregarding the word "or" to avoid absurd result); *United States v. Pabon-Cruz*, 391 F.3d 86, 105 (2d Cir. 2004) (construing "and" to mean "or" to avoid absurd result); *United States v. Gibson*, 770 F.2d 306,

308 (2d Cir. 1985) (same).[4]  The SEC has consistently interpreted the statute in that fashion.  *See* Defendants' Statement of Material Facts Not in Genuine Dispute ¶ 13.[5]

Finally, to the extent there is any ambiguity in the statutory standard of review—and there is not—it must be resolved in a manner that renders the statute constitutional.  *See Salerno*, 481 U.S. at 745; *Clark v. Martinez*, 543 U.S. 371, 381 (2005).  If the statute *can* be construed to permit sufficiently demanding review, plaintiffs' facial challenge must fail.[6]

4.    *Removal Authority*.  Plaintiffs also err in asserting (Reply at 31-33) that the Act's modest restrictions on removal of Board members transform them into principal officers.  Quite the opposite:  The very fact that the SEC has removal authority—for cause or otherwise— *reinforces* the conclusion that Board members are inferior to the SEC.  In *Morrison*, the Attorney

---

[4] In numerous other statutes (including the Exchange Act), Congress instructed agencies to adopt rules that are in the public interest *and* consistent with governing law (or statutory purposes). *See* 15 U.S.C. § 78s(b)(3)(A); 5 U.S.C. § 5349(a); 7 U.S.C. § 6j(a)(2)(C); 15 U.S.C. § 80a-2(a)(48)(B); 15 U.S.C. § 80a-3(c)(1)(B); 15 U.S.C. § 80a-63(b)(2); 15 U.S.C. § 6758(b)(4). Legislative history confirms Congress meant to do the same here.  *See* S. Rep. No. 107-205, at 12 (2002) ("The Board is subject to SEC oversight and review to assure that the Board's policies are consistent with the administration of the federal securities laws, *and* to protect the rights of accounting firms and individuals subject to the Board's jurisdiction." (emphasis added)).

[5] Alternatively, the Court could construe the two tests in § 107(b)(3) to apply, respectively, to different categories of rules.  The SEC would review rules *required* by the Act for consistency with the Act, and rules proposed under the Board's *discretionary* authority for consistency with the public interest.  *See* § 103(a)(1), 15 U.S.C. § 7213(a)(1) (requiring the Board to promulgate rules "as required by this Act or the rules of the Commission, *or* as may be necessary or appropriate in the public interest or for the protection of investors" (emphasis added)).

[6] Plaintiffs argue that *Salerno* and *Clark* do not apply because the statutes in *Edmond* and *Morrison* "were interpreted in a straightforward manner."  Pl. Reply at 36 n.18.  But that proves nothing:  In both cases the statutes at issue were *upheld* without the need to resort to a narrow reading.  Plaintiffs also argue that *Salerno* is inapplicable because their suit does not allege that the Board will exercise its discretion unlawfully.  *See id.*  Plaintiffs' suit *does* assume, however, that the *SEC* will exercise its discretion unlawfully by not construing the statute in a manner that provides for constitutionally adequate supervision of the Board.  Furthermore, as argued in defendants' motion to dismiss, the need to speculate about how the SEC might interpret the statute underscores why plaintiffs should not be allowed to raise their claims outside Congress's exclusive review mechanism.

General's power to remove for cause was counted as a factor *in favor of*, not against, a finding of inferior-officer status.  487 U.S. at 671.   As the OLC has explained, "the very ability to remove for 'cause' presupposes that the officer or body that has the removal power must supervise the subordinate officer at least to the extent needed to determine whether 'cause' for removal exists." *Applicability of Executive Order No. 12674 to Personnel of Regional Fishery Management Councils*, 17 Op. Off. Legal Counsel 150, 156 n.19 (1993).  And the Supreme Court's holding in *Perkins*—that Congress may "limit and restrict the power of removal [of inferior officers] as it deems best for the public interest," 116 U.S. at 485—would be meaningless if any significant exercise of that power transformed inferior officers into principal officers.

Nor does it matter that Sarbanes-Oxley enumerates three particular grounds for removal rather than providing for general "for cause" removal.  § 107(d)(3), 15 U.S.C. § 7217(d)(3).  The Act's removal provisions do not constrain the SEC nearly as much as plaintiffs claim.  *See* pp. 21-22, *infra*.  And this certainly is not a case like *Fishery Management Councils* where the limits render the removal authority wholly illusory.  The statute there, after all, gave appointees a *veto over their own removal*.  17 Op. Off. Legal Counsel at 157.  Nothing of that sort exists here.

Finally, even if the removal provisions did *weigh* against inferior-officer status here, that one factor would plainly be insufficient to overcome the many other indicia that Board members are inferior to the SEC.  Board rules have *no effect* unless approved by the SEC, and Board sanctions are *inoperative* pending any SEC review unless the SEC orders otherwise.  The SEC can amend the Board's rules at any time, approve or disapprove the Board's budget,[7] and strip

---

[7] Plaintiffs' repeated claims that the Board "sets its own budget," Pl. Reply at 19, "finances itself through its own taxation," *id.* at 30, and enjoys "extraordinary autonomy from the normal budgetary and administrative process," *id.*, simply ignore the SEC's extensive budget oversight. *See* § 109(b), 15 U.S.C. § 7219(b); Def. Mem. at 5-6.

the Board of all enforcement authority in the public interest.[8]  In light of those extensive powers, the notion that Board members are principal rather than inferior officers is fanciful.[9]

### B.    Plaintiffs Fail To Overcome Overwhelming Authority Holding That Independent Agencies Like the SEC Are "Departments"

Every authority that has ever addressed whether independent agencies like the SEC are "departments" within the meaning of the Appointments Clause has answered that question in the affirmative.  Plaintiffs cite no case that has reached the opposite conclusion.  They assert (Pl. Reply at 37) that *Freytag* "compel[s]" a contrary conclusion, but that case *expressly refused* to decide the issue.  *See* 501 U.S. at 887 n.4.  Given that, *Freytag* hardly justifies a reversal of 70 years of unbroken agreement across all three branches of government.

*Freytag* at most held that "departments" were limited to "executive divisions *like* the Cabinet-level departments."  *Id.* at 886 (emphasis added).[10]  The SEC is "like" a cabinet department in the respects that matter:  It exercises significant authority over an important part of

---

[8] *See also* U.S. Mem. at 8 (SEC's "general rulemaking authority affords the SEC significant additional means of control over the PCAOB.  For example, the SEC could adopt rules that would enable it to take immediate action to require the PCAOB to stop or start a PCAOB inspection, investigation, or disciplinary proceeding.").

[9] Plaintiffs' argument that Board members are principal officers because the Board "does not report under any organizational plan to the SEC or anyone else" (Reply at 30) is mystifying.  The Act itself constitutes an "organizational plan," and it requires the Board to "report[]" to the SEC as often as the SEC directs.  § 107(a), 15 U.S.C. § 7217(a) (incorporating 15 U.S.C. § 78q(a)(1)).  Nor is there any merit to plaintiffs' reliance on Board members' salaries.  Pl. Reply at 36.  The difference between principal and inferior officers is direction and supervision, not pay level.

[10] Clearly, an agency need not actually *be* a cabinet agency to constitute a department; non-cabinet agencies such as the Post Office have long appointed inferior officers.  *See* Def. Mem. at 23.  Plaintiffs claim there is some dispute whether the Post Office was a cabinet agency at the time of the framing (Reply at 38 n.20), but the article on which they rely does not even address that issue.  *See* Steven G. Calabresi & Christopher S. Yoo, *The Unitary Executive During the First Half-Century*, 47 Case W. Res. L. Rev. 1451, 1480-83 (1997).  It is incontestable that the Postmaster General was not a cabinet officer until 1829.  *See History of the U.S. Postal Service*, *at* http://www.usps.com/history/history/his1.htm; Henry Learned, *The President's Cabinet* 244 (1912); Wesley Rich, *The History of the United States Post Office to the Year 1829*, at 132-36 (1924); Gerald Cullinan, *The United States Postal Service* 54 (1973).

national policy; and its Commissioners are appointed by the President, removable by the President, and report to no one else but the President. *See* Def. Mem. at 24-25.

Plaintiffs argue that the SEC is different from a cabinet department because it is "politically unaccountable" and "'independent'" of presidential control. Pl. Reply at 38-39. But that substitutes rhetoric for legal analysis. The SEC is not a separate sovereign. It is part of the Executive Branch; its members are appointed by, removable by, and answerable only to, the President. While good-cause restrictions on removal of SEC Commissioners may *limit* the President's control, they do not mean that he has *no* control, or that the SEC is unconnected to the Executive Branch. The President may remove an SEC Commissioner for "'inefficiency, neglect of duty or malfeasance in office,'" *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619 (2d Cir. 2004), a standard the Supreme Court has described as "very broad," authorizing removal "for any number of actual or perceived transgressions." *Bowsher v. Synar*, 478 U.S. 714, 729 (1986). Just like the Attorney General's power to remove the independent counsel for cause in *Morrison*, the President's power to remove SEC Commissioners "provides the Executive with substantial ability to ensure that the laws are 'faithfully executed.'" 487 U.S. at 696.

Plaintiffs ask this Court to disregard 70 years of settled precedent and issue a ruling that would cause chaos in the operation of administrative agencies. Only the most compelling authority could justify such a course. Plaintiffs offer no authority at all.

C.    **Plaintiffs Fail To Show That the Chairman Rather Than the Commission Is the SEC's Head**

1.    Every authority to have addressed whether a multimember commission can be the "head" of a department has answered that question in the affirmative. Plaintiffs criticize those authorities as "contain[ing] no analysis of the origins and purpose of the term 'Heads of Departments,'" Pl. Reply at 41, but plaintiffs' own authorities do not even *mention* "heads of

13

departments." Instead, they explain why the Framers lodged appointment of *principal* officers in the *single President*. Def. Mem. at 26. The Framers expressed *that* preference in the constitutional text by *expressly requiring* that the President appoint those officers. But they nowhere required that department heads be single individuals.

That some sources spoke "broadly and unqualifiedly about the benefits of lodging the appointment power in a single individual," Pl. Reply at 40, is not enough. The Framers did not constitutionalize every policy preference they had.[11] In fact, the Framers *embraced* multimember appointments in the Excepting Clause by lodging the power to appoint inferior officers in the "courts of law," which (like the three-judge court in *Morrison*) were often multimember bodies. *See* Def. Mem. at 26; U.S. Mem. at 23. Plaintiffs' effort to distinguish judicial appointments from executive appointments (Reply at 40) is unpersuasive. The threat of corruption or patronage in appointment may be present in either case. Yet the Framers had no objection to appointing judicial clerks by committee.

2.       Unable to cite a single authority in American history holding that a multimember body *cannot* be a department head, plaintiffs alternatively argue that the Commission *is not* the head of the SEC. But plaintiffs' only authority is a single order—President Truman's Reorganization Plan No. 10. Pl. Reply at 41-42. That plan did not purport to make the Chairman the "head" of the SEC for Appointments Clause purposes. It merely transferred certain internal administrative duties from the Commission to the Chairman, while preserving the role of the Commission as a whole. The plan itself provided that "[i]n carrying out any of his

---

[11] Tellingly, plaintiffs' quotation from *Printz* (Reply at 40) is incomplete. The full quote is: "[I]f, as petitioners contend, earlier Congresses avoided use of [a] highly attractive power, we would have reason to believe that the power was thought not to exist." *Printz v. United States*, 521 U.S. 898, 905 (1997). The phrase "highly attractive"—omitted by plaintiffs—is crucial. If a practice was not "highly attractive," early Congresses' failure to use it says nothing about its constitutionality. Those Congresses could simply have chosen not to use it as a policy matter.

functions under the provisions of this section the Chairman shall be governed by general policies of the Commission and by such regulatory decisions, findings, and determinations as the Commission may by law be authorized to make."  Reorganization Plan No. 10, § 1(b)(1), 15 Fed. Reg. 3175, 3175 (May 25, 1950).  It also provided that "[t]he appointment by the Chairman of the heads of major administrative units under the Commission shall be subject to the approval of the Commission," *id.* § 1(b)(2), and that "[t]here are hereby reserved to the Commission its functions with respect to revising budget estimates and with respect to determining upon the distribution of appropriated funds according to major programs and purposes," *id.* § 1(b)(4).  The plan thus acknowledges the Commission's authority throughout.[12]

Even as reorganized, the Commission acts as a collective body in exercising its most important powers.  The Commission, not the Chairman, promulgates rules.  15 U.S.C. § 78w(a)(1).  The Commission, not the Chairman, investigates and sues to enjoin violations of the securities laws.  15 U.S.C. § 78u.  The Commission, not the Chairman, reviews disciplinary sanctions.  15 U.S.C. § 78d-1(b).  And the Commission, not the Chairman, registers and supervises SROs.  15 U.S.C. § 78s.  The President himself explained that the transferred functions pertain only to "day-to-day direction and internal administration," and that "the substantive aspects of regulation—that is, the determination of policies, the formulation and issuance of rules, and the adjudication of cases . . . are left in the board or commission as a whole."  *Special Message to the Congress Summarizing the New Reorganization Plans*, Public Paper No. 1950-53 (Mar. 13, 1950), *available at* http://www.trumanlibrary.org/publicpapers/ index.php?pid=673&st=&st1=;  *see also Special Message to the Congress Transmitting*

---

[12] The Chairman's authority to appoint personnel other than heads of major administrative units without Commission approval is not an indication that he alone is the "head" of the Commission. Personnel who are not inferior officers need not be appointed by a department head.  *See Landry v. FDIC*, 204 F.3d 1125, 1130-34 (D.C. Cir. 2000).

*Reorganization Plans 1 Through 13 of 1950*, Public Paper No. 1950-54 (Mar. 13, 1950), *available at* http://www.trumanlibrary.org/publicpapers/index.php?pid=674&st=&st1= ("The fact that under these reorganization plans the commissions retain all substantive responsibilities deserves special emphasis. The plans only eliminate multi-headed supervision of internal administrative functioning. The commissions retain policy control . . . .").[13]

Sarbanes-Oxley continues that pattern: The Commission, not the Chairman, reviews Board rules and sanctions, § 107(b)-(c), 15 U.S.C. § 7217(b)-(c), reviews Board inspection reports, § 104(h), 15 U.S.C. § 7214(h), approves the Board's budget, § 109(b), 15 U.S.C. § 7219(b), and disciplines Board members, § 107(d)(3), 15 U.S.C. § 7217(d)(3). And Congress's decision to grant the Commission power to appoint Board members is itself evidence that the Commission is the "head" of the department. Ultimately, the question is not whether the Chairman possesses some additional responsibilities that other Commissioners do not, but whether the Chairman's powers are so clearly more significant than the Commission's that Congress's judgment about who is the "head" must be rejected. *See Weiss v. United States*, 510 U.S. 163, 194 (1994) (Souter, J., concurring) ("[I]n the presence of doubt deference to the political branches' judgment is appropriate . . . ."). Plaintiffs have failed to make that showing.

---

[13] Plaintiffs point to a provision of the Reorganization Act of 1949 that authorized the President to " 'provide for the appointment and pay of the *head* and one or more officers of any agency.' " Pl. Reply at 42 (quoting 5 U.S.C. § 904(2)). But there is no evidence that Plan No. 10 was an exercise of that authority, rather than the more general reorganization authority under 5 U.S.C. § 903. To the contrary, § 904(2) requires the President to make a specified finding and also requires that the new "head" be either a civil-service position or a Senate-confirmed position, 5 U.S.C. § 904; neither condition was met here. (The Senate confirms each Commissioner, 15 U.S.C. § 78d(a), but the President alone designates the Chairman from among the Commissioners, Reorganization Plan No. 10, § 3, 15 Fed. Reg. at 3175.) Furthermore, the Reorganization Act itself provides that "the head of an agency [may] be an individual *or a commission or board with more than one member*." 5 U.S.C. § 904 (emphasis added).

3.      Plaintiffs, in any event, have shown no injury traceable to Congress's decision to vest appointment authority in the Commission as a whole.  Even if the Chairman were the head of the SEC, Congress could still limit his role to approving or disapproving candidates selected by the Commission.  *See NTEU*, 663 F.2d at 246 n.9; *United States v. Hartwell*, 73 U.S. 385, 393-94 (1867).[14]  And the Chairman in fact voted for every candidate selected.  Def. Mem. at 27.[15]  Plaintiffs' claimed injury thus rests on an unlikely chain of assumptions: that, had the Chairman known the other Commissioners could only select candidates and not vote to approve them, he would have voted *against* one (even though he in fact voted for all); that the candidate ultimately approved would have adopted different standards and practices; and that those standards and practices would have been less burdensome rather than more.  The causation standard for Appointments Clause challenges may be forgiving, but it is not non-existent.  *See* Motion To Dismiss at 43 (citing cases).  Plaintiffs' speculative argument fails.[16]

## III.    PLAINTIFFS' SEPARATION-OF-POWERS ARGUMENTS HAVE NO FOUNDATION IN HISTORY OR PRECEDENT

Plaintiffs also urge that the Act violates separation of powers by "insulating" the Board from presidential control.  Pl. Reply at 1.  That argument has no basis in history or precedent.

---

[14] Contrary to plaintiffs' claim (Reply at 43 n.24), both *NTEU* and *Hartwell* specifically address officer status under the Appointments Clause.  *See NTEU*, 663 F.2d at 246 n.9 (citing "U.S. Const. art. II, § 2"); *Hartwell*, 73 U.S. at 393-94 (officer was "appointed . . . within the meaning of the constitutional provision").

[15] Plaintiffs claim the Chairman's vote was influenced by the other Commissioners (Reply at 43-44), but their source does not show that the Chairman voted for a candidate he did not ultimately prefer.  *See* GAO, *Actions Needed To Improve PCAOB Selection Process* 10 (2002).

[16] Plaintiffs' contrary authorities (Reply at 43 n.23) are inapposite.  Each involved a non-voting member improperly present on the committee that *directly caused the plaintiff's injury* by prosecuting or deciding a case.  *See FEC v. NRA Political Victory Fund*, 6 F.3d 821, 825 (D.C. Cir. 1993) (FEC officer in enforcement action); *United States v. Jones*, 763 F.2d 518, 523 (2d Cir. 1985) (alternate juror); *United States v. Lane*, 64 M.J. 1 (C.A.A.F. 2006) (judge on panel).  Plaintiffs are not complaining about injuries caused by the presence of a non-voting member on the *Board*.  They are complaining about the committee that *appointed* the Board.  The chain of causation in the latter case is much more tenuous.

A.    **Plaintiffs' Separation-of-Powers Arguments Are Foreclosed by *Hennen* and *Perkins***

Despite having relied on historical sources extensively in their initial memorandum, plaintiffs now abandon any pretense that history supports their claims.  For example:

- Plaintiffs originally relied on the *Federalist Papers*.  Pl. Mem. at 1, 13, 18, 23, 24.  The Board pointed out that *The Federalist No. 77* directly contradicts their position.  Def. Mem. at 30 n.17.  Plaintiffs offer no response.

- Plaintiffs initially relied heavily on the legislative "decision of 1789."  Pl. Mem. at 1, 12-13, 15, 18.  The Board pointed out that virtually every speaker in that debate contradicted plaintiffs' position.  Def. Mem. at 30 & nn.15-16.  Plaintiffs abandon the argument.

- Plaintiffs' initial brief relied on Justice Story's *Commentaries*.  Pl. Mem. at 40-41.  The Board pointed out that Story contradicted their position.  Def. Mem. at 34-35.  Plaintiffs now dismiss Story's views as "idiosyncratic."  Pl. Reply at 7 n.5.

This Court need not delve into history, however, because Supreme Court precedent forecloses plaintiffs' claims.  The Supreme Court long ago rejected plaintiffs' position that the *President himself* must have authority to remove all inferior officers: *Hennen* states with unmistakable clarity that the power to remove follows the power to appoint, and that the President therefore has *no power* to remove an inferior officer appointed by a department head.  38 U.S. at 259-60.  And the Supreme Court has just as squarely rejected plaintiffs' challenge to the limitations on the *SEC's* removal power:  *Perkins* holds in no uncertain terms that, where Congress vests authority to appoint an inferior officer in a department head, it may restrict removal "as it deems best for the public interest."   116 U.S. at 485.

Plaintiffs seek to escape *Hennen* and *Perkins* by rewriting the cases' rationales.  They claim that *Hennen* merely holds that "the President must exercise his removal authority [over inferior officers] 'through' his 'alter egos.'"  Pl. Reply at 5, 7-8.  But *Hennen* nowhere suggests that.  The words "through" and "alter ego" do not even appear in the opinion.  Rather, *Hennen* reasoned that, because "the power of removal [is] incident to the power of appointment," "the

President has certainly no power to remove" those he did not appoint.  38 U.S. at 259-60.
*Hennen* thus explained that the President has "no power" to remove inferior officers appointed
by department heads—not that he *does* have power but must exercise it indirectly.[17]

Plaintiffs likewise err in claiming that *Perkins* stands only for the point that Congress
may condition removal on cause, defined broadly to include any "'failure to accept
supervision.'" Pl. Reply at 7 & n.4, 10.  Whether or not the naval cadet in *Perkins* could have
been court-martialed for refusing to follow orders is beside the point.  That fact, even if true, was
not mentioned once in the Court's opinion.  The express rationale for the decision was that
"when congress, by law, vests the appointment of inferior officers in the heads of departments, it
may limit and restrict the power of removal *as it deems best for the public interest*."  116 U.S. at
485 (emphasis added).  The fact that plaintiffs can imagine an alternative rationale more
consistent with their revisionist understanding of executive power is no reason for this Court to
ignore what the Supreme Court actually wrote.  Plaintiffs' claim that "no case has suggested that
the determinant of Congress's power to restrict removal turns on whether the officer is 'inferior'
or principal" (Reply at 9) likewise flies in the face of *Perkins*, which makes precisely that
distinction.  116 U.S. at 484-85.[18]

---

[17]  Quoting *Hennen*'s proviso "'in the absence of all constitutional provision or statutory
regulation,'" Pl. Reply at 7 (emphasis omitted), plaintiffs urge that there *is* a constitutional
requirement of presidential removal authority here.  But no provision of the Constitution requires
inferior officers to be removable by the President rather than the department head who appointed
them.  *Hennen* had in mind *express* restrictions such as Article III's life-tenure provision for
judges.  *See* 38 U.S. at 258-59.  *Hennen*'s statement that the President has "no power" to remove
inferior officers appointed by a department head would be a nullity if separation-of-powers
principles required the President to have that power in any event.

[18]  Plaintiffs' overwrought hypotheticals have no bearing here.  For example, Congress could not
create plaintiffs' hypothetical "Law Enforcement Commission" (Reply at 4) because *Perkins* is
limited to *inferior* officers appointed by department heads; *principal* officers with permanent,
wide-ranging, criminal prosecutorial authority who exercise no quasi-adjudicative or quasi-
legislative functions must be removable at will.  *See Morrison*, 487 U.S. at 690.  Similarly,

Plaintiffs seek refuge in *Morrison v. Olson*, 487 U.S. 654 (1988) (Pl. Reply at 5-10). They assert that, if *Hennen* and *Perkins* meant what they said, the Court in *Morrison* "[c]ould have resolved th[e] case" more easily by simply relying on those two decisions. Pl. Reply at 5. But *Morrison* did not involve an inferior officer appointed by a department head in the traditional mold of *Hennen* and *Perkins*. Although the independent counsel was removable by the Attorney General, she was appointed by a three-judge court. 487 U.S. at 661, 663. *Hennen* thus did not necessarily apply, because removal authority did not follow appointment authority. 38 U.S. at 259-60. Nor did *Perkins* necessarily apply, because *Perkins* by its terms addresses only appointments by "heads of departments," 116 U.S. at 485, not courts. *See Morrison*, 487 U.S. at 723-24 (Scalia, J., dissenting) (observing that the statute would require a "considerable . . . extension" of *Perkins* because the Executive had "full discretion in *neither* the selection *nor* the removal of a purely executive officer"). Given that *Hennen* and *Perkins* did not necessarily apply in *Morrison*, it is not surprising that the Court engaged in a broader separation-of-powers analysis. That hardly means that *Hennen* and *Perkins* cease to be good law in contexts where they *do* apply.

In any event, plaintiffs lose sight of the obvious fact that *Morrison upheld* the independent-counsel statute. It is hard to see how a decision *upholding* that statute could "confirm[]" that Sarbanes-Oxley is unconstitutional, much less do so "beyond all doubt." Pl. Reply at 5. *Morrison*'s holdings about what conditions were *sufficient* for constitutionality there are not holdings about what conditions are *necessary* for constitutionality here. That the Attorney General had "'ample'" removal authority there (Pl. Reply at 6), for example, does not mean courts can now ignore *Hennen* and *Perkins* and strike down any law providing for *less*

---

Congress could not rely on *Perkins* to grant "*permanent* tenure" (Pl. Reply at 3) because *Perkins* refers only to "limit[ing] and restrict[ing]" removal, not abolishing it. 116 U.S. at 485.

removal authority than existed in *Morrison*.  *Hennen* and *Perkins* are dispositive here.

**B.    The SEC's Removal Authority Easily Satisfies *Morrison***

Even if one were to assume that *Morrison* overruled *Hennen* and *Perkins sub silentio*, plaintiffs' challenge would still fail.  Under *Morrison*, removal restrictions are permissible unless they "unduly trammel[] on executive authority."  487 U.S. at 691.  Sarbanes-Oxley does not even remotely approach that line.  This is not a case where Congress has granted removal power to an entity *unconnected* to the Executive Branch, such as Congress itself.  To the contrary, the SEC is *part of* the Executive Branch.  *See* Def. Mem. at 25 n.11.  And, contrary to plaintiffs' claims (Reply at 12-14), the SEC's power to remove Board members is substantial.

1.    As an initial matter, the adequacy of the SEC's removal authority must be evaluated in light of the SEC's entire range of oversight powers, not in isolation.  The SEC has pervasive authority over the Board, including power to review Board decisions, to amend Board rules, or to rescind Board enforcement authority.  *See* pp. 2-3, *supra*.  The SEC does not need even the broad removal authority it enjoys, because Board members cannot take legally operative positions with which the SEC disagrees.

For that reason, plaintiffs miss the mark in emphasizing the importance accorded to broad removal authority in *Morrison*.  Pl. Reply at 17-18.  Broad removal authority was important in *Morrison* only because the Attorney General had virtually *no other* means of control.  He did not appoint the independent counsel, did not approve her budget, could not review or countermand her decisions, and certainly could not withdraw her enforcement authority whenever the "public interest" required.  Had the Attorney General possessed those far-reaching powers—as the SEC does here—the details of his removal authority would have been of much less consequence.

2.    Even focusing on removal power alone, the SEC's oversight is plainly sufficient.  The SEC concededly can remove Board members for intentional misconduct.  § 107(d)(3)(A)-

(B), 15 U.S.C. § 7217(d)(3)(A)-(B) (Pl. Reply at 13).  And it concededly can remove Board members for negligent failure to enforce the Act. § 107(d)(3)(C), 15 U.S.C. § 7217(d)(3)(C) (Pl. Reply at 13).  That is a far cry from giving Board members—who are appointed for only five-year terms, § 101(e)(5)(A), 15 U.S.C. § 7211(e)(5)(A)—"*permanent* tenure."  Pl. Reply at 3.

Contrary to plaintiffs' claims, moreover, the SEC could remove a Board member who "launches deep and onerous investigations into what he erroneously perceives as violations of law, or who otherwise interprets and enforces the securities laws in a manner that the SEC believes is completely improper," or who did not "*know* that he was abusing his authority or violating the law."  Pl. Reply at 12-13.  Plaintiffs simply ignore applicable D.C. Circuit precedent.  The unambiguous holding of *Wonsover v. SEC*, 205 F.3d 408, 413-15 (D.C. Cir. 2000), is that negligent misinterpretations of the *law* are "willful" misconduct as that term is used in the securities laws.  *See* Def. Mem. at 36-37.  *Wonsover* does not render the term "willful" "utterly meaningless" (Pl. Reply at 13).  It merely recognizes the longstanding rule that, in the securities context, "willfulness" refers to volition and knowledge about *what one is doing*; it does not require knowledge that one's conduct is *wrongful*.  And even if *Wonsover* left any doubt on this point (which it did not), any ambiguity could not justify striking down the Act in this *facial* challenge.  *See* p. 10, *supra*.[19]

_____

[19] Plaintiffs also argue that Board members could not be removed for interpreting the law "in a manner about which reasonable people could disagree."  Pl. Reply at 13.  But the remedy for *reasonable* misinterpretations of the law is reversal, not removal; if a Board member persists after the SEC corrects his misunderstanding, he can *then* be removed for willful misconduct. § 107(d)(3)(A)-(B), 15 U.S.C. § 7217(d)(3)(A)-(B).  Plaintiffs further err in claiming "there is no apparent reason" for the Act's removal restrictions.  Pl. Reply at 27.  The Board performs quasi-adjudicative functions.  Congress reasonably could have concluded that those functions would be performed more effectively if Board members were removable only for cause, and more effectively still if the grounds constituting "cause" were spelled out in detail.  Def. Mem. at 35.

C.    **The Restrictions on the President's Power To Remove SEC Commissioners
        Are Irrelevant**

Although *Hennen* clearly establishes that the President need not have *any* power—direct
or indirect—to remove inferior officers appointed by a department head, *see* pp. 18-19, *supra*,
plaintiffs' claim would fail even if the President *were* required to have such power.  Plaintiffs
admit that the President can be required to exercise any removal authority over inferior officers
indirectly, through his oversight of their superiors.  Pl. Reply at 5.  Nonetheless, plaintiffs claim
that applying the ordinary rule here offends executive power because the Commissioners of the
SEC (unlike the Attorney General or the Secretary of Defense) are removable only for cause.  *Id.*
at 11, 14-16.  That claim defies logic.  The SEC promulgates rules to govern the securities
markets, imposes sanctions for securities-law violations, and makes countless other regulatory
decisions of national import.  Plaintiffs do not argue that the SEC itself is unconstitutional, even
though all those decisions are made by Commissioners who are removable only for cause.  It is
hard to understand why the SEC's personnel decisions—its choices about whether to fire or
retain the inferior officers *it appoints and supervises*—should be subject to more pervasive
presidential control than any of its other important discretionary functions.

In any event, plaintiffs exaggerate the difference this for-cause restriction makes on the
President's control over the Board.  Where a principal officer is removable at will but his inferior
is removable only for cause—an arrangement plaintiffs concede to be constitutional (Reply at
10)—the President's removal power is already limited:  The President must show cause for the
inferior's removal.[20]  Adding a for-cause restriction to the *principal* officer does not significantly

---

[20] Moreover, requiring the President to exercise removal authority *through* that principal officer
materially reduces his control.  The President must not only fire the superior but also locate—and
potentially win Senate confirmation for—a replacement willing to carry out his bidding.  As the
Watergate "Saturday Night Massacre" demonstrates, that is not always an easy task.  *See Nader
v. Bork*, 366 F. Supp. 104, 107 (D.D.C. 1973).

change the President's authority:  The President must still show cause for the inferior's removal, and must also show that the principal's failure to remove was a neglect of duty.  *See* Def. Mem. at 33-34.  The President's authority to remove in the latter case may be modestly narrower, but it is hardly "nonexistent."  Pl. Reply at 14.  Plaintiffs embellish the distinction with a variety of adjectives (*e.g.*, "completely and unreasonably derelict," Reply at 15), but the bottom line is that the President's power to remove Board members—assuming he must have that power—is not "completely stripped."  *Morrison*, 487 U.S. at 692.  Rather, he has the *same* power over the SEC's removal decisions as he has over *any other* discretionary SEC decision.

Plaintiffs thus miss the point in arguing that the restrictions on removal of SEC Commissioners hinder the President's "pursuit of what he views as the *best* enforcement policies and the *best* view of the securities laws."  Pl. Reply at 15.  That is true of the President's oversight of the SEC *in general*.  The very concept of an independent agency is that Congress has placed some limits on the President's control over the agency's agenda.  Limiting the President's control over the agency's personnel decisions in the same manner cannot possibly "unduly trammel[] on executive authority."  *Morrison*, 487 U.S. at 691.[21]

### D.    The Cause Restrictions Are Severable

Finally, even if the restrictions on the SEC's removal authority were somehow invalid—and they are not—they should be severed.  Contrary to plaintiffs' claims (Reply at 27), severance

---

[21] Plaintiffs also argue that the Act's oversight provisions "taken as a whole" are inadequate.  Pl. Reply at 16-27.  As we explained (Def. Mem. at 39), the question whether the SEC's oversight satisfies separation of powers is no different from the question whether the SEC's oversight is adequate to render Board members inferior officers—the two inquiries are basically the same.  *Compare Morrison*, 487 U.S. at 671-73, *with id.* at 695-96 (relying on essentially the same factors to conclude that the independent counsel was an inferior officer and that the Attorney General's supervision satisfied separation of powers).  And the President is not required to have direct oversight over Board members, because he supervises the principal officers to whom they report.  *See* Def. Mem. at 39-41.

would not require the Court to "rewrite" the statute.  The Court would simply strike § 107(d)(3) itself, as well as the phrase "in accordance with section 107(d)(3)" from § 101(e)(6), leaving the SEC with general "for cause" removal authority under § 101(e)(6), 15 U.S.C. § 2711(e)(6).

The question is not whether severance would alter the balance Congress had in mind (Pl. Reply at 28), but whether it would be more consistent with congressional intent than striking down the entire Act.  *See* Def. Mem. at 38-39.  Plainly, Congress was more concerned about restoring investor confidence in audited financial statements than about whether the SEC's power to remove Board members would be governed by a general "for cause" standard or by three particular enumerated "causes."  It is utterly implausible to think that Congress—after initially drafting a bill that included *no removal provisions at all* (Def. Mem. at 38) and then adding removal provisions without comment in a single subsection of a bill that spans more than 60 pages of the Statutes at Large—would now prefer to see the entire Act struck down.

## CONCLUSION

For the foregoing reasons, defendants' cross-motion for summary judgment should be granted.


Dated: October 11, 2006                     Respectfully submitted,

                                            /s/  Jeffrey A. Lamken
Lewis H. Ferguson  (D.C. Bar No. 176312)    Joe Robert Caldwell, Jr.  (D.C. Bar No. 965137)
J. Gordon Seymour  (D.C. Bar No. 450051)    James R. Doty  (D.C. Bar No. 416785)
Heidi E. Murdy  (D.C. Bar No. 474680)       Jeffrey A. Lamken  (D.C. Bar No. 440547)
PUBLIC COMPANY ACCOUNTING                   Robert K. Kry  (D.C. Bar No. 490545)
     OVERSIGHT BOARD                         Joshua A. Klein  (D.C. Bar No. 489078)
1666 K Street, N.W.                         BAKER BOTTS, LLP
Washington, D.C. 20006                      1299 Pennsylvania Avenue, N.W.
(202) 207-9162 (telephone)                  Washington, D.C.  20004-2400
(202) 862-8430 (facsimile)                  (202) 639-7700 (telephone)
                                            (202) 639-7890 (facsimile)

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2006, a true and correct copy of the foregoing was served by the court's electronic case filing system on all parties subscribing thereto, and by overnight express mail upon the following:

| | |
|---|---|
| Michael A. Carvin<br>Noel J. Francisco<br>Christian G. Vergonis<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001 | Viet D. Dinh<br>Wendy Keefer<br>BANCROFT ASSOCIATES PLLC<br>601 13th St., N.W.<br>Suite No. 930 South<br>Washington, D.C. 20005 |
| Sam Kazman<br>Hans Bader<br>COMPETITIVE ENTERPRISE INSTITUTE<br>1001 Connecticut Avenue, N.W.<br>Suite 1250<br>Washington, D.C. 20036 | Kenneth W. Starr<br>24569 Via De Casa<br>Malibu, CA 90265 |
| Robert J. Katerberg<br>U.S. DEPARTMENT OF JUSTICE<br>20 Massachusetts Avenue, N.W.<br>Washington, D.C. 20001 | Kathryn Comerford Todd<br>WILEY, REIN & FIELDING LLP<br>1776 K Street, N.W.<br>Washington, D.C. 20006 |
| Miles Jarrad Wright<br>WEIL, GOTSHAL & MANGES, LLP<br>1300 I Street, N.W.<br>Suite 900<br>Washington, D.C. 20005 | Roderick M. Hills<br>HILLS, STERN & MORLEY<br>901 15th Street, N.W.<br>Suite 400<br>Washington, D.C. 20005 |

   /s/ Joshua Klein