

1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

# STAFF AUDIT PRACTICE ALERT NO. 1

## MATTERS RELATED TO TIMING AND ACCOUNTING FOR OPTION GRANTS

**July 28, 2006**

Audit Practice Alerts highlight new, emerging, or otherwise noteworthy circumstances that may affect how auditors conduct audits under the existing requirements of PCAOB standards and relevant laws. Auditors should determine whether and how to respond to these circumstances based on the specific facts presented. The statements contained in Audit Practice Alerts are not rules of the Board and do not reflect any Board determination or judgment about the conduct of any particular firm, auditor, or any other person.

Recent reports and disclosures about issuer practices related to the granting of stock options, including the "backdating" of such grants, indicate that some issuers' actual practices in granting options might not have been consistent with the manner in which these transactions were initially recorded and disclosed. Some issuers have announced restatements of previously issued financial statements as a result of these practices. In addition, some of these practices could result in legal and other contingencies that may require recognition of additional expense or disclosure in financial statements.

This practice alert advises auditors that these practices may have implications for audits of financial statements or of internal control over financial reporting ("ICFR") and discusses factors that may be relevant in assessing the risks related to these matters.

### Background

The recorded value of a stock option depends, in part, on the market price of the underlying stock on the date that the option is granted and the exercise price specified in the option. Some issuers may have granted options with exercise prices that are less than the market price of the underlying stock on the date of





**STAFF AUDIT PRACTICE ALERT NO. 1**

grant. These options are sometimes referred to as "discounted" or "in-the-money" options. Where discounted options were granted and an issuer failed to properly consider this condition in its original accounting for the option, errors in recording compensation cost, among other effects, may have resulted. These errors may cause an issuer's financial statements, including related disclosures, to be materially misstated.[1/]

While this alert does not attempt to describe all of the variations in circumstances that may result in the issuance of discounted options, a range of practices appears to be involved, including --

- The application of provisions in option plans that allow for:
  - the selection of exercise prices based on market prices on dates earlier than the grant date, or
  - the award of options that allow the option holder to obtain an exercise price equal to the lower of the market price of the stock at the grant date or during a specified period of time subsequent to the grant date.
- Preparation, or subsequent modification, of option documentation for purposes of indicating a lower exercise price than the market price at the actual grant date.
- Treating a date as the grant date when, in fact, all of the prerequisites to a grant had not yet occurred.

Available information suggests that the incidence of these and similar practices may have substantially decreased after the implementation of the shortened filing deadline for reports of option grants specified by Section 403 of the Sarbanes-Oxley Act of 2002. In August 2002, the Securities and Exchange Commission ("SEC") implemented this requirement by requiring the reporting of an option grant on Form 4 within two days of the date of grant. However, periods subsequent to the grant of an option may also be affected by improper

---

[1/] In addition, academic research has suggested the possibility that some issuers may have purposefully granted options immediately before the release of information that the issuer believed would be favorable to its share price. While these practices may not result in the granting of discounted options, they may create legal or reputational risks and raise concerns about the issuer's control environment.





**STAFF AUDIT PRACTICE ALERT NO. 1**

accounting for a grant because option cost is generally expensed over the period during which the issuer receives the related services, most commonly its vesting period.

**Matters for auditor consideration**

Auditors planning or performing an audit should be alert to the risk that the issuer may not have properly accounted for stock option grants and, as a result, may have materially misstated its financial statements or may have deficiencies in its ICFR. For audits currently underway or to be performed in the future, the auditor should acquire sufficient information to allow him or her to assess the nature and potential magnitude of these risks. An auditor must use professional judgment in making these assessments and in determining whether to apply additional procedures in response.

In making these judgments, auditors should be mindful of the following --

*Applicable financial accounting standards.* Financial Accounting Standards Board Statement of Financial Accounting Standards ("SFAS") No. 123 R (revised 2004), *Share-Based Payment,* applies to issuer reporting periods beginning after June 15, 2005 (December 15, 2005 for small business issuers). Accounting for options was, however, previously governed by other accounting standards and related interpretations, specifically Accounting Principles Board Opinion No. 25, *Accounting for Stock Issued to Employees* (APB 25), and SFAS No. 123, *Accounting for Stock-Based Compensation*. If an auditor determines that it is necessary to consider the accounting for option grants and related disclosures in financial statements of a prior period, the auditor should take care to determine the applicable generally accepted accounting principles in effect in those periods and to consider the specific risks associated with these principles.

- *Accounting for discounted options.* For periods in which an issuer used the provisions of APB 25 to determine compensation cost related to stock options, the issuer may have been required to record additional compensation cost equal to the difference in the exercise price and the market price at the measurement date (as defined in APB 25). In periods in which the issuer has recorded option compensation cost using the fair value method as allowed by SFAS No. 123, or as required by SFAS No. 123 R (revised 2004), the impact on the calculated fair value of options of using an incorrect date as the grant date would depend on the nature and





magnitude of changes in conditions that affect option valuation between the incorrect date used and the actual grant date. In all cases, the compensation cost of options should be recognized over the period benefited by the services of the option holder.

- *Accounting for variable plans.* For periods in which an issuer used the provisions of APB 25 to determine compensation cost related to stock options, an option with terms allowing a modification of the exercise price, or whose exercise price was modified subsequent to the grant date may require variable plan accounting. Variable option accounting requires that compensation cost be recorded from period to period based on the variation in current market prices. In periods in which the issuer records option compensation cost using the fair value method as allowed by SFAS No. 123, or as required by SFAS No. 123 R, the right to a lower exercise price may constitute an additional component of value of the option that should be considered at the grant date. In all cases, the cost of options should be recognized over the period benefited by the services of the option holder.

- *Accounting for contingencies.* If the consequences of the issuer's practices for stock option grants or its accounting for, and disclosure of, option grants result in legal or other contingencies, the application of SFAS No. 5, *Accounting for Contingencies*, may require that the issuer record additional cost or make additional disclosures in financial statements.

- *Accounting for tax effects.* The grant of discounted stock options may affect the issuer's ability to deduct expenses related to these options for income tax purposes, thereby affecting the issuer's cash flows and the accuracy of the related accounting for the tax effects of options.

*Consideration of materiality.* In evaluating materiality, auditors should remember that paragraph .11 of AU sec. 312, *Audit Risk and Materiality in Conducting an Audit*, and SEC Staff Accounting Bulletin: No. 99 – *Materiality* emphasize that both quantitative and qualitative considerations must be assessed. Quantitatively small misstatements may be material when they relate to unlawful acts or to actions by an issuer that could lead to a material contingent liability. In all cases, auditors should evaluate the adequacy of related issuer disclosures.





*Possible illegal acts.* Auditors who become aware that an illegal act may have occurred must comply with the applicable requirements of AU section ("AU sec.") 317, *Illegal Acts*, and Section 10A of the Securities Exchange Act of 1934. Section 10A, among other things, requires a registered public accounting firm to take certain actions if it "detects or otherwise becomes aware of information indicating that an illegal act (whether or not perceived to have a material effect on the financial statements of the issuer) has or may have occurred…." If it is likely that an illegal act has occurred, the registered public accounting firm must "determine and consider the possible effect of the illegal act on the financial statements of the issuer, including any contingent monetary effects, such as fines, penalties, and damages." The registered public accounting firm must also inform the appropriate level of management and assure that the audit committee is adequately informed "unless the illegal act is clearly inconsequential." The auditor may, depending on the circumstances, also need to take additional steps required under Section 10A if the issuer does not take timely and appropriate remedial actions with respect to the illegal act.

A. Effects of options-related matters on planned or ongoing audits

In planning and performing an audit of financial statements and ICFR, the auditor should assess the nature and potential magnitude of risks associated with the granting of stock options and perform procedures to appropriately address those risks. The following factors are relevant to accomplishing these objectives --

- Assessment of the potential magnitude of risks of misstatement of financial statements and deficiencies in ICFR related to option granting practices. This assessment should include consideration of possible indicators of risk related to option grants, including, where appropriate:
    - The status and results of any investigations relating to the timing of options grants conducted by the issuer or by regulatory or legal authorities.
    - The results of direct inquiries of members of the issuer's management and its board of directors that should have knowledge of matters related to the granting and accounting for stock options.
    - Public information related to the timing of options grants by the issuer.





- The terms and conditions of plans or policies under which options are granted; in particular, terms that allow exercise prices that are not equal to the market price on the date of grant or that delegate authority for option grants to management. In these situations, auditors should also consider whether issuers have other policies that adequately control the related risks.
- Patterns of transactions or conditions that may indicate higher levels of inherent risk in the period under audit. Such patterns or conditions may include levels of option grants that are very high in relation to shares outstanding, situations in which option-based compensation is a large component of executive compensation, highly variable grant dates, patterns of significant increases in stock prices following option grants, or high levels of stock-price volatility.

- In planning and performing audits, auditors should appropriately address the assessed level of risk, if any, related to option granting practices. Specifically:

  - In addition to the general planning considerations for financial statement audits identified in AU sec. 311, *Planning and Supervision,* the auditor should consider:
    - The implications of any identified or indicated fraudulent or illegal acts related to option grants to assessed risks of fraud (AU sec. 312.07 and AU sec. 316, *Consideration of Fraud in a Financial Statement Audit*); the potential for illegal acts (AU sec. 317, *Illegal Acts by Clients*); or the assessment of an issuer's internal controls (AU sec. 319, *Internal Control in a Financial Statement Audit*).
    - The scope of procedures applied to assess the potential for fraud (AU sec. 316) and illegal acts (AU sec. 317).

  - The nature, timing, and extent of audit procedures applied to elements of the financial statements affected by the issuance of options. In particular, this assessment should include consideration of:

    - The need for specific management representations related to these matters (AU sec. 333, *Management Representations*) and the nature of matters included in inquiries of lawyers (AU sec. 337, *Inquiry of a Client's Lawyer*).





- Where applicable, the result of tests of internal controls over the granting, recording, and reporting of option grants.
- The need, based on the auditor's risk assessment, for additional specific auditing procedures related to the granting of stock options.

For integrated audits performed as described in PCAOB Auditing Standard No. 2, *An Audit of Internal Control Over Financial Reporting Performed in Conjunction with An Audit of Financial Statements* ("AS No. 2"), the auditor should consider the implications of identified or potential accounting and legal risks related to options in planning, performing, and reporting on audits of ICFR. In addition, as discussed in paragraphs 145-158 of AS No. 2, the results of the audit of ICFR should be considered in connection with the related financial statement audit.

B. Auditor involvement in registration statements

In cases where an auditor is requested to consent to the inclusion of his or her report, including a report on ICFR, in a registration statement under the Securities Act of 1933, AU sec.711, *Filings Under Federal Securities Statutes*, provides that the auditor should perform certain procedures prior to issuing such a consent.[2/]

- Paragraph .10 of AU sec. 711 provides that an auditor should perform certain procedures with respect to events subsequent to the date of the audit opinion up to the effective date of the registration statement (or as close thereto as is reasonable and practical under the circumstances). These procedures include inquiry of responsible officials and employees of the issuer and obtaining written representations from them about whether events have occurred subsequent to the date of the auditor's report that have a material effect on the financial statements or that should be disclosed in order to keep the financial statements from being misleading. The auditor should consider performing inquiries and obtaining representations specifically related to the granting and recording of option grants.

- Paragraph .11 of AU sec. 711 provides that a predecessor auditor that has been requested to consent to the inclusion of his or her report on prior-

[2/] Under Paragraph 198 of AS 2, the auditor should apply AU sec. 711 when the auditor's report on management's assessment of ICFR is included in filings under federal securities statutes.





period financial statements in a registration statement should obtain written representations from the successor auditor regarding whether the successor auditor's audit and procedures with respect to subsequent events revealed any matters that might have a material effect on the financial statements reported on by the predecessor auditor or that would require disclosure in the notes to those financial statements. If the successor auditor becomes aware of information that leads him or her to believe that financial statements reported on by the predecessor auditor may require revision, the successor auditor should apply paragraphs .21 and .22 of AU sec. 315.[3/]

- If either the successor or predecessor auditor discovers subsequent events that require adjustment or disclosure in the financial statements or becomes aware of facts that may have existed at the date of his or her report and might have affected the report had he or she been aware of them, the auditor should take the actions described in paragraph .12 of AU sec. 711. In addition, where the auditor concludes that unaudited financial statements or unaudited interim financial information presented, or incorporated by reference, in a registration statement are not in conformity with generally accepted accounting principles, he or she should take the actions described in paragraph .13 of AU sec. 711.

C. Effects of option-related matters on previously issued opinions

If an auditor becomes aware of information that relates to financial statements previously reported on by the auditor, but which was not known to him or her at the date of the report, and which is of such a nature and from such a source that he or she would have investigated it had it come to his or her attention during the course of the audit, he or she should take the actions described in AU sec. 561, *Subsequent Discovery of Facts Existing at the Date of the Auditor's Report.*

---

[3/] In cases in which a predecessor auditor reissues his or her report on financial statements included in a filing under the Securities Exchange Act of 1934, the predecessor auditor should follow the directives in paragraphs .71 through .73 of AU sec. 508.





**STAFF AUDIT PRACTICE ALERT NO. 1**

**Contact Information**

Inquiries concerning this Practice Alert may be directed to –

Phil D. Wedemeyer, Director, Office of Research and Analysis, 202-207-9204, wedemeyerp@pcaobus.org

Thomas Ray, Chief Auditor and Director of Professional Standards, 202-207-9112, rayt@pcabous.org