UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREE ENTERPRISE FUND, *et al.*,  :
                                 :
         Plaintiffs,             :
                                 :
    v.                           : Civil Action No. 06-0217 (JR)
                                 :
THE PUBLIC COMPANY ACCOUNTING    :
OVERSIGHT BOARD, *et al.*,       :
                                 :
         Defendants.             :

**MEMORANDUM**

Plaintiff Free Enterprise Fund, a non-profit organization, and plaintiff Beckstead & Watts, LLP, a Nevada accounting firm, present a constitutional challenge to the creation and empowerment of the Public Company Accounting Oversight Board, an entity created by the Sarbanes-Oxley Act that is charged with overseeing and regulating the auditing of public companies subject to securities laws.  Plaintiffs claim that the PCAOB violates separation-of-powers principles (Count I), the Appointments Clause (Count II), and the non-delegation doctrine (Count III).  Defendants, including the United States as Intervenor-defendant, have moved to dismiss, [17], [18].  All parties have moved for summary judgment [28], [37], [41].  For the reasons discussed below, the defendants' motions for summary judgment will be **granted**.

**Background**

In 2002, following a series of accounting scandals that exposed weaknesses in the reporting requirements for publicly held companies, Congress passed the Sarbanes-Oxley Act of 2002 ("the Act" or "SOX"), 15 U.S.C. §§ 7201 et seq. Title I of the Act established the PCAOB as a new entity to oversee the audits of public companies. SOX § 101(a), 15 U.S.C. § 7211(a). The Board's purpose is "to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports for companies the securities of which are sold to, and held by and for, public investors." Id. The Act empowered the Securities and Exchange Commission to vest the Board with certain responsibilities, such as enacting auditing standards, inspecting and investigating auditors of public companies, and setting its own budget. 15 U.S.C. § 7211(c).

The five members of the PCAOB are appointed by the SEC after consultation with the Chairman of the Board of Governors of the Federal Reserve and the Secretary of the Treasury. 15 U.S.C. § 7211(e)(4)(A). Two members must be or have been certified public accountants. 15 U.S.C. § 7211(e)(2). After its members are appointed by the SEC, the Board assumes its responsibilities only upon the Commission's determination that the Board has the capacity to carry out the Act's requirements. 15 U.S.C. § 7211(d). No Board rule becomes effective unless and until

approved by the SEC.  15 U.S.C. § 7217(b)(2).  To approve a rule, the Commission generally must conduct its own notice-and-comment proceedings, and must find that the rule is "consistent with the requirements of [SOX] and the securities law, or is necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 7217(b)(3).  Both the structure of the Board and its relationship to the Commission resemble those of other self-regulatory organizations ("SRO"), such as the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers ("NASD"), that contribute to the work of the SEC, and the Act specifically incorporates certain review provisions from statutes establishing other SROs.  For example, as with SROs, the SEC retains the power to change, add to, or withdraw PCAOB rules at any time. 15 U.S.C. § 7217(b)(5) (incorporating 15 U.S.C. § 78s(c)).

 The Act requires auditors of public companies to register with the PCAOB by submitting applications to the PCAOB, filing periodic reports with the PCAOB, and paying fees to the PCAOB.  15 U.S.C. § 7212.  The SEC may review the PCAOB's accounting support fee rules, 15 U.S.C. §§ 7219(d), 7217(b), and denials of regulation applications, 15 U.S.C. § 7212(c)(2).  The PCAOB may inspect accounting firms and release interim reports detailing any deficiencies in advance of its final conclusions.  15 U.S.C. § 7214(g).  When the PCAOB investigates a potential

securities law violation, the Board must both inform the Commission and coordinate its activities with the Commission. 15 U.S.C. § 7215(b)(4)(A). If a company violates PCAOB rules governing the auditing of public companies, it will be subject to disciplinary actions and sanctions by the PCAOB. 15 U.S.C. § 7215(c)(4). Any violation of PCAOB rules "shall be treated . . . as a violation of the Securities Exchange Act of 1934." 15 U.S.C. § 7202(b). If the PCAOB determines, after investigation, that an accounting firm has committed a violation, it has the power to impose an appropriate sanction, 15 U.S.C. § 7215(c)(4), but companies may seek Commission review of unfavorable Board determinations, 15 U.S.C. § 7217(c), and sanctions imposed by the PCAOB are generally stayed pending Commission review of the inspection report, 15 U.S.C. § 7215(e). The Commission may alter or cancel a sanction imposed by the PCAOB if, "having due regard for the public interest and the protection of investors," the SEC finds that the sanction is "not necessary or appropriate in furtherance of this Act or the securities laws" or is "excessive, oppressive, inadequate, or otherwise not appropriate." 15 U.S.C. § 7217(c)(3). Final Commission decisions are reviewable by the Court of Appeals.

      Plaintiff Beckstead and Watts ("BW"), a small Nevada accounting firm, was inspected by the Board in 2004 and is the subject of an ongoing disciplinary investigation. On

September 28, 2005, the PCAOB issued a report detailing its inspection of Beckstead & Watts, available on the PCAOB website at http://www.pcaobus.org/Inspections/Public_Reports/2005/Beckstead_and_Watts.pdf.  Plaintiff Free Enterprise Fund ("FEF") is "a non-profit, public interest organization" promoting "economic growth, lower taxes, and limited government."  [1] ¶ 11.  FEF avers that its members are subject to the PCAOB's authority and have been harmed by its regulations.  Id.  James Terry, Executive Director of FEF, asserts that because the organization takes unpopular positions, it is the policy of FEF not to disclose the identity of its members.  [47-3].  However, Terry explains, FEF's members include Beckstead and Watts and other companies on both the PCAOB's List of Issuers with No Outstanding Past-Due Share of the Accounting Support Fee and the PCAOB's List of Registered Public Accounting Firms.  Id.

	The plaintiffs seek an order enjoining the Board from taking any further action against BW and a judgment declaring that the provisions of the Act establishing the PCAOB are unconstitutional.  [1] at 23.  BW alleges that it has been injured by the Board's auditing standards, which have substantially increased the time and expense of its public company audits and reduced both its client capacity and its overall profits, and that the Board's inspection report has

damaged its professional reputation.  Id. at 18-19.  Finally, BW asserts that the Board's ongoing investigation is subjecting it to burdensome discovery and legal fees.  Id. at 19.

Plaintiffs have not raised their claims before the PCAOB, the SEC, or the Court of Appeals; did not submit comments during the SEC's review of the PCAOB's proposed rules; have not sought review of the SEC's approval of the Board's rules; and have not filed a petition for rulemaking with the SEC to alter or withdraw the Board's powers, as permitted by 15 U.S.C. § 7217(d)(1).

## Analysis

### I.  Motion to Dismiss

PCAOB identifies several grounds for dismissal.  It asserts lack of subject matter jurisdiction because plaintiffs have bypassed the exclusive review established by SOX and failed to exhaust administrative remedies, [17] at 15-36, and because plaintiffs have failed to identify a cause of action authorizing this lawsuit.  Id. at 37-38.  And PCAOB maintains that plaintiffs lack standing, because (1) the FEF has not alleged a specific injury, see Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1275 (D.C. Cir. 1994) (allegations of injury during pleading stage must not be "too general"); (2) restrictions on the Commission's appointment authority may be raised only by the restricted officer, not a private party, see

FEC v. NRA Political Victory Fund, 6 F.3d 821 (D.C. Cir. 1993); and (3) there is no reason to assume that a successful challenge to the Act's grant of authority to the entire SEC to appoint members of the PCAOB would prevent plaintiff's injury, see Reuss v. Balles, 584 F.2d 461 (D.C. Cir. 1978).  [17] at 38-43.

These arguments are colorable but ultimately unsuccessful.  The standing of Beckstead and Watts is essentially conceded by the defendants, with the exception of certain appointments clause claims, and FEF has standing because at least one member of its organization is being regulated by the PCAOB (namely, Beckstead & Watts).[1]  The jurisdictional arguments fail because the plaintiffs' facial constitutional challenges, which take aim at very structure of the PCAOB, are collateral to the Act's statutory scheme, and are therefore outside the universe of cases subject to the implicitly exclusive administrative review established by the Act, see Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 212-13 (1994); Mathews v. Eldridge, 424 U.S. 319, 330 (1976); Gen. Elec. Co. v. EPA, 360 F.3d 188 (D.C. Cir. 2004) (per curiam).

**II.  Motions for Summary Judgment**

---

[1]Note that, as explained below, plaintiffs lack standing to raise the portion of their appointments clause claim challenging the appointment of PCAOB members by the entire SEC.  Since this infirmity infects only part of plaintiffs' appointment clause claim, it will be addressed in the summary judgment analysis.

As a threshold matter, defendants ask that I consider the PCAOB to be a governmental entity, [37] at 10, n.3, even though the Act provides that the PCAOB is "not . . . an agency or establishment of the United States Government," describing it instead as a "body corporate, [to] operate as a nonprofit corporation," with "all the powers conferred upon a nonprofit corporation by, the District of Columbia Nonprofit Corporation Act." 15 U.S.C. §§ 7211(a), (b). The parties agree that, at least for purposes of these motions, PCAOB should be considered a governmental entity, and so it shall be. See Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 400 (1995).

### Count II: The Appointments Clause

Plaintiffs complain that the appointment of PCAOB members violates the Appointments Clause of the Constitution, U.S. Const. art. II, § 2. The Appointments Clause empowers the President to appoint "Officers of the United States," while allowing Congress to vest the appointment of "inferior Officers" in the President, Courts of Law, or Heads of Departments. Id. Since PCAOB members are neither appointed nor supervised on a day-to-day basis by principal officers directly accountable to the president, plaintiffs argue, they are not inferior officers, and therefore must be appointed by the President. [28] at 29-34, citing Edmond v. United States, 520 U.S. 651 (1997), Freytag v.

Commissioner of Internal Revenue, 501 U.S. 868 (1991), and Morrison v. Olson, 487 U.S. 654 (1998).

Edmond, however, along with three notable decisions from this Circuit, actually favors defendants' submission, that PCAOB members are inferior officers. As with judges of the Coast Guard Court of Criminal Appeals, PCAOB members "have no power to render a final decision on behalf of the United States unless permitted to do so by other executive officers," Edmond, 520 U.S. at 665, and are subject to administrative oversight and removal authority by the Commission, Id. at 664. See also, NASD v. SEC, 431 F.3d 803 (D.C. Cir. 2005) (NASD may not regulate independently of the SEC control); Landry v. FDIC, 204 F.3d 1125 (D.C. Cir. 2000) (Administrative Law Judges are neither principal nor inferior officers because they lack the power to render final decisions); In re: Sealed Case, 829 F.2d 50 (D.C. Cir. 1987) (Independent Counsel is not a principal officer because the regulations empowering the office are rescindable through normal procedures).

Plaintiffs argue in the alternative that, even if PCAOB members are inferior officers, their appointment by the SEC is unconstitutional because the SEC is not a "department" for constitutional purposes, and because, even if it is a department, the appointment power must be vested in its chairperson, not in the entire Commission.

The four concurring justices in Freytag who reached the question of the SEC's constitutional status all agreed that it is, in fact, a department, 501 U.S. at 916, and the defendants are likely to succeed on this point.  Defendants' contention that the "head" of the SEC is the SEC as a whole, however, is a stretch.  Only one court's decision is cited in support of that argument: Silver v. United States Postal Service, 951 F.2d 1033, 1038 (9th Cir. 1991).  That decision did hold that the nine governors of the U.S. Postal Service ("USPS") are its collective "head" for constitutional purposes, but the role of USPS governors is significantly different from that of SEC Commissioners.  Id.  When deciding who should be considered the head of the USPS – (1) the nine governors, (2) the Postmaster General, or (3) the board of governors (including the nine governors, the Postmaster General, and the Deputy Postmaster General) – the Court settled on the nine governors because only they are empowered to appoint and remove the Postmaster General and to revoke authority delegated to the board.  Id.  The SEC may neither appoint nor remove the SEC Chairman, nor may the SEC revoke authority delegated to the entire Commission.  Multi-member bodies may, on occasion, properly constitute heads of departments for Appointments Clause purposes, but the SEC is not one of them.

On this point, however – that PCAOB members should have been appointed by the SEC Chairman rather than by the entire Commission – the plaintiffs lack standing.  Their injury is not traceable to this infirmity, since the SEC Chairman has voted for each PCAOB member, [17] fn. 28, and they do not allege that their injuries are in any way attributable to the current membership of the PCAOB, so it is not clear how a favorable outcome would redress their complaint.  See Nat'l Treasury Employees Union v. Reagan, 663 F.2d 239, 246 n.9 (D.C. Cir. 1981) (duty to appoint may be discharged by consenting to an appointment made by another person).

### Count I: Separation of Powers

The Supreme Court has never held that the Constitution requires the President to maintain direct removal power over inferior officers.  In Morrison v. Olson, when the Court upheld the independent counsel statute, it noted that certain "purely executive officials" must be removable by the President at will, 487 U.S. 684, 690 (1988), but PCAOB members are not in that category.  Here, as in Morrison, the President has not been "completely stripped" of his ability to remove PCAOB members, Morrison, 487 U.S. at 692, because SEC Commissioners can be removed by the President for cause, see SEC v. Blinder, Robinson & Co., 855 F.2d 677, 681 (10th Cir. 1988), and PCAOB members can be removed by the SEC "for good cause shown[,]" 15 U.S.C.

§ 7211(e)(6).  This standard is expanded upon in 15 U.S.C. § 7217(d)(3): good cause exists when PCAOB members commit certain willful violations, abuse their authority, or unreasonably fail to enforce compliance with rules or professional standards.  The scope of the Act's "good cause" limitation is disputed: plaintiffs claim that it prohibits removal for negligent misconduct, [28] at 2-23, while defendants insist that some negligent behavior constitutes a willful violation of securities law, [37] at 36-37, citing Wonsover v. SEC, 205 F.3d 408, 413-15 (D.C. Cir. 2000) – but resolution of this dispute is unnecessary.  Plaintiffs' claim of facial unconstitutionality fails unless the removal limitations of which they complain are unduly severe in all circumstances, see United States v. Salerno, 481 U.S. 739, 745, (1987); Steffan v. Perry, 41 F.3d 677, (D.C. Cir. 1994)(en banc)(if a statute's provisions may be constitutionally applied in some circumstances, a plaintiff must demonstrate that the statute is unconstitutional as applied).  Since I find that the SEC may plausibly interpret its removal authority as suggested by defendants, the removal provisions are sufficient to withstand plaintiffs' facial constitutional challenge.

        Count III: Non-Delegation Doctrine[2]

---

[2]Note that the PCAOB will be considered a public entity for non-delegation analysis as well.

Plaintiffs allege that Congress has unlawfully delegated legislative power to the PCAOB in violation of Article I, section 1 of the Constitution, which vests "[a]ll legislative Powers . . . in a Congress of the United States." This claim is easily disposed of. As defendants point out, the auditing, quality control, and ethics standards the PCAOB is to apply "must either be 'required by [the] Act or the rules of the Commission' or 'necessary or appropriate in the public interest or for the protection of investors[,]'" [37] at 41, citing 15 U.S.C. § 7213(a)(1). These are "intelligible" standards within the meaning of Whitman v. Am. Trucking Ass'ns, 531 U.S. 457 (2001), in which the Supreme Court acknowledged finding intelligible principles in "various statutes authorizing regulation in the 'public interest[,]'" 531 U.S. at 474. The legislative delegation effected by the Act is squarely within the bounds of modern non-delegation doctrine.

**III. Conclusion**

The plaintiffs have brought a facial challenge to the PCAOB, presenting nothing but an hypothetical scenario of an over-zealous or rogue PCAOB investigator. They have not responded to defendants' argument that, if such a scenario became real, the SEC could change the rules to prevent improper investigations or remove PCAOB members for "good cause." They have failed, in other words, to demonstrate that "no set of

circumstances exists under which the Act would be valid," <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987), and judgment must accordingly be entered for the defendants.

 An appropriate order accompanies this memorandum.


         JAMES ROBERTSON
       United States District Judge